# EXHIBIT D

Case 1:25-cv-01909-HG   Document 5-4   Filed 04/22/25   Page 2 of 12 PageID #: 323

CHARLES J. HYNES  Non-Confidential Portions                December 19, 2013
JABBAR COLLINS vs. NYC                                                     1

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x
JABBAR COLLINS,

                Plaintiff,
                                    CIVIL ACTION
        -against-                   No. 11CV00766

THE CITY OF NEW YORK; MICHAEL F.
VECCHIONE, BRIAN MAHER, STEPHEN
BONDOR, SHOLOM TWERSKY, ANTHONY
D'ANGELO, MELANIE MARMER, MORGAN J.
DENNEHY, VIRGINIA C. MODEST, and
JODI MANDEL, as employees of the
Kings County District Attorney's
Office and Individually, and VINCENT
GERECITANO and JOSE R. HERNANDEZ,
Individually and as members of the
New York City Police Department,

                Defendants.
-------------------------------------x

                December 19, 2013
                9:30 a.m.


        "NON-CONFIDENTIAL PORTIONS"
```

Deposition of CHARLES J. HYNES, taken by

Plaintiff, at the Kings County District

Attorney's Office, 350 Jay Street, 19th Floor,

Brooklyn, New York, before Anneliese R. Tursi,

a Registered Professional Reporter and Notary

Public within and for the State of New York.



Case 1:25-cv-01909-HG   Document 5-4   Filed 04/22/25   Page 3 of 12 PageID #: 324

CHARLES J. HYNES  Non-Confidential Portions                December 19, 2013
JABBAR COLLINS vs. NYC                                                     7

```
 1                    C.J. HYNES
 2    yourselves and your affiliations, after
 3    which the witness will be sworn in and
 4    we may proceed.
 5          MR. RUDIN:  For plaintiff, Joel
 6    Rudin, Terri Rosenblatt and Jabbar
 7    Collins.
 8          MR. LARKIN:  For the defendant,
 9    Arthur Larkin, L-A-R-K-I-N, New York
10    City Law Department.  With me is
11    Elizabeth Krasnow and Angharad Wilson.
12          MR. AMOROSO:  On behalf of the
13    Kings County District Attorney's Office
14    Dino G. Amoroso, A-M-O-R-O-S-O.
15          MS. LICHSTEIN:  And Toni C.
16    Lichstein, L-I-C-H-S-T-E-I-N.
17          THE VIDEOGRAPHER:  Thank you.
18          Liese, will you please swear in
19    the witness.
20  C H A R L E S   J.   H Y N E S,
21    Kings County District Attorney's Office,
22    350 Jay Street, Brooklyn, New York,
23    having been first duly sworn/affirmed by
24    the Notary Public (Anneliese R. Tursi),
25    was examined and testified as follows:
```



Case 1:25-cv-01909-HG   Document 5-4   Filed 04/22/25   Page 4 of 12 PageID #: 325

CHARLES J. HYNES  Non-Confidential Portions                December 19, 2013
JABBAR COLLINS vs. NYC                                                      8

```
 1                        C.J. HYNES
 2   EXAMINATION BY MR. RUDIN:
 3          Q.     Good morning, Mr. Hynes.
 4          A.     Good morning.
 5          Q.     We just were introduced.  My name
 6   is Joel Rudin.  With me is Terri Rosenblatt
 7   and Jabbar Collins.  Ms. Rosenblatt and I
 8   represent Mr. Collins in his civil lawsuit
 9   against The City of New York and a number of
10   individuals?
11          A.     Um-hum.
12          Q.     Are you familiar with the lawsuit?
13          A.     In general terms, yes.
14          Q.     I will be asking you some
15   questions today that I believe are relevant to
16   the issues in the lawsuit.
17          A.     Um-hum.
18          Q.     If I ask you a question that you
19   do not understand or that you need to have
20   clarified, do you understand that you may and,
21   in fact, should ask me to restate or clarify
22   the question?
23          A.     Sure, I understand.
24          Q.     Do you understand that if you give
25   an answer that upon reflection you think is in
```



Case 1:25-cv-01909-HG   Document 5-4   Filed 04/22/25   Page 5 of 12 PageID #: 326

CHARLES J. HYNES  Non-Confidential Portions                December 19, 2013
JABBAR COLLINS vs. NYC                                                   318

1  C. J. HYNES
2  believe that was a program that predated me by
3  at least two district attorneys.
4     Q.   Were you aware when you became
5  district attorney that there was still a hotel
6  custody program?
7     A.   Yeah, I'm sure I did.
8     Q.   And did you have any understanding
9  about the circumstances under which
10 individuals were in the custody of detective
11 investigators at hotels?
12    A.   As I understand, typically when a
13 material witness order was executed, the
14 witness had to promptly be brought before a
15 judge who then would make inquiry as to
16 whether or not the witness would agree to
17 cooperate with the trial, and to tell the
18 witness that the option was to go to civil
19 jail or to go in the custody of the DA in one
20 of the hotel rooms.  And that typically the
21 length of the stay was no more than overnight,
22 the next day the witness would testify and
23 then the material witness order would be
24 withdrawn.  That was my understanding of it.
25    Q.   Your understanding was that



Case 1:25-cv-01909-HG   Document 5-4   Filed 04/22/25   Page 6 of 12 PageID #: 327

CHARLES J. HYNES  Non-Confidential Portions          December 19, 2013
JABBAR COLLINS vs. NYC                                            319

