# EXHIBIT E

003838

97

Exhibit

P14 76
5/9/13

1

2  SUPREME COURT OF THE STATE OF NEW YORK

3  COUNTY OF KINGS : CRIMINAL TERM : PART 39

4  THE PEOPLE OF THE STATE OF NEW YORK

5          -against-

6  JABBAR COLLINS

7                              Defendant.

8  Indictment No. 2884/94

9              8907/94

10              March 7, 1995

11  B e f o r e :

12    HONORABLE FRANCIS X. EGITTO,

13                  Justice, and a jury.

14    (Appearances same as previously noted.)

15          - - - - - - -

16          THE CLERK:  Case on trial.

17          Case on trial continues.

18          THE COURT:  You wanted to put something on the

19      record before we start?

20          MR. VECCHIONE:  Yes, I do, Judge.

21          THE COURT:  Mr. Harrison, can you pay

22      attention for a minute, please?

23          MR. VECCHIONE:  Judge, last night we

24      interviewed a witness who had given a statement to

25      the police but for the first time has come to the

10

1          Proceedings

2          MR. VECCHIONE:  Thank you.

3          (Handing.)

4          MR. HARRISON:  (Continuing) The question I

5    have is the cooperation agreement.

6          THE COURT:  If there is one.

7          MR. VECCHIONE:  We have no cooperation

8    agreement with any of the witnesses, Judge.

9          MR. HARRISON:  And --

10          MR. VECCHIONE:  There is Giglio material which

11    I will turn over to counsel.  I don't have it all

12    together at this point.  I can actually tell you

13    what it is.

14          With respect to Angel Santos, and I will tell

15    this to counsel now so he is aware of what the

16    situation is, Angel Santos is in protective custody

17    at this point because of threats that were made to

18    him over the last several months by people he

19    claims to be on behalf of Mr. Collins.  He is being

20    protected by the District Attorney's office.  He is

21    in our custody; has been provided with a hotel

22    room, guarded by two detectives, and has been given

23    food and food money during the course of his stay.

24    In addition, the only other promise we made to

25    Angel Santos is that following this case we will

15

A-195

1       Proceedings

2    relocate him and his family and we will attempt to

3    help him find a job.  With respect to the other

4    witnesses, there is no promise except as to Edwin

5    Oliva and the promise as to Edwin Oliva is to send

6    a letter to the Parole Board detailing his

7    cooperation with the office and to attempt to

8    relocate him when he is out of jail.

9        THE COURT:  And he is not in the custody of

10   the D.A.?

11       MR. VECCHIONE:  He is not in the custody of

12   the D.A.  He is in the custody of the New York

13   State Department of Corrections.

14       MR. HARRISON:  Let me --

15       THE COURT:  Now, the only thing I am

16   suggesting to you, as far as Santos is concerned,

17   in view of what Mr. Vecchione says, if he

18   testifies, when he testifies, that in your cross

19   examination you be very careful about this business

20   about the D.A. keeping him in a hotel or giving him

21   money for food, because I would not want this jury

22   to get the impression, because if you say something

23   to that effect, he will come back and say, well,

24   the only reason I am there is because somebody on

25   behalf of the defendant threatened me or blah blah

Exhibit

P 14 91
5/10/13

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS:
------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,        :

        - against -

                                            :    MATERIAL WITNESS ORDER
JABBAR COLLINS,                                   287/94
                     Defendant                :

RE:  ANGEL SANTOS
                  Material Witness.           :
------------------------------------X

        Appearing from the annexed affirmation of Michael Vecchione
sworn to the 23rd day of February, 1995, that there is reasonable
cause to believe the existence of facts warranting the
adjudication of Angel Santos as a material witness,

        Further appearing that there is reasonable cause to believe
that the said Angel Santos would be unlikely to respond to a
order directing him to appear before this court at a designated
time, it is now on motion of Michael Vecchione, Assistant
District Attorney in and for the County of Kings, Brooklyn, New
York,

        ORDERED that a warrant be issued addressed to any police
officer of the City of New York directing that he take Angel
Santos into custody within the state of New York and to bring him
before the court forthwith in order that a hearing may be
conducted to determine whether he is to be adjudged a material
witness.

