# EXHIBIT F

jail time?

A. Yes, I did.

Q. How long did you spend in jail?

A. I was sentenced to two to six years in jail. I did two years out of the two to six.

Q. When was this?

A. Back in '89.

Q. Now, since 1989, have you been convicted of any crimes?

A. No, I haven't.

Q. Do you have any criminal cases pending at this time?

A. No.

Q. And in exchange for your testimony, have you received any deals from the District Attorney's Office of Kings County?

A. No, I haven't.

Q. Have you received any consideration or deals from any other district attorney's office?

THE COURT: Stop. Stop. Sidebar.

(The following proceedings take place at sidebar, outside the presence of the jury:)

THE COURT: If my memory is correct, at

MR. OSTROWSKY: Something doesn't fit here, Kyle.

THE COURT: When was he relocated?

MR. REEVES: He was relocated three weeks ago.

And prior to his relocation, he had had people on the street threaten him very obliquely, through -- not through, I'll tell you who it was.

Mrs. Lee has made threats to his mother. Mrs. Lee has made threats to his friends to send messages to him. Mrs. Lee lives in the same building as his mother, has daily contact with her and that's how the threats have been coming.

Threats have also been made to his common-law spouse. Threats have also been made to Gail Springer, who is the relative, the common-law spouse of John Steadman, they have a child together.

Threats have been made to Carrie Steadman, who will be testifying. Those threats came from a fellow by the name of Pastel, who has been in court every day. I

don't see him in court today. I don't know his real name.

MR. OSTROWSKY: In relation to my client?

MR. REEVES: Yes.

Pastel had made comments to me as I entered court yesterday as well. I did not attribute those to your client because I don't know what communication has been had between Pastel. As soon as I find out his real name, I'll take the appropriate actions.

THE COURT: Before we go back in, if you intend to have this out, that he was relocated by the People, it's going to have to come out now in an answer to this question. If it doesn't come out now, if you say you don't want it, I will not let you bring it out.

Do you want to take a moment and think about it?

MR. OSTROWSKY: Yes, I do, Judge.

THE COURT: Go ahead.

(Pause)

MR. OSTROWSKY: Judge, I'm going to

# AFFIDAVIT OF RICHARD RIVERA

RICHARD RIVERA, being duly sworn, hereby states the following is true:

1. I was a prosecution witness against Gregory Ellis in connection with Mr. Ellis' prosecution in the Kings County Supreme Court for the January 1, 1994, murder of John Steadman.

2. While I am currently sober and drug-free and have been for some time, at the time of Mr. Steadman's murder and Mr. Ellis' first trial I was a hard-core drug addict. During that time I used everything, including alcohol, crack-cocaine, and heroin.

3. Although I had previously worked as a truck helper, by January 1, 1994, my drug addiction was so bad that it I was unable to maintain steady employment. It would have been obvious to anyone looking at me around that time that I was a drug addict.

4. Because of my addiction, I was strung out and wasn't in my right state of mind, and I was actually high on drugs when the murder took place.

5. I recall that I first became involved in this case when detectives came to my house a couple of days after the murder. I believe that Mr. Steadman's sister and friend told detectives I knew something about the crime, and as a result the detectives came to my house. I recall speaking to a Detective named Malpica.

6. While I was in the area around the time the murder took place, I didn't want to get involved and I tried to wiggle my way around talking to them. However, the detectives kept harassing me by returning to my house.

7. I later testified at the grand jury and it was around then that I first met prosecutor Kyle Reeves.

8. Prior to Mr. Ellis' first trial in November 1994, I was living in East New York, Brooklyn. I had moved to East New York on my own volition giving the authorities a statement in this case.

9. However, I learned for the first time when speaking to attorney Rita Dave's paralegal Jabbar Collins and Private Investigator Sonya Glover that during Mr. Ellis' trial Reeves represented to the Court that I had been placed in a hotel because of threats Michael Lee's mother directed at me. That representation is absolutely false.

10. I was never threatened by Michael Lee's mother, Mr. Ellis, Michael Lee, or Dwayne Brown. I was never threatened by any of their friends, family members, or anyone else on their behalf.

11. While I was living in East New York, representatives of the DA's office came to me and *they told me* that the defendants and their family members knew where I lived and that I was in danger. The DA representatives said that it was best for me to be moved and promised to relocate me once the case was over.

12. In other words, my move was totally initiated by the DA's Office. I never told them I was in danger or had been threatened. I never asked to be placed in a hotel. However, believing what they told me about my life being in danger was true, I agreed to be moved.

13. I was placed in a hotel where I could go and come as I pleased. Every two days or so, detectives would bring me food money, around $20. The detectives would knock on my room door and then slide the money under the door without coming in to check on me.

