# EXHIBIT  G

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS:
--------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

                              Plaintiffs.

              vs.                            MATERIAL WITNESS ORDER

TASKER SPRUILL,

                    Defendant.

RE:  MARILYN CONNOR,

                    Material Witness.
- - - - - - - - - - - - - - - - - - - - - - - - - -X

         It appearing from the annexed affidavit of Stan Irvin
sworn to on the 10th day of July, 1998, that there is reasonable
cause to believe the existence of facts warranting the adjudication
of Marilyn Connor as a material witness, and it further appearing
that there is reasonable cause to believe that the said Marilyn
Connor would be unlikely to respond to an order directing her to
appear before this court at a designated time; it is now on motion
of Stan Irvin Assistant District Attorney in and for the County of
Kings, Brooklyn, New York.

         ORDERED that a warrant be issued addressed to a police
officer of the City of New York directing that the said police
officer take Marilyn Connor into custody within the State of New
York and to bring before the court forthwith in order that a
proceeding may be conducted to determine whether she is to be
adjudged a material witness.

         The within order is hereby granted.

DATED:    Brooklyn, New York
          July 10, 1998

                              Justice of the Supreme Court
                              of the State of New York
                              HON. FLORA M. EDWARDS

                                                      ENTERED

                                                      JUL 10 98

                              _____          WILBUR A. LEVIN
                                    Clerk                COUNTY CLERK


          CHARLES J. HYNES
          District Attorney

      By: _____
          STAN IRVIN
          Assistant District Attorney
          Kings County
          Municipal Building
          Brooklyn, New York

STATE OF NEW YORK )
                  )
COUNTY OF KINGS   )


IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK

TO ANY POLICE OFFICER OF THE CITY OF NEW YORK

An Order having been signed on the 10th day of July, 1998, in the Supreme Court of the State of New York, County of Kings, commencing a proceeding to determine whether or not Marilyn Connor be adjudged a material witness in the case of People vs. Tasker Spruill pursuant to Section 620.30 2B of the Criminal Procedure Law.

YOU ARE THEREFORE COMMANDED FORTHWITH to arrest the above named Tasker Spruill within the State of New York and bring her before this court for this proceeding.

Justice of the Supreme Court
Kings County

HON. GLORIA M. DABIRI

DATED:    Brooklyn, New York
          July 10, 1998

ENTERED

JUL 10 98

WILBUR A. LEVIN
COUNTY CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS:
---------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

                        Plaintiffs.

            vs.

TASKER SPRUILL,                              Indictment #13008/95

                    Defendant.

RE: MARILYN CONNOR,

            Material Witness.
---------------------------------------------X

STATE OF NEW YORK )
                  )  ss.:
COUNTY OF KINGS   )

            Stan Irvin, being duly sworn, affirms and says:

            That he is an Assistant District Attorney; that the
above-named Tasker Spruill has been charged with the crime of
Murder in the Second Degree et. al., and that a criminal proceeding
has been commenced and is presently pending before the Supreme
Court, Part 44, County of Kings; that in the past, detectives from
the 73rd Precinct have spoken to Marilyn Connor's mother,
attempting to locate Marilyn Connor. The mother stated that her
daughter was dead. Upon checking two weeks ago Marilyn Connor's
social security number was still active. A warrant has been
pending since 1994 for Marilyn Connor for failure to appear in
Court on her own case. Marilyn Connor is an eyewitness to the
homicide of Tracy Thomas and she has given a sworn statement saying
she has been threatened in Tasker Spruill's case. Marilyn Connor
stated to detectives that she witnessed the incident and saw Tasker
Spruill shoot Tracy Thomas. Marilyn Connor also gave a tape
recorded sworn statement to an Assistant District Attorney in which
she also stated that she saw Tasker Spruill shoot Tracy Thomas. In
the sworn statement was when she stated that she had been
threatened. It is unlikely she would respond to a subpoena due to
the threat against her, and due to her not responding to Court on
the case against her, resulting in an arrest warrant being issued
against her. This demonstrates that she will not respond to an
order compelling her appearance to proceedings adjudicating her a
material witness.

            WHEREFORE YOUR DEPONENT RESPECTFULLY PRAYS for an order
of this court in pursuance to section 620.20 and 620.30 of the
Criminal Procedure Law for an order adjudicating Marilyn Connor a

material witness in this action and fixing bail to secure future attendance herein,

AND FURTHER, for the issuance of a warrant to a police officer of the City of New York directing such police officer to take the said Marilyn Connor into custody within the State of New York and bring her before the Court forthwith.