```
 1                      C. J. HYNES
 2   witnesses were given a choice by the judge,
 3   either they could stay in a civil jail or they
 4   could stay in a hotel in the custody of the
 5   District Attorney's office?
 6        A.    Yeah.
 7        Q.    If they did not wish to stay in a
 8   jail, then they had no choice but to stay in
 9   the DA's custody?
10             MR. LARKIN:  Form objection.
11        A.    Well, that's the choice judges
12   would give a material witness.
13        Q.    Either you could be in a jail
14   maintained by the New York City Department of
15   Corrections or they could be in a hotel room
16   guarded by detectives from the DA's office?
17             MR. LARKIN:  Form objection.
18        A.    I'm not quite sure it is the
19   Department of Corrections. I think it is the
20   marshals, the city Marshall that did that but
21   it doesn't matter.
22             Yeah, either you would go to jail
23   or go to a hotel room. And as I said,
24   typically the stay, as I understood it, my
25   recollection of it, it was an overnight stay
```



Case 1:25-cv-01909-HG   Document 5-4   Filed 04/22/25   Page 7 of 12 PageID #: 328

CHARLES J. HYNES  Non-Confidential Portions                December 19, 2013
JABBAR COLLINS vs. NYC                                                   320

```
1                     C. J. HYNES
2   and then they would testify and that would be
3   the end of it.
4         Q.    And if they chose, as you put it
5   to go to the hotel, were they free to leave?
6         A.    No.
7         Q.    So would it be fair to say that
8   they were prisoners?
9               MR. LARKIN:  Objection.
10        A.    They were not free to leave so,
11  sure, they were prisoners.  They were in
12  custody.
13        Q.    And did you have any policy prior
14  to March of 1995 as to whether or not the
15  defense had to be told when a witness was in
16  the involuntary custody of the DA's office?
17        A.    Nope.  It was my understanding
18  that during the course of a trial the defense
19  would learn about the material witness order
20  and the fact that the witness was testifying
21  under that kind of coercion.
22        Q.    Learn from whom?
23        A.    From the witness.
24        Q.    Well, what if the district
25  attorney didn't bring it out himself, how
```

Case 1:25-cv-01909-HG   Document 5-4   Filed 04/22/25   Page 8 of 12 PageID #: 329

CHARLES J. HYNES  Non-Confidential Portions                December 19, 2013
JABBAR COLLINS vs. NYC                                                  321

```
 1                        C. J. HYNES
 2   would the defense learn?
 3         A.    Well, how do you know they don't
 4   bring it out?
 5         Q.    Well, I'm just asking you.
 6         A.    I'm asking you, how do you know?
 7   Do you have a basis for that?
 8         Q.    Mr. Hynes, did you have any policy
 9   under which ADAs were required to make sure
10   that the defense was aware that a People's
11   witness had been held in the custody of --
12         A.    Not that I can recall.
13         Q.    -- of detective investigators
14   pursuant to a court order?
15               MR. LARKIN:  Objection to form.
16         A.    Not that I can recall, because I
17   don't think it was necessary.  The defense in
18   virtually every case knew that the witness was
19   testifying as a material witness.
20         Q.    And how did the defense know.
21               MR. LARKIN:  Objection.
22         A.    At the trial they would learn.
23         Q.    How would they learn?
24               MR. LARKIN:  Objection.
25         A.    The witness would testify.
```



Case 1:25-cv-01909-HG   Document 5-4   Filed 04/22/25   Page 9 of 12 PageID #: 330

CHARLES J. HYNES  Non-Confidential Portions          December 19, 2013
JABBAR COLLINS vs. NYC                                              322