NYC00002105

The within order is hereby granted.

Dated:      Brooklyn, New York
            February 23, 1995

                              HON. FRANCIS X. EGITTO
                              JUSTICE OF THE SUPREME COURT OF
                              THE STATE OF NEW YORK

                              CLERK

                                        ┌─────────────────┐
                                        │  ENTERED        │
                                        │                 │
                                        │  FEB 28 1995     │
                                        │                 │
By:                                     │  WILBUR A. LEVIN │
                                        │  COUNTY CLERK    │
                                        └─────────────────┘

Assistant District Attorney
Kings County
Municipal Building
Brooklyn, New York  11201

NYC00002106

STATE OF NEW YORK)
                 )
COUNTY OF KINGS  )

IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK
TO ANY POLICE OFFICER OF THE CITY OF NEW YORK

An Order having been signed on the 23rd day of February, 1995, in the Supreme Court of the State of New York, County of Kings, commencing a proceeding to determine whether or not Angel Santos be adjudged a material witness in the case of People v. Jabbar Collins pursuant to Section 620.30 2B of the criminal Procedure law.

YOU ARE THEREFORE COMMANDED FORTHWITH, to arrest the above named Angel Santos within the State of New York and bring him before this court for this proceeding.

HON FRANCIS X. EGITTO
JUSTICE OF THE SUPREME COURT
KINGS COUNTY

FEB 23 1995

DATED: Brooklyn, New York
       February 23, 1995

ENTERED

FEB 23 1995

A. LEVIN
COUNTY CLERK

2/23/95
4:10 pm
Remanded to Civil Jail
/S/ Francis X. Egitto
JSC

NYC00002107

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS:
---------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,    :

                                        :

            - against -                 :    AFFIRMATION IN SUPPORT
                                             OF THE PEOPLE'S MOTION
                                             FOR A MATERIAL WITNESS
JABBAR COLLINS,                              ORDER
                    Defendant            :

RE:  ANGEL SANTOS,                       :

                    Material Witness.     :
---------------------------------------X

STATE OF NEW YORK)
COUNTY OF KINGS  )

    MICHAEL VECCHIONE, being duly sworn, deposes and says:
the courts affirms the truth of the following under penalty of
perjury:

    1.    That he is an Assistant District Attorney; that the
above named Jabbar Collins has been charged with the crime of
Murder in the Second Degree and that a criminal proceeding has
been commenced and is presently pending before the Supreme Court,
Part 39, County of Kings; that on February 21, 22 and 23, 1995
Detectives from the Brooklyn District Attorney's Office,
attempted to contact Angel Santos, at his residence and various
family members residences.  Detectives would ascertain Mr. Santos
whereabouts from family members but upon arrival to those
locations Mr. Santos would have just left.

    On February 23, 1995 Detectives Bondor and Maher located Mr.
Santos and brought him to the District Attorney's Office where

NYC00002108

Mr. Santos articulated to the detectives as well as Michael Vecchione that he would not testify at trial. Nor would he avail himself to be served a subpoena directing him to testify.

The said Angel Santos is a material witness in this matter pending before the Supreme Court Part 39, County of Kings, and that he possesses information material to the determination of the pending proceeding before Supreme Court, Part 39 and has not, and will not testify voluntarily nor will he comply with any subpoena seeking his attendance in this proceeding. Any further service of process upon this witness will be futile. That the past failure of Angel Santos to respond voluntarily to subpoena, demonstrates that he will not respond to an order compelling his appearance to proceedings adjudicating him a material witness.

WHEREFORE YOUR DEPONENT RESPECTFULLY PRAYS for an order of this court in pursuance to section 620.20 and 620.30 of the Criminal Procedure Law for an order adjudicating Angel Santos a material witness in this action and fixing bail to secure future attendance herein,

AND FURTHER for the issuance of a warrant to a police officer of the City of New York directing such police to take Angel Santos into custody within the State and to bring him before the Court forthwith.