14. While I was in the hotel, I continued to use drugs. I believe Reeves and the detectives knew I was using drugs because I would, typical of a drug addict, miss appointments with them and disappear for several days. Nevertheless, they continued to give me the $20 every two days.

15. Prior to me testifying at Mr. Ellis' first trial, I told Reeves that I didn't want to testify because I was on drugs when the murder took place, and my mind was messed up back then. Reeves responded by telling me don't worry about it, everything will be alright.

16. The day or morning before I was scheduled to testify at Mr. Ellis' first trial, I had a telephone conversation with Reeves. I told Mr. Reeves that I didn't want to participate in the case anymore.

17. I lied to Reeves that I wasn't at the hotel, and told him that I was leaving and wasn't going to court.

18. Minutes after my phone call with Reeves, several detectives swarmed into my room, handcuffed me, and placed me under arrest.

19. I was never shown a warrant, taken before a judge, or advised that I had a right to an attorney.

20. While I don't specifically remember at this time where they took me, they probably took me to the DA's Office to meet with Reeves as he was the prosecutor who sent the detectives to arrest me in the first place.

21. My memory is that I was later placed in a different hotel, in a hotel room adjoining one with two detectives.

22. I was placed there against my will. I wasn't allowed to leave, make phone calls, smoke cigarettes, or even use the bathroom without leaving the bathroom door open. I was never given any witness fee.

23. At the time I testified at Mr. Ellis' first trial, I was still using drugs.

24. After I testified at Mr. Ellis' first trial the detectives released me from the hotel and I went right back to using drugs.

25. After I testified at Mr. Ellis' first trial, the DA's Office stopped assisting me financially and essentially made me homeless.

26. Because I had believed the DA's claim about my life being in danger, I was scared to go back to my home. And because the DA stopped paying for the hotel room they initially gave to me, I couldn't go back there either.

27. As a result, I had to stay in abandoned buildings. In January 1995 I was arrested for burglary stemming from me being in an abandoned, garbage filled house with no running water or furniture.

28. Police came into the house, arrested me and charged me with burglary when in truth, I was just trespassing because I didn't have anywhere to live.

29. After my arrest on the burglary case I was put in jail. While in jail there came a point when detectives brought me to the DA's Office. I never asked to be brought there and I didn't have a choice as to whether to go.

30. I was kept handcuffed while at the DA's Office, while Reeves talked to me about the case. He made jokes about me and the case and made me feel uncomfortable.

31. While Reeves did not come out and directly say it, he implied that if I testified against Mr. Ellis, Reeves would help me with my open burglary case. Reeves gave me the impression that if I helped convict Mr. Ellis, Reeves would help me out with my case.

32. I didn't want to testify against Mr. Ellis but I felt that based on the way Reeves had dealt with me I had no choice and was forced to do so.

33. I'm sorry for testifying against Mr. Ellis. I wasn't in my right state of mind at the time the crime took place, and I can honestly say that Mr. Ellis did not have a fair trial.

RICHARD RIVERA

Sworn to before me this 13th
day of August, 2020

NOTARY PUBLIC

SONYA GLOVER
Notary Public, State of New York
Reg. No. 01GL6349721
Qualified in Queens County
Commission Expires 10/31/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS : CRIMINAL TERM
----------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

- against -

GREGORY ELLIS,

Defendant.

----------------------------------------X

MATERIAL WITNESS ORDER

Ind. No. 6587/94

Appearing from the annexed affirmation of Kyle C. Reeves, sworn to on the 30th day of November, 1994, that there is reasonable cause to believe the existence of facts warranting the adjudication of Richard Rivera as a material witness,

Further appearing that there is reasonable cause to believe that Richard Rivera would be unlikely to respond to an order directing him to appear before this court at a designated time, it is now on motion of Kyle C. Reeves, an Assistant District Attorney in and for the County of Kings, Brooklyn, New York,

ORDERED that a warrant be issued addressed to any police officer of the City of New York directing that he or she take Richard Rivera into custody within the State of New York and bring him before the court forthwith in order that a hearing may be conducted to determine whether he is to be adjudged a material witness.

The within order is hereby granted.

Dated: Brooklyn, New York
November 30, 1994

Justice of the Supreme Court
of the State of New York

ENTERED
NOV 30 1994
WILBUR A. LEVIN
COUNTY CLERK

Clerk - Kings County

By: Kyle C. Reeves, Assistant District Attorney

STATE OF NEW YORK )
)
COUNTY OF KINGS )

IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK

TO ANY POLICE OFFICER OF THE CITY OF NEW YORK

An Order having been signed on the 30th day of November, 1994, in the Supreme Court of the State of New York, County of Kings commencing a proceeding to determine whether or not Richard Rivera be adjudged a material witness in the case of People v. Gregory Ellis, pursuant to Section 620.30(B) of the Criminal Procedure Law.