STAN IRVIN

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: PART 38
--------------------------------------------------------------------x
PEOPLE OF THE STATE OF NEW YORK,

                                                  INTERIM DECISION AND
                                                  ORDER
         -against-                               Indictment No.: 13008/95
                                                Date: July 15, 2016

TASKER SPRUILL,
                                  Defendant
--------------------------------------------------------------------x

By motion dated March 14, 2016, Defendant has moved for an order pursuant to CPL §

440.10(1)(b), (c), (f), (g) and (h), and the Due Process clauses of the State and Federal

Constitutions, vacating Defendant's September 16, 1998 murder conviction (Belen, J.), ordering a

new trial or an evidentiary hearing, and such further relief as this Court deems proper.

Defendant argues that his murder conviction should be vacated based on the "egregious

misconduct" of a former prosecutor, now-retired ADA Stan Irvin. (Dave Aff. ¶2). Defendant

contends that Irvin "submitted forged documents to the Court, suppressed crucial *Brady* material,

and knowingly used false or misleading evidence and argument at trial." (Dave Aff. ¶2).

Defendant maintained his innocence at trial and sentencing. Defendant argues, as he did

at trial, that he had no motive to commit the crime and that there were no incriminating statements

or physical evidence connecting him to the murder. Defendant now asserts that the prosecution's

case was "essentially based on two dubious witnesses" procured by the prosecution only by

coercion and a pattern of misconduct amounting, in essence, to a fraud on both Defendant and the

trial court sufficient to warrant relief under CPL § 440.10.[1]

---

[1] Defendant does not assert that he is actually innocent.

1

Defense counsel argues that the prosecution's "egregious misconduct" provides at least five grounds to vacate his conviction. First, counsel argues that the conviction may be vacated pursuant to *Brady v. Maryland*, 373 US 83 (1963), which requires the prosecution to disclose all material evidence favorable to the defense. Defense counsel argues that the prosecutor's suppression violated *Brady* by depriving Spruill of "exceedingly powerful evidence he could have used to destroy both [the witness's] credibility and the integrity of the People's case." (Dave Aff. ¶11). Defense counsel further argues that "Irvin's suppression of his abuse of process violated *Brady* as well because it deprived Spruill of powerful grounds to have [witnesses] Newton and Connor's trial testimony suppressed or stricken from the record" (Dave Aff. ¶12), citing *inter alia People v. Arocho*, 85 Misc 2d 116 (Sup Ct New York Co. 1976).

Second, defense counsel argues that Defendant's conviction may be vacated on state and federal constitutional due process grounds based on Irvin's knowing use of, and failure to correct, false or misleading evidence and arguments. (Dave Aff. ¶¶7, 14).

Third, defense counsel argues Spruill's conviction may be vacated pursuant to CPL § 440.10(1)(b), which provides a basis for vacatur, independent of a *Brady* violation, when a prosecutor obtains a conviction through misrepresentation or fraud, citing *People v. Seeber*, 94 AD3d 1335 (3d Dept 2012).

Fourth, Defendant argues that his conviction may be vacated based on newly discovered evidence, CPL § 440.10(1)(g), "as Irvin's covert misconduct was previously unavailable, not merely impeaching, could not have been discovered prior to trial through the exercise of due diligence, and would have changed the outcome of trial in this particularly weak case." (Dave Aff. ¶ 16).

2

Fifth, and finally, Defendant argues that Spruill's conviction may be vacated "based on Irvin's use of Newton's legally coerced testimony at trial." (Dave Aff. ¶ 17).

The People oppose, asserting that there were no *Brady* violations, primarily in that any matters not fully disclosed would not have had any reasonable probability of changing the jury's verdict had it been disclosed, and do not give cause to doubt the outcome of the trial.

Notably, despite the numerous allegations of impropriety, no affidavit or affirmation has been submitted by former ADA Irvin or his trial co-counsel to dispute or deny any of the alleged improprieties.