```
                       C. J. HYNES
 1
 2      Q.      And just blurt it out?
 3              MR. LARKIN:  Objection.
 4      A.      No, in answer to a specific
 5   question.
 6      Q.      A question by the prosecution?
 7      A.      Correct.
 8      Q.      So the prosecution would bring it
 9   out?
10      A.      Correct.
11      Q.      And if the prosecution did not
12   bring it out, was the prosecution under your
13   policy to disclose it to the defense so the
14   defense could bring it out if it wished?
15      A.      There wasn't a policy necessary
16   because the prosecutor did it as his routine.
17      Q.      Why?
18      A.      Because it was required.
19      Q.      By whom?
20      A.      By, among other things, Brady.
21      Q.      Now, were you aware of Plaintiff's
22   158 which I'm going to show you?  Have you
23   ever seen that form before?
24      A.      No.
25      Q.      Would you look at the first
```



Case 1:25-cv-01909-HG   Document 5-4   Filed 04/22/25   Page 10 of 12 PageID #: 331

CHARLES J. HYNES  Non-Confidential Portions                December 19, 2013
JABBAR COLLINS vs. NYC                                                   323

```
                      C. J. HYNES
1
2    numbered paragraph.  It begins with "extreme
3    caution."  "Extreme caution will be exercised
4    by detectives assigned to a custody" --
5         A.    I can read this if you like.
6         Q.    Would you read it out loud.
7         A.    If you want me.  That would be
8    silly.  What do you prefer, I read to myself
9    or I read it out loud?
10        Q.    Well, do you see that it states
11   "in the case of a hostile witness or potential
12   arrestee, detectives will exercise" --
13        A.    Would you be good enough to let me
14   read it, or do you want me to read it to out
15   loud or you want me to read it to myself and
16   then you will ask questions?  However you
17   prefer.
18        Q.    Well, why don't you read it to
19   yourself first.
20        A.    Fine.  Good.
21        Q.    And then let me know when you are
22   finished.
23        A.    Sure.
24              I've finished reading the first
25   three paragraphs in number 1.
```



Case 1:25-cv-01909-HG   Document 5-4   Filed 04/22/25   Page 11 of 12 PageID #: 332

CHARLES J. HYNES  Non-Confidential Portions                December 19, 2013
JABBAR COLLINS vs. NYC                                                   324

```
 1                        C. J. HYNES
 2        Q.    Do you see that he wrote:  "In the
 3   case of a hostile witness or potential
 4   arrestee, detectives will exercise sufficient
 5   control to guard against escape"?
 6        A.    Sure.
 7        Q.    Were you aware as of May of 1993
 8   when this document was issued, that there was
 9   a directive to detective investigators
10   concerning guarding against escape of hostile
11   witnesses or potential arrestees?
12        A.    No.
13        Q.    Let me show you Plaintiff's 198.
14   Have you ever seen that document before?
15        A.    Are you finished with this?
16        Q.    Yes.
17        A.    Okay.  What would you like me to
18   read?
19        Q.    Just the first two paragraphs
20   under "instructions for custody."
21        A.    Three paragraphs, is that what you
22   mean?
23        Q.    Well, the first two will suffice.
24   I just want to ask you if there is --
25        A.    Well, I would like to read all
```

Case 1:25-cv-01909-HG   Document 5-4   Filed 04/22/25   Page 12 of 12 PageID #: 333

CHARLES J. HYNES  Non-Confidential Portions          December 19, 2013
JABBAR COLLINS vs. NYC                                            325

```
 1                     C. J. HYNES
 2   three, if you don't mind.
 3        Q.    Be my guest.
 4        A.    Okay.
 5        Q.    Would you agree that the first and
 6   second paragraphs at least, are identical to
 7   the paragraphs --
 8        A.    Yeah, they appear to be identical.
 9        Q.    I'm sorry?
10        A.    They appear to be identical.
11        Q.    Were you aware of this memorandum
12   dated February 6, 1997?
13        A.    No.
14        Q.    As of March of 1995 were you aware
15   of any statutory or other authority for the
16   District Attorney's office to hold potential
17   witnesses as prisoners in hotels?
18        A.    No.
19        Q.    Were you aware of any such
20   authority today?
21        A.    No.
22        Q.    Now, do you recall that a little
23   while ago I asked you some questions about
24   Eric Jackson Knight and the Waldbaum fire
25   case?
```