*Michael Vecchione*
MICHAEL VECCHIONE
Assistant District Attorney

Dated:    February 23, 1995
          Brooklyn, New York

Sworn to before me this
23 day of february 1995.
Lou R. Katy
Notary Public State of New
York No. 02KA5023046
Qualified in ....

2

NYC00002109

003490

Inmate New History Inquiry  (QHIN)
Discharged After April 25, 1990
BK&CS: 1119500102    Name: SANTOS, ANGEL              NYSID: 09999999U    Sex: M
Dob: 15-JUN-63      Admit: 23-FEB-95                Status: UUUU    Warrant:
Last Housing Inst: BXHD    Last Transf Date:              Discharged from: SKA3
Custody Level: ███  Sent#:            Sent Facil Admit Date:          Red id:
Discharge Code: ROR          Discharge Date: 02-MAR-95      Reimb Date:

_____

                       Enter Branch Code:

                  Case and Warrant Information

| Docket# | Indict# | Cvt_Dte | Charges | Sent_Dt | Sent:_Min/Max | Rem | Disp | Wa |
|---------|---------|---------|---------|---------|---------------|-----|------|-----|
| 0094K000000 | 02884/0094 | | CIVIL | | 00 00 000/00 00 000 | Y | ROR | |

PLAINTIFF-049675

003491

```
14-DEC-09 10:41     Inmate Identification History Inquiry (QHID)
BK&CS: 1119500102                                      NYSID: 09999999U
Last Name: SANTOS              First: ANGEL        MI:
Street:                        Apt:
City:                          State:              Zip: 00000

DOB: 15-JUN-63  Race:          Hispanic?:     Nativity:
Citizen?:       Height:  '  "  Weight:        Eyes:         Hair:
Sex: M          Marital Status:    Religion:     Drugs:       Alcoholic?:
```

```
English?      Highest Education:      Employed?
Said Eligible?         SSN: 000000000   Inmate arrested via TNT raids?: N

Arrst #:              Arrest Date: 23-FEB-95          Arraign. Date: 23-FEB-95

  Possible Gang Affiliation?:
```

Branch to:                                                    INM_IDENT_INQ

PLAINTIFF-049676



**DISTRICT ATTORNEY OF KINGS COUNTY**
MUNICIPAL BUILDING
BROOKLYN, N.Y. 11201
(718) 802-2000

**CHARLES J. HYNES**
DISTRICT ATTORNEY

Date _3-2-95_

Holiday Inn Crown Plaza
104-04 Ditmars Blvd
East Elmhurst NY
☎ 457-6300

**Exhibit**
PH 157
6/21/13

Re: Custody # _1510_

Dear Sir or Madam:

This letter is to confirm reservations made on _3-2-15_
(date)

with _Barbara_ for two rooms (single and
(contact)

adjoining double). This custody was reserved under the name of

_Ellen Hughes_ and will begin on _3-2-95_
(date)

and end on _OPEN_
(date)

There will be no food, telephone or movie privileges for the

single room. Telephone privileges <u>only</u> will be provided for the

adjoining double.

All billing is to be directed to the Kings County District

Attorney's Office, Attention: Mr. Richard Safianow.

Should you have any questions, please contact me at

718-802-2994.

Rooms 619
621

Very truly yours,

Richard I. Safianow
Deputy Director of Operations

Confirmation # _____

OPER 26 - Rev. 6/94

NYC00010363

PLAINTIFF'S
EXHIBIT
308
1/22/13 AG
PENGAD 800-631-6989



101

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
                                    :
COLLINS,

        Plaintiff,                          08-CV-1359

            -against-              :

                                        United States Courthouse

ERCOLE,                                 Brooklyn, New York

        Defendant.              :
                                            June 8, 2010
- - - - - - - - - - - - - - X      10:30  o'clock a.m.