YOU ARE THEREFORE COMMANDED FORTHWITH, to arrest the above named Richard Rivera within the State of New York and bring him before this court for this proceeding.

ENTERED
NOV 30 1994
WILBUR A. LEVIN
COUNTY CLERK

JUSTICE OF THE SUPREME COURT
KINGS COUNTY

Dated: Brooklyn, New York
November 30, 1994

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS : CRIMINAL TERM
-----------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

- against -

GREGORY ELLIS,

Defendant.

-----------------------------------------X

AFFIRMATION IN SUPPORT OF THE PEOPLE'S MOTION FOR A MATERIAL WITNESS ORDER

Ind. No. 6587/94

KYLE C. REEVES, an attorney duly admitted to practice law before the courts of the State of New York, hereby affirms the following to be true under the penalties of perjury:

1. I am the Assistant District Attorney in Kings County, and am familiar with the facts and circumstances of the within action by virtue of a review of the case file maintained by the Kings County District Attorney's Office.

2. The within defendant has been indicted under Kings County Indictment Number 6587/94 and charged with two counts of Murder in the Second Degree (P.L. §§ 125.25[1],[2]), Criminal Possession of a Weapon in the Second Degree (P.L. § 265.03) and Criminal Possession of a Weapon in the Third Degree (P.L. § 265.02), stemming from an incident occurring on January 1, 1994, when the defendant, together with two other apprehended others, fired handguns at John Steadman, and so caused his death. Richard Rivera was an eyewitness to the shooting incident, and has previously testified in all three Grand Jury proceedings, and at a Rodriguez hearing conducted before this Court on November 23, 1994.

3. Richard Rivera possesses information which is material to this action. Indeed, Richard Rivera is an eyewitness in this case, and based upon conversations had with him by myself, if Richard Rivera were to testify at the trial of this case, his testimony would make out all of the elements of the crimes with which the defendant is charged. Mr. Rivera was present when the car in which the defendant and his two accomplices opened fired at John Steadman and subsequently identified all three defendants.

4. Richard Rivera has been in an unsupervised custody for purposes of his safety for the past three weeks. Mr. Rivera previously appeared at the trial of this matter on November 23, 28 and 29, 1994. Richard Rivera has failed to appear voluntarily at the Office of the District Attorney today, November 30, 1994. Based upon telephone conversations had with the witness this morning, Mr. Rivera made it clear to me in those conversations that he would not respond and appear in court to complete his testimony today.

5. The foregoing demonstrates that Richard Rivera is a material witness in this matter pending before the Supreme Court of Kings County, and that he possesses information material to its' determination. Moreover, it is clear that Richard Rivera will not testify voluntarily nor will he comply with any subpoena seeking his attendance at this proceeding. Any service on this witness will be futile, and in fact, may facilitate him leaving the jurisdiction in an effort to avoid service.

6. No previous application for this relief has been made before any other justice, judge, or magistrate in the action presently pending before this Court.

**WHEREFORE YOUR AFFIRMANT RESPECTFULLY REQUESTS** an order of this court in pursuance to section 620.20 and 620.30 of Criminal Procedure Law for an order adjudicating Richard Rivera a material witness in this action and fixing bail to secure future attendance herein,

**AND FURTHER** for the issuance of a warrant to a police officer of the City of New York directing such police to take Richard Rivera into custody within the State of New York, and to bring him before the Court forthwith.

Dated: Brooklyn, New York
November 30, 1994

Kyle C. Reeves
Assistant District Attorney



.STRICT ATTORNEY OF KINGS COUN...
MUNICIPAL BUILDING
BROOKLYN, N.Y. 11201
(718) 802-2000

CHARLES J. HYNES
DISTRICT ATTORNEY





# Detective Investigators

**FAX COVER SHEET**

**TO:** Holiday Inn Crowne Plaza

**FAX NUMBER:** (718) 899-9768

**FROM:** Det. Michael Wistner

**DATE:** Nov. 30, 1994 **TIME:**

**NUMBER OF PAGES (including this cover) :** 2

**MESSAGE:** Reservation under Custody# 1467

**DETECTIVE INVESTIGATORS: (718) 802 - 2900**

**FAX: (718) 802 - 2452**






CHARLES J. HYNES
DISTRICT ATTORNEY

Date Nov. 30, 1994

Holiday Inn Crowne Plaza
104-04 Ditmars Blvd
[illegible] Elmhurst N.Y.
Fax (718) 899-9768
Tel.# (718) 457-6300

Re: Custody # 1467

Dear Sir or Madam:

This letter is to confirm reservations made on Nov. 30, 1994 (date) with LINDA (contact) for two rooms (single and adjoining double). This custody was reserved under the name of Michael Wishner and will begin on Nov. 30, 1994 (date) and end on Dec. 1, 1994 (date)

There will be no food, telephone or movie privileges for the single room. Telephone privileges only will be provided for the adjoining double.