FACTS AND PROCEDURAL HISTORY

A. *Statement of Facts*

The undisputed trial testimony evidenced that on October 22, 1993, near MacDougal[2] Street and Hopkinson Avenue in Brooklyn, Tracey Thomas, a reputed drug dealer, was shot by a bullet fired into his chest, and that Thomas died shortly thereafter.  Thomas had been sitting in his car, a black Saab, in front of a video game and pool hall which was owned by Defendant, informally known as "Pike."  There was further undisputed testimony that Thomas drove his car around the corner, and then collapsed at the wheel, and as a result, the Saab crashed into another vehicle. Shawn Newton, also known as Derrick Wright, testified that he was sitting next to Thomas, in the front passenger seat, and witnessed the shooting. A third person in the car, Greg Pearson, had been shot and killed subsequent to the shooting of Thomas but before Defendant's trial.  After the shooting, Newton climbed out of the rear window of the car and left the scene.  At trial, Newton, who had known Defendant "all his life" (Trial Transcript 463), identified Defendant

---

[2] This is sometimes incorrectly referred to in the parties' papers and transcripts as "McDonald."  As McDonald Avenue does not go anywhere near Hopkinson, we assume this to be a transcription error for the correct street, MacDougal Street, which is in the same Bedford-Stuyvesant neighborhood as Hopkinson Avenue, now known as Thomas S. Boyland Street.

3

as the shooter, first in a statement to law enforcement shortly after the shooting,[3] and then at trial. At the time he testified, Newton was serving a lengthy prison sentence for Criminal Possession of a Narcotic Drug, specifically crack cocaine, with Intent to Sell. (Trial Transcript 447, 607).

There was testimony that Defendant fled the area and could not be located for several years. After numerous efforts across multiple states to locate Defendant, including repeated surveillance and the unfruitful execution of a search warrant, Defendant was apprehended four years later in Baltimore, Maryland, and gave the police a false name, Kevin Mayberry.

Defendant was charged, by Kings County felony indictment 13008/95, with one count of Murder in the Second Degree (PL § 125.25[1]), one count of Criminal Possession of a Weapon in the Second Degree (PL former § 265.03) and one count of Criminal Possession of a Weapon in the Third Degree (PL former § 265.02).

On July 31, 1998, after a jury trial at which Newton and a second witness, Marilyn Connor, identified Defendant as the shooter, the jury found Defendant guilty of Murder in the Second Degree.

On September 16, 1998, Defendant was sentenced to a prison term of twenty five years to life. (Belen, J., at trial and sentence).

*B. Post-Conviction Challenges*

Defendant appealed from his judgment of conviction to the Supreme Court of the State of New York, Appellate Division, Second Department ("Appellate Division"). Defendant claimed that he was deprived of a fair trial because the prosecutor allegedly mischaracterized the defense during summation. Defendant further claimed that he was deprived of a fair trial by the improper admission of consciousness of guilt evidence, including testimony that an inmate at Rikers Island

---

[3] Newton's initial statement to police disclaimed any knowledge.

4

had threatened Shawn Newton by showing Newton a copy of Newton's own grand jury testimony and calling him a "snitch," and the admission of evidence concerning Defendant's "Pike" tattoo, which the prosecutor contended was hidden by another tattoo in an effort by Defendant to conceal his identity after the shooting of Tracey Thomas.

Defendant was granted permission by the Appellate Division to file a *pro se* supplemental brief. In Defendant's brief, dated March 2002, Defendant raised multiple claims attacking the prosecutor's summation, including the prosecutor's comments referring to the presence of Defendant's brothers at the scene, comments which Defendant argued improperly suggested that the defense should have called them as witnesses.

On November 2, 2002, the Appellate Division, by a three-to-one vote, affirmed Defendant's judgment of conviction. *People v. Spruill,* 299 AD2d 374 (2d Dept. 2002). The majority held that the consciousness-of-guilt evidence was properly admitted, stating:

> Contrary to the defendant's contention, the trial court providently exercised its discretion in permitting the testimony regarding the implied threat. The witness' testimony of his conversation with the fellow inmate circumstantially connected the defendant to the threat. The witness' credibility was a matter for the jury.

> The trial court also providently exercised its discretion in permitting the alteration of the defendant's tattoo to be considered as evidence of consciousness of guilt. While there was no direct evidence as to when the defendant altered his tattoo, there was sufficient evidence from which it could be inferred that the tattoo was altered after the shooting. Further, the trial court gave a comprehensive instruction regarding evidence of consciousness of guilt, advising the jury that such proof has slight value, must be scrutinized carefully, and that there could be innocent explanations for such conduct.