          TRANSCRIPT OF CIVIL CAUSE FOR HEARING
        BEFORE THE HONORABLE DORA L. IRIZARRY
            UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Petitioner:        JOEL RUDIN, ESQ.
                           TERRI ROSENBLATT, ESQ.
                           BEN FISHMAN, ESQ.
                           200 West 57th Street
                           Suite 900
                           New York, New York 10019


For the Respondent:        KINGS COUNTY DISTRICT
                           ATTORNEYS OFFICE - GENERIC
                           350 Jay Street, 17th Floor
                           Brooklyn, New York 11201
                           BY;  KEVIN SCOTT RICHARDSON
                                LEONARD JOBLOVE
                                VICTOR BARALL
                                Assistant District Attorneys

Court Reporter:
Marsha Diamond
225 Cadman Plaza East
Brooklyn, New York
TEL: (718) 613-2489
FAX: (718) 613-2369

                MARSHA DIAMOND, C.S.R.
                OFFICIAL COURT REPORTER

2969

118

1  my case. So I just want to thank the Court for its time, for

2  finally giving me a day in court, and for finally bringing the

3  suffering of my family to an end.

4          Thank you.

5          THE COURT: Thank you, all.

6          Let me just start off by saying that in terms of the

7  result that has been achieved here, either short of continuing

8  and concluding the hearing, that I certainly was prepared to

9  hold in this matter because I believe the only just and fair

10  result under all of the circumstances and to the extent that

11  the parties have been able to reach that resolution in the

12  manner in which they have, saving the expenditure of the

13  additional resources of the justice system, and I want to use

14  that in the expansive term because the District Attorney's

15  Office handles hundreds and hundreds of cases everyday and

16  Mr. Rudin has devoted his time pro bono, and we have a lot of

17  interns that are here today, and for all of the intents that

18  are here, it is good for them to see how important it is once

19  they become lawyers to devote some of their time to pro bono

20  work because it certainly was an important task to do, and

21  while Mr. Collins certainly gave himself a very good education

22  in the 16 years that he was incarcerated, there really can be

23  no substitute for the formal preparation and experience that

24  Mr. Rudin and his staff brought to bear on this case.

25          I am, however, disappointed in many ways that we did

2986

PLAINTIFF-019118

119

1   not follow through with the hearing despite the amount of work

2   that it would have been, despite the other pressures that the

3   Court has with respect to other cases. It's the

4   responsibility that I have accepted to take on and I don't

5   shirk from that responsibility. The reason why I'm

6   disappointed is because I believe that the transparency of the

7   justice system is important.

8        It's important in order to instill public faith and

9   confidence in the justice system. It is only by having trials

10  and by having hearings that the public has an opportunity to

11  see and the public also by way of the media is given the

12  opportunity to come to the courtroom and report what happens

13  in the courtroom, to see how cases are investigated, to see

14  how they are tried, to see how the jury responds, to see how a

15  judge conducts him or herself in the proceeding, to see how

16  the attorneys and the parties conduct themselves, and this is

17  true for civil matters as well as criminal matters. It is

18  important. It is disappointing that in the face of so much

19  documentary evidence that has been adduced here, primarily

20  through the efforts of Mr. Collins, his unwavering efforts to

21  simply get what he and his defense attorney were entitled to

22  in the very beginning during the trying of this case back

23  16 years ago, and indeed, it was still through those efforts

24  under the Freedom of Information Act and various other

25  mechanisms, that during the course of the pendency of this

120

1   petition that additional evidence was uncovered, specifically

2   the actual documentation of material witness order for

3   Mr. Santos that had also not been turned over to the defense.

4          Mr. Santos came here and testified before the Court

5   and yet, additional information came to light that had not

6   been turned over to the defense and that was, as he said it,

7   he was strung out.  He was using drugs 24/7, and in all

8   likelihood, was high the day he made the observations that

9   ultimately assisted in providing the evidence against

10  Mr. Collins that led to his arrest.

11         In fact, what's pretty dramatic about what he said

12  about that is that he said he was using just about every kind

13  of drug that there was except for heroin because he had

14  stopped using that some years before, but he was using just

15  about every other kind of drug that you can imagine, and what

16  he said was he was picked up off the street, in all likelihood

17  high, and the D.A.'s  Office proceeded to question him. No

18  indication as to whether or not he might have been going

19  through withdrawal. No indication whether he was given medical

20  attention.  Nothing.