All billing is to be directed to the Kings County District Attorney's Office, Attention: Mr. Richard Safianow.

Should you have any questions, please contact me at 718-802-2994.

Very truly yours,

Richard I. Safianow
Deputy Director of Operations

Confirmation # 62288013

OPER 26 - Rev. 6/94

MUNICIPAL BUILDING
BROOKLYN, N.Y. 11201-3745
(718) 802-2000

CHARLES J. HYNES
DISTRICT ATTORNEY

TO : CHIEF INVESTIGATOR

FROM : Sr. D.I. Anthony Sorrentino

SUBJECT : CUSTODY # 1467

---

1. CHECK SPECIAL TOURS BEFORE ASSIGNING INVESTIGATORS.

2. 6:00 AM x 2:30 PM TOUR WILL TRANSPORT THE WITNESSES DURING DAY HOURS AND 1:00 PM x 9:30 PM WILL TRANSPORT THE WITNESSES DURING THE EVENING HOURS.

3. PRIOR APPROVAL FROM THE CHIEF INVESTIGATOR MUST BE OBTAINED FOR THE FOLLOWING : WITNESS LEAVING THE HOTEL, WITNESS MAKING PHONE CALLS AND ANY OFFICE CARS LEFT AT THE CUSTODY SITES.

4. SUPERVISOR IN CHARGE WILL PICK UP CUSTODY BEEPER FROM SUPPORT ZONE.

5. INVESTIGATORS WILL NOT TRANSPORT WITNESSES IN THEIR PRIVATE VEHICLES.

6. INVESTIGATORS ARE ON DUTY WHEN THEY SIGN IN AT CUSTODY LOCATION AND OFF DUTY WHEN THEY SIGN OUT.

7. INVESTIGATORS MUST SIGN THE CUSTODY LOG BOOK AND CALL THE D.A.'S OFFICE AT THE START AND END OF THEIR TOURS. ( AFTER BUSINESS HOURS CALL THE FOURTH FLOOR SECURITY DESK WHERE THE SIGN IN LOG BOOKS ARE MAINTAINED.)

8. CUSTODY SUPERVISOR WILL NOTIFY OPERATIONS OF A CUSTODY. OPERATIONS WILL MAKE ARRAIGNMENTS FOR THE HOTEL. * AFTER BUSINESS HOURS HOTEL ARRAIGNMENTS WILL BE MADE BY THE CUSTODY SUPERVISOR AND OPERATIONS IS TO BE NOTIFIED THE NEXT MORNING.

9. THE FOLLOWING QUESTIONS WILL BE ANSWERED BY SUPERVISOR IN CHARGE OF CUSTODY AND CHECKED BY DEPUTY CHIEF.

DISTRICT ATTORNEY OF KINGS COUN
MUNICIPAL BUILDING
BROOKLYN, N.Y. 11201
(718) 802-2000





CHARLES J. HYNES
DISTRICT ATTORNEY

# Detective Investigators

**FAX COVER SHEET**

TO: Holiday Inn Crowne Plaza

FAX NUMBER: (718) 899-9768

FROM: Det. Michael Wishtwer

DATE: Dec. 1, 1994 TIME: ______

NUMBER OF PAGES (including this cover) : 2

MESSAGE: Closing custody # 1467

DETECTIVE INVESTIGATORS: (718) 802 - 2900

FAX: (718) 802 - 2452

DISTRICT ATTORNEY OF KINGS COUNTY
MUNICIPAL BUILDING
BROOKLYN, N.Y. 11201-3745
(718) 802-2000



Date: Dec. 1, 1994

Dear S. Madam:

Please close custody No. 1467 on Dec. 1, 1994.

If you need any further information, please call me at

Sincerely,

Richard I. Safianow
Deputy Director of Operations

OPER 24 - 1/93

MUNICIPAL BUILDING
BROOKLYN, N.Y. 11201-3745
(718) 802-2000



CHARLES J. HYNES
DISTRICT ATTORNEY

DISTRICT ATTORNEY OF KINGS COUNTY

MEMORANDUM

TO : TED LEATHEM

FROM : ELLEN HUGHES

DATE : Dec. 1, 1994

SUBJECT : CUSTODY # 1467

Effective Dec. 1, 1994, please conclude the above custody at the Holiday Inn Crowne Plaza Hotel. Please contact me if you have any problems with this directive.

Your cooperation in this matter is appreciated.

cc: K. Coyne