> While the prosecutor improperly implied during his summation that the defendant should have called his brothers, who were present at the crime scene, as witnesses, that error does not warrant reversal.

*Id.* at 375 (citations omitted).

5

The dissent voted to reverse the judgment, on the law, and order a new trial, holding that the improper admission of evidence of purported intimidation of a witness and the prosecutor's arguments in summation warranted reversal of Defendant's conviction and a new trial. (Goldstein, J.) *Id.* at 376.

Defendant moved before the dissenting justice for leave to appeal to the Court of Appeals. On January 13, 2003, the dissenting justice (Goldstein, J.) denied Defendant's motion for a certificate granting leave to appeal to the Court of Appeals.

By *pro se* application dated April 2, 2004, Defendant petitioned the United States District Court for the Eastern District of New York ("District Court") for a writ of *habeas corpus* pursuant to 28 USC § 2254. In his petition, Defendant claimed that he was deprived of his right to a fair trial by the admission of the consciousness of guilt evidence. On July 25, 2005, the District Court denied Defendant's petition for a writ of habeas corpus and declined to grant a certificate of appealability. *Spruill v. Phillips*, No. 04 CV 1382, 2005 WL 1743828 (EDNY 2005) (Gershon, J.). With respect to the claim challenging the admission of testimony concerning the threat that Newton had allegedly received in jail, the District Court held:

> In light of all the evidence presented to the jury in this case, the testimony concerning the threat was not sufficiently material to provide the basis for petitioner's conviction, nor to remove a reasonable doubt that would have existed on the record without it. Indeed, if the jury found Newton's testimony concerning the threat credible, then it likely also found credible Newton's testimony that he witnessed petitioner shoot Thomas. Furthermore, the impact of the testimony concerning the threat was mitigated by the court's instructions to the jury…

*Id.* at *6. With respect to the claim challenging admission of evidence concerning the tattoo, the District Court held that:

> In light of the other evidence introduced by the prosecution, including unchallenged consciousness of guilt evidence, and the court's instructions with respect to the consciousness of guilt evidence, the admission of the evidence concerning the alteration of the tattoo did not violate due process.

6

*Id.* at *7.

On June 6, 2006, the United States Court of Appeals for the Second Circuit denied Defendant's application for a certificate of appealability. *Spruill v. Phillips*, Docket No. 05-6184-PR.

### DEFENDANT'S MOTION TO VACATE THE CONVICTION

#### A. The Parties' Contentions

By motion dated March 14, 2016, Defendant now moves pursuant to CPL § 440.10 for an order vacating his judgment of conviction. In support of his motion, the defense argues that the assistant district attorney who prosecuted the case, Stan Irvin, committed prosecutorial misconduct based upon the following allegations: (i) Irvin submitted affirmations to the court to obtain orders to produce Shawn Newton from prison and *Damiani* orders facilitating the transfer of Newton from Rikers Island to the District Attorney's Office, and Irvin's paralegal forged Irvin's name on those orders; (ii) Irvin abused the orders to produce and the *Damiani* orders by using them improperly, and thereby coerced Newton to testify against Defendant; (iii) Irvin committed a *Brady* violation by failing to disclose the material witness order that he had used to secure the attendance of Marilyn Connor, the second eyewitness, at trial; (iv) Irvin falsely presented Newton at trial as a Good Samaritan who was testifying of his own volition to see that justice was done, when Newton had, in fact, been coerced to testify; (v) Irvin suborned perjury when he permitted Newton to testify falsely that Newton had not possessed any drugs when he was convicted of a drug-related felony in New York County; and (vi) Irvin misused the material witness order for Connor to compel her presence at his office. Defendant claims he is entitled to vacatur of his conviction because the alleged prosecutorial misconduct constituted misrepresentations and fraud within the meaning of CPL § 440.10(1)(b) and because the court orders and the affirmations that

7

were submitted to obtain those court orders constitute newly discovered evidence under CPL §440.10(1)(g), having been revealed only after Defendant received response to Freedom of Information requests made after his conviction, appeal, and habeas corpus petition.