21         And what he testified to was that he was

22  threatened, he was threatened with jail, he was threatened

23  with physical abuse, and frankly, he was cross examined by

24  respondent, and I found his testimony to be quite credible.

25  Nowhere in the record does there appear to be any proceeding

121

1  where he was brought before a judge on the material witness

2  order that was issued by Justice Egitto.  He was simply taken

3  from the interrogation room and put in jail.  So the

4  prosecutors made good their threat of putting him in jail if

5  he didn't testify.  He was held there for a week. The proper

6  process for holding a material witness is to bring that

7  witness before a judge so that the judge can advise that

8  person of his or her rights, assign counsel to advise that

9  person of their consequences, and then if the person still

10  refuses to comply, then civil commitment is in order. I,

11  myself, as a state court judge had the opportunity to handle

12  such proceedings, and they are important, and sometimes the

13  witness agrees once they come before the judge to testify and

14  sometimes they don't for any number of reasons.

15          But again, the fact that there are no minutes of any

16  such proceeding, none of this was ever disclosed, and there's

17  certainly no disagreement about that.  None of this was ever

18  disclosed to the defense and in fact, the prosecutor who got

19  the material witness order, Mr. Vecchione, did the summation

20  and made representations that Mr. Santos was testifying of his

21  own free will.  As he said here in open court under oath, he

22  didn't want to testify then, he didn't want to be here now.

23          After that all the other documents that support the

24  allegations that were raised by Mr. Collins, and then added to

25  that, the affidavits that were provided by Mr. Vecchione and

MARSHA DIAMOND, C.S.R.
OFFICIAL COURT REPORTER

2989

PLAINTIFF-019121

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

JABBAR COLLINS,                        : 08-CV-01359 (DLI)
                                       :
          Plaintiff,                   :
                                       :
                                       : United States Courthouse
     -against-                         : Brooklyn, New York
                                       :
                                       :
                                       : Thursday, May 27, 2010
ROBERT ERCOLE,                         : 1:30 p.m.
                                       :
          Defendant.                   :
                                       :
                                       :

- - - - - - - - - - - - - - - - X


TRANSCRIPT OF CIVIL CAUSE FOR HEARING
BEFORE THE HONORABLE DORA L. IRIZARRY
UNITED STATES DISTRICT JUDGE



A P P E A R A N C E S:


For the Petitioner:   LAW OFFICES OF JOEL B. RUDIN
                      200 West 57th Street
                      Suite 900
                      New York, New York 10019
                   BY: JOEL B. RUDIN, ESQ.
                      BENJAMIN FISHMAN, ESQ.
                      TERRI ROSENBLATT, ESQ.


Victoria A. Torres Butler, CRR
Official Court Reporter

2

A P P E A R A N C E S:  (Continued)


For the Respondent:    OFFICE OF THE DISTRICT ATTORNEY
                       KINGS COUNTY
                           Renaissance Plaza
                           350 Jay Street
                           Brooklyn, New York 11201-2908
                       BY:LEONARD JOBLOVE, ESQ.
                           KEVIN S. RICHARDSON, ESQ.



 For Angel Santos:     COLSON & HARRIS, LLP
                           10 East 40th Street
                           Suite 3307
                           New York, New York 10016
                       BY:JUSTINE A. HARRIS, ESQ.




Court Reporter:  Victoria A. Torres Butler, CRR
                 Official Court Reporter
                 Tele: (718) 613-2607 / Fax: (718) 613-2324
                 E-mail:  VButlerRPR@aol.com
Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

Victoria A. Torres Butler, CRR
Official Court Reporter

PLAINTIFF-044068

2859

A. Santos - Direct / Rudin                    19

THE WITNESS:  Yes.

THE COURT:  Okay, thank you.

Please, state and spell your full name for the record.

THE WITNESS:  Angel Santos.