The People oppose all five prongs of Defendant's argument. First, the People contend that Defendant's *Brady* claim should be rejected without a hearing because he has failed to establish that the prosecutor committed a *Brady* violation. Second, the People argue, Defendant's claim that the prosecutor knowingly used and failed to correct false evidence is procedurally barred and meritless. Third, the People further argue that Defendant's claim that his conviction was procured by misrepresentation and fraud is procedurally barred and meritless. Fourth, the People contend that the *Damiani* orders, the material witness order, and the affirmations that were submitted to obtain those orders are not newly discovered evidence. Finally, it is the People's position that Defendant's claim that the prosecutor improperly used Newton's testimony at trial is procedurally barred and meritless.

*B. The Legal Standard*

CPL § 440.10(1)(h) permits a court in which a judgment was entered the power to vacate that judgment upon showing that "the judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States." Post-judgment proceedings under CPL § 440.10 are viewed as an emergency measure, affording a defendant a remedy only where no other judicial relief is, or ever was, available to him. *People v. Donovan*, 107 AD2d 433 (2d Dept 1985). Furthermore, in order to obtain reversal of a judgment under this provision, the defendant must make a showing that no other remedies or procedures exist that can serve, or might have served this purpose. *People v. Reese*, 100 Misc 2d 951 (Sup Ct, Kings County 1979).

CPL § 440.10 states, in pertinent part:

8

> 2. Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate judgment when:
>
> (a) The ground or issue raised upon the motion was previously determined on the merits upon an appeal from a judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue;

The purpose of this provision is to prevent CPL § 440.10 from being used as a substitute for a direct appeal where a defendant could have raised the issue on appeal, but failed to do so. *People v. Cooks*, 67 NY2d 100, 103 (1986). As the Court of Appeals noted in *Cooks*, "only in the unusual situation that sufficient facts with respect to the issue do not appear on the record is a CPL § 440.10 motion to vacate available as a means of review." *Id* at 104.

C. *Brady Analysis*

In *Brady v. Maryland*, 373 US 83 (1963), the Supreme Court held that the prosecution has an affirmative duty to disclose to the defense evidence in its possession that is both favorable to the defense and material to guilt or punishment. This prosecutorial duty is well established in New York (*see e.g. People v. Savvides*, 1 NY2d 554), and the prosecution's failure to disclose *Brady* material violates a defendant's constitutional right to due process. *People v. Wright*, 86 NY2d 591, 595 (1995).

In *Wright*, where the People did not dispute defendant's factual allegations that the complainant had previously operated as a police informant, the Court of Appeals held that the People had impliedly conceded the truthfulness of that allegation. *See, e.g., People v. Ciaccio*, 47 NY2d 431, 438. *See also People v. Gruden*, 42 NY2d 214, 216 ("[n]ormally what is not disputed is deemed to be conceded"). Consequently, the Court reasoned, if the allegations made by defendant constituted *Brady* material, the trial court was obligated to grant defendant's CPL § 440.10 motion. *See CPL § 440.30[3]), People v. Gruden. supra*, at 215-216.

9

Having found that the evidence in *Wright* was manifestly favorable to the defendant, the Court reasoned that the People's failure to disclose this favorable evidence to the defense requires reversal only if the evidence is material. *Id.* at 596. Defendant Wright contended that her pretrial request for "any deals, promises or agreements entered into by the People or any agent thereof and any prosecution witness" constituted a specific request for the information in question, "thereby triggering the less stringent 'reasonable possibility' materiality standard articulated in *People v. Vilardi* (76 NY2d 67)." *Id.* at 596-597. The Court held that:

> Even assuming that this is not a "specific request" case, however, the undisclosed evidence must be deemed material because there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. (*People v. Chin*, 67 NY2d 22, 33; *People v. Smith*, 63 NY2d 41, 67 *cert denied* 469 US 1227).

*Id.* at 597.

In *People v. Bond*, 95 NY2d 840 (2000), the Court of Appeals held that reversal of defendant's conviction is required "if there is a reasonable possibility that, had the material been disclosed, the result would have been different." In that case, the key witness, an admitted drug addict, was the only witness who provided direct evidence that defendant shot the victim. The sole eyewitness testified, at Bond's CPL § 440 hearing, that on the night of the shooting when the detectives came to her house to speak with another witness, "[t]hey asked me did I see anything and I told them no." (*id.* at 842), which was in direct contradiction to her trial testimony. In *Bond*, the People conceded that the witness's prior denial of having seen the shooting is *Brady* material and that defendant made a specific request for such material in his omnibus motion. Thus, the Court held, reversal of defendant's conviction is required if there is a "reasonable possibility" that, had that material been disclosed, the result would have been different. *Id.* at *843,* citing *People v. Vilardi*, 76 NY2d 67, 77; *See also People v. Davis*, 81 NY 2d 281 (1993). *Bond* held that the key