THE COURTROOM DEPUTY:  Thank you.

THE WITNESS:  A-N-G-E-L, S-A-N-T-O-S.

THE COURTROOM DEPUTY:  Thank you.

THE COURT:  Good afternoon, Mr. Santos.

We have some water there for you in case you would like some, and Ms. Harris is sitting nearby in the event that some issue may arise.  It's possible that she might ask the Court to interrupt questioning, and I will certainly give her an opportunity to consult with you.

If you have any question that you feel you might want to discuss with her, just let me know and I'll give you time to consult with her.  Okay?

Mr. Rudin, you may enquire.

MR. RUDIN:  Thank you, Your Honor.

DIRECT EXAMINATION
BY MR. RUDIN:

MR. RUDIN:  Good afternoon, Mr. Santos.  My name is Joel Rudin and I represent the Petitioner in this proceeding, Jabbar Collins.

Q    Are you here pursuant to a subpoena?

happening besides what your father-in-law had said to you from the building?

A    No.  He just said call.  He just tell me, 'dial 911, somebody shooting.'  That's about it.

Q    Okay.  Now, when you met with Mr. Vecchione, did he actually give you a subpoena requiring you to testify the way that you received the subpoena for this proceeding now?

        Did he actually hand you a piece of paper saying that you had to testify?

A    I don't recall.  I don't remember that part.

Q    Well, did you say to Mr. -- did Mr. Vecchione --

        MR. RUDIN:  Withdrawn.

Q    Did Mr. Vecchione ask you whether or not you would come to court and testify voluntarily?

A    No, no.  I had told him that I didn't want to get involved.  So, what they did, they locked me up.

Q    I'm sorry?

A    I had told him that I didn't want to get involved.  So, what he did, they locked me up.

Q    Before they locked you up, did they tell you what would happen if you did not come to court to testify?

        What would happen to you?

A    Well, he, well, he told me, actually, that he was yelling at me and telling me that he was going to hit me over the head with some coffee table.

A. Santos - Direct / Rudin                    38

THE COURT:  With some what?  Some what?

THE WITNESS:  Actually, when I was in his office, I guess, he was telling me that he was going to hit me with something, with a coffee table, something, if I, I didn't testify.  Or he would lock me up for perjury, give me a couple of years.  I don't know.  I don't remember.  I remember it was a big number but back then, you know --

Q    A big --

THE WITNESS:  -- my mind, I was totally messed up.

Q    You said a big number.

You meant a big number of years?

A    Yes.

Q    And after he hold you that, did you still say you would not testify?

A    No.  I didn't want to testify, no.

Q    But did you tell him that?

A    Well, that's when they locked me up.  That's when they send me to jail.

Q    Well, when they sent you to jail, before they sent you to jail, did they bring you anywhere?  To a court, or to see a judge?

A    I, I might.  I don't remember.  I mean...

Q    So, you don't have any memory of actually being in front of a judge before you went to jail?

A    I think, I don't know, maybe I went twice to see a judge?

```
                    A. Santos - Direct / Rudin              39
```

I don't recall.  I don't recall.

Q     Well --

        THE COURT:  Well, Mr. Santos, when you had that
meeting with Mr. Vecchione where you told him you didn't want
to be involved, did you go home after that meeting?

        THE WITNESS:  No.  I think they took me straight to
jail.  Yes, I think they did.

Q     So, your memory is, you only saw a judge after you spent
a week in jail?

        MR. RICHARDSON:  Objection.

        THE COURT:  Sustained as to form.

Q     Well, you -- do you remember whether the same day you
went to jail you also saw a judge?  Or not?

A     Well, what I came -- when I came out of jail?

Q     No.  Before you went to jail, did Mr. Vecchione take you
to see a judge?

A     I don't remember.

Q     Do you have any memory of seeing a judge on the same day
you went to jail?

        MR. RICHARDSON:  Objection; asked and answered.

        THE COURT:  Overruled.

A     I don't recall.

Q     On the day that you went to jail, did anybody provide you
with an attorney?

A     I don't remember.