10

sole eyewitness's testimony was "crucial to the People's theory that it was defendant alone who shot and killed the victim despite other evidence that an alleged co-perpetrator was also at the scene and discharged his gun." *Supra* at 841. In addition, the Court held, "while defendant was able to challenge the key witness's credibility based on her drug usage, he was denied the opportunity to challenge the credibility of this witness as a liar." *Id.*

Here, the movant asserts that the Court should apply the "reasonable possibility" standard used in *Bond*. The People assert that because no specific request was made for material now asserted to constitute *Brady* material, the Court should apply the "reasonable probability" standard. At this time, and for the reasons set forth below, it is unnecessary to determine which standard is applicable.

The defense contends that had the alleged *Brady* violations been disclosed, Justice Belen would have suppressed the testimony of both witnesses. "But not every significant misjudgment by the prosecution entitles the defendant to a windfall." *People v. Williams*, 7 NY3d 15, 20 (2006). In *Williams*, where during defendant's trial, the court became aware that a *Brady* violation had occurred at a pretrial suppression hearing when the People failed to disclose facts harmful to the credibility of their only witness, the Court of Appeals held that the trial court did not abuse its discretion in ordering a new suppression hearing, at which defendant was allowed to attack the witness's credibility with the newly-disclosed evidence and the People were allowed to call another witness who did not have the same credibility problem.

Defendant claims he is entitled to vacatur of his conviction because the alleged prosecutorial misconduct constituted misrepresentation and fraud within the meaning of CPL § 440.10(1)(b) and because the court orders and the affirmations that were submitted to obtain those court orders constitute newly discovered evidence under CPL §440.10(1)(g). "But courts are not

11

always required to sacrifice justice in the case before them to the possibility of such deterrence." *People v. Williams*, 7 NY3d 15, 20 (2006) citing *Brady*, 373 US at 87 ("The principle ... is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused.")    Assuming arguendo that a *Brady* violation occurred in our case, which has neither been conceded by the People nor established by Defendant, a more appropriate remedy would be a new trial, where presumably the prosecutor could call the same witnesses, and Defendant would be allowed to attack the witnesses' credibility with the newly disclosed evidence.

While not all of the defense allegations are supported by the record, and some appear to be directly controverted by the trial record, Defendant has produced credible documentary evidence that:  a) Irvin had a paralegal sign his name to various affirmations;  b) Irvin failed to disclose to the court or defense counsel that witness Marilyn Connor appeared in court pursuant to a material witness order, which failure was somewhat mitigated by Connor's testimony that she appeared only because she was threatened by Detectives;  and c) Newton, who testified that he met with ADA Irvin about 20 times prior to trial, apparently pursuant to *Damiani* orders, did not evidence his consent to these meetings as would be expected by signing the orders.

We further note that the record evinces ADA Irvin's less than robust adherence to *Brady* obligations and best practices during trial.  While we cannot and do not consider matters apparent from the face of the record to support a CPL § 440 motion, we can consider them solely to provide background as to the matters dehors the record.  Thus, at trial, Irvin:  a) after claiming in his opening that Newton would be the only eyewitness to testify, immediately thereafter produced a second eyewitness, Connor;  b) attempted to force defense counsel to proceed immediately to cross examination of the surprise witness Connor without sufficient preparation;  c) disclosed, during trial, for the first time, some loose photos apparently shown to Connor, one of which was a photo

12

of Morris Rogers, with handwriting on the back reading "ID'd [sic] as Pike and the shooter by Marilyn Connor" [4]; d) neglected to inform defense counsel or the trial judge that Connor appeared under a material witness order signed by a different judge, even when the trial judge discussed the possibility of him issuing a material witness order for Connor; and e) produced, for the first time, near the close of the People's case, photographs of Defendant cutting his arm and bleeding, which the People sought to introduce to establish that Defendant had a "Pike" tattoo around the time of the shooting.

We again note the absence of any affidavit or affirmation from former ADA Irvin, denying or disputing any of Defendant's allegations, notwithstanding that we are advised that the District Attorney's Office has been in contact with him regarding this motion. [5]

In her Reply, defense counsel notes that "Spruill's papers sufficiently set forth a basis establishing Newton had been legally coerced…or at the very least, a basis upon which the defense could have made a powerful argument to the jury along those lines" (Def. Reply Memo at 19). Defense counsel further notes that while the prosecution claims that "Newton made a conscious and informed decision to meet with Irvin" (Opp at 14-15) and the prosecution draws from the trial record "the self-serving inference that Newton 'consented' to meet with Irvin and was reluctant to testify because of his own fear" (Reply at 20), the People's Opposition Papers lack any affirmation from Irvin or a detective-investigator asserting that "Newton willingly accompanied the detective-investigators to the so-called 'meetings'" (Reply at 20). Moreover, defense counsel notes, the People do not even allege that Newton met with Irvin voluntarily, "choosing instead to make

---

[4] To further complicate matters, the Detective who showed Connor the photographs claimed not to recognize this handwriting, while his former partner, familiar with the writing of the first Detective, ascribed the writing to him.
[5] No affidavit or affirmation has been submitted by the ADA who served as the second seat at Defendant's trial.

13

carefully worded, pregnant objections about how Spruill failed to prove Newton was coerced." (Reply at 21).

Defense counsel's strongest argument appears to be that affirmative acts, misstatements, omissions and misrepresentations which constituted *Brady* violations were knowingly made by the People and purposefully concealed from the defense – in short, a pattern of purportedly egregious fraud on both the court as well as Defendant. However, Defendant's moving papers do not conclusively prove these allegations, even without any denial by former ADA Irvin.

*D. Procedural Issues*

Some of the arguments raised herein were apparent from the face of the record, and are now procedurally barred from review. The People's Opposition asserts that review of certain other claimed Brady violations not apparent from the face of the record are procedurally barred pursuant to various subsections of CPL § 440. *See* CPL § 440.10(1)(g), 440.30(4)(b). Given the allegations set forth in the moving papers, which, if proven, would amount to a deliberate and massive fraud on the court, we decline at this time to hold that consideration of such a fraud may be procedurally barred.

CONCLUSION

Following oral argument held on July 13, 2016, we hold that on this record, an evidentiary hearing is necessary as to the following factual issues:

a) The circumstances surrounding the testimony of Shawn Newton, and particularly whether he consented to meet with ADA Irvin about twenty times prior to trial, as he testified, or whether his testimony was coerced.
b) Whether Irvin engaged in a deliberate pattern of deception upon the court.

On the other hand, no hearing is necessary as to certain other issues asserted by Defendant's motion, as the facts regarding these issues are either evident from the trial record, or sufficiently established by the motion papers. After the hearing, the Court will apply the relevant law to those

14

facts, as well as to the facts to be found after the hearing.  The matters as to which no hearing is necessary are:

   a) Irvin's failure to disclose to the court and defense counsel that Marilyn Connor appeared as a witness only pursuant to a material witness order.
   b) Irvin's alleged subornation of perjury by allowing Newton to testify that he did not possess the drugs for which he was convicted of possession. This allegation is based entirely on the record, and is therefore barred, as a matter which could have been raised on direct appeal.  Moreover, after reviewing the record, we do not find these allegations to be supported.
   c) Irvin's alleged presentation of Newton as testifying only because he was a Good Samaritan interested in seeking justice for the murder of his deceased friend.  The record reveals that the numerous promises of help made to Newton were fully disclosed by the People and in Newton's testimony and utilized by trial counsel in cross-examination and summation to discredit Newton.
   d) The signing of Irvin's name by a paralegal on various documents.

At the hearing, the Court expects that former ADA Irvin and possibly the former ADA who was the second seat at trial will be called as witnesses.  At oral argument, we were advised that Shawn Newton recently contacted the District Attorney's Office.  Of course, Shawn Newton may also be called to testify by either Defendant or the People.

Defendant's motion to vacate the conviction is granted to the extent that a hearing will be held on July 27, the date agreed to by the parties at oral argument, for the issues set forth above. The People will prepare an Order to Produce and ensure that Defendant is produced from Greenhaven Correctional Facility for the evidentiary hearing.

This constitutes the decision and interim order of the Court.

MICHAEL GERSTEIN
Acting Justice of the Supreme Court

15