# EXHIBIT M



**CHARLES J. HYNES**
DISTRICT ATTORNEY

DISTRICT ATTORNEY OF KINGS COUNTY
MUNICIPAL BUILDING
BROOKLYN, N.Y. 11201-3745
(718) 802-2000

## TAKING STATEMENTS FROM SUSPECTS AND WITNESSES

The most critical aspect of a riding assistant's responsibility is taking statements from witnesses and defendants. If done correctly, a good case can be transformed into an excellent case. If these tasks are performed carelessly, an otherwise solid case can be lost at the precinct stage.

### STATEMENTS OF SUSPECTS

Successful statements are taken only when the assistant understands the forces operating on the individual giving the statement and the purpose for taking that statement. Statements of suspects are particularly crucial in criminal prosecutions where there are no known witnesses. In such cases the prosecution may hinge totally upon the ability of the Police Officer or Assistant District Attorney to get inculpatory statements or admissions from the accused. In a case where witnesses are known to police, a suspect's statement is taken essentially to "lock" him into an account and prevent him from falsely recanting or tailoring his story at a later date.

A statement by a suspect admitting his or her involvement in the crime is an exception to the hearsay rule and can be offered into evidence on the People's direct case through the testimony of the Assistant District Attorney who questioned the suspect. However, before any statement made by a defendant to law enforcement officials can be admitted at trial, a pre-trial <u>Huntley</u> hearing must be held to determine if the statement was properly obtained. Since statements cannot be used on the People's direct case unless the People can establish, beyond a reasonable doubt, that the accused knowingly, intelligently and voluntarily waived his or her right to counsel, it is essential that the prosecutor be aware of the applicable case law.

b. <u>Securing a knowing, voluntary and intelligent waiver of the accused's Fifth and Sixth Amendment Right</u>

It is the policy of the Investigations Bureau that any conversation whatsoever between a suspect and an A.D.A. must be <u>recorded</u> in some fashion. An A.D.A. must never speak to a subject off the record.

-2-

There should be <u>no</u> discussion with the suspect either "off the record" or before the rights are read. This forecloses the suspect from claiming that the A.D.A. made off the record promises to him which induced him to make his statement.

The Assistant District Attorney must <u>READ</u> <u>the</u> <u>Miranda</u> <u>Warnings</u> to the suspect and record all of the responses on videotape. This is done to avoid the possibility of an Assistant, who is under pressure, from forgetting to mention one of the rights and invalidating the use of the statement. In addition, the assistant is asked to read the rights and conduct the examination in a conversational rather than an authoritative or accusatory tone of voice. The tape will eventually be shown to a jury and it is crucial that the atmosphere be (and appear to be) non-coercive. An accusatory harangue by an assistant will only insure that the jury will be suspicious of the People's case and the voluntariness of the statement. Once the rights are given/waived, questioning can begin.

c. <u>Taking the suspect's statement</u>

To question a suspect effectively, it is necessary to understand the motivation and dynamics of the encounter. First and most important, the suspect who makes statements does so because he believes it is in his own <u>best</u> interest. A suspect will generally speak for the following reasons:

1. <u>Alibi</u> - The defendant says, "You have the wrong guy. I was somewhere else."

2. <u>Justification</u> - This is in essence, "I did it but I had good reasons."

3. <u>Shift Responsibility</u> - "I was involved but the other guy did the shooting and it was his idea!"

4. <u>Accident</u> - "I never intended to kill him."

5. <u>Cooperation</u> - The belief that "things will go easier" in exchange for cooperation.

-3-

<u>Remember</u>, a suspect will <u>only</u> make statements because it is in his best interest, not because of the force of an Assistant District Attorney's personality, brilliance or the nasty way the riding Assistant District Attorney snarls while questioning.

If the police officer or detective did not obtain a confession, the Assistant District Attorney will not do any better. Do not be alarmed if your interrogation yields no confession. You will have achieved your goal merely by locking the suspect into his own story before it can be altered or enhanced for jury appeal.

Since the suspect will only answer in a manner he perceives to be in his best interest, the method of the examination should be similar to an Examination Before Trial. The suspect should not be cross-examined but rather examined and "locked in" to what he wants to say. The suspect has not spoken to an attorney does not know the law and does not know what the assistant knows about the investigation. In view of these facts, he may make crucial admissions which negate certain avenues of defense. Accordingly, the general rule is that suspect's statement should contain as much detail as possible.

d. <u>Dealing with defenses raised during the interview</u>

During questioning, any potential defenses should be recognized and, if possible, diffused. Therefore, the Assistant District Attorney must know the elements of the crime and any defenses. It is also important for the assistant to resolve any legal obstructions to the use of the statement. Toward that end, a thorough understanding of the Right to Counsel cases is a must. Furthermore, an affirmative approach to solving potential problems should be taken. For example, if the suspect says, "The police officer beat me at the precinct and didn't give me any rights", the assistant should advise the suspect that if his allegation is true any statement made to the Police Officer would not be used against him. The assistant should ask the suspect if he or she is speaking now because of the previous beating or because he or she wants to talk voluntarily. An astute, aware prosecutor must meet challenges directly.

Procedurally, an assistant, after reading the rights, will ask the suspect what occurred. If the suspect lapses into a narrative that speaks to the issue, the assistant should not interrupt. When defendant is finished the assistant should return to any areas that need clarification and have the suspect reiterate the story. If he strays to extraneous or self-serving matters, regain control of the interview and steer the questioning to the facts surrounding the crime itself. In all cases, it is important to let the <u>suspect</u> do the talking.

-4-

Inexperienced attorneys must fight the strong tendency to perform, (i.e., unnecessary question, posture, etc.). If the suspect gives the Assistant District Attorney a full confession containing all the elements of the crime without raising any defenses, further examination by the Assistant is foolish. A simple thank you will suffice!

Some suspects will want to talk a great deal. They too must be channeled to the areas that need to be answered. Other suspects may need to be prodded. Those suspects should be asked innocuous questions leading up to the crime, extracting as much detail as possible. It is important to just get them talking.

Again it is extremely important never to forget that a suspect answers in his or her best interest, therefore, never approach a crucial issue directly:

Example: In a felony murder case.

BAD    -    "You knew John had a gun, didn't you!?"

BETTER -    "How long has John owned a gun?"

Always remember that the suspect is listening to your questions with his freedom at stake. The way a question is asked can telegraph the appropriate answer. What suspect will answer yes to a question that asks, "Did you intend to kill her, etc.?" Generally, intent questions are not successful. Instead, get him to articulate factors from which intent may be inferred (eg: what was suspect doing or saying at any particular point, what could he see, his relationship to co-defendants and his words or actions before, during and after the crime).

Finally, it is good form to limit leading questions. Allow the suspect to describe what happened. Clarify all pronouns and slang. Use simple language and, most importantly, act ethically and professionally.

## STATEMENTS OF WITNESSES

### a. Potential Prosecution Witnesses

Witnesses to serious crimes are the raw material of a major case. On the day of the incident it is the police department's responsibility to bring these people to the precinct to be interviewed. The manner in which witnesses are treated and how their statements are taken will indelibly effect a case.

-5-

The riding Assistant District Attorney has the responsibility of audio taping witnesses in certain cases. Witnesses are taped in all homicides and any case where witnesses may be pressured to change their story (i.e., domestic relations civilian witnesses to polices shootings, alibi or other potential defense witnesses).

Since the cooperation of witnesses is necessary for a successful prosecution, the manner in which a witness is treated at the precinct will establish the relationship between that witness and the Office of the District Attorney. A professional, courteous and sympathetic approach is necessary and will surely help reap dividends at a future time.

A witnesses is taped to ensure that he witness will tell essentially the same story on the stand as they told at the precinct. The procedure avoids a later response of, "I really didn't see anything." On the day of the incident most witnesses are at the zenith of their cooperation. They are angry, excited, have some faith in the criminal justice system. Many times out of a sense of importance they want to help the police. The next day when the witness reflects upon what he or she saw, the desire to cooperate can easily be overcome by apathy or fear of reprisal.

Witnesses should be questioned in detail as to what they saw and heard _before_ a taped (and, if possible, sworn) statement is taken. All _exculpatory_ material should be noted.

Unlike taking a suspect's statement details provided by inculpatory witnesses _should not_ be elicited on tape. This will only create materials that defense counsel can use to confuse our witnesses/or otherwise, exploit on cross-examination. Only the important and material aspects of the inculpatory witness' observations are recorded.

Example: "I saw Joe shoot Jim and Jim was unarmed. I have known Joe for two years and I see him most everyday". Questions eliciting facts such as the color of Jim's shirt, how far Joe was standing from the corner, which hand the gun was in and how long Jim suffered before he died should not be asked _unless_ they go to an important element of the observation.

b. _Potential Defense Witnesses_
Conversely, alibi or other potential _defense witnesses_ _should_ _be_ _questioned_ _in_ _detail_ _on_ _tape_ to ensure that they cannot tailor their own testimony to comport with the accused at some later proceeding. The more detail you elicit, the more areas of cross-examination the trial A.D.A. will have to exploit at trial.

-6-

**Conclusion**

Treat all interviewees respectfully, regardless of their position in your investigation. Whenever possible conduct sworn taped witness interviews. Conduct thorough interviews of potential prosecution witnesses, but tape only the bare essentials (i.e. elements of the crime, I.D. of the target and the nature and depth of the relationship. If any exists, between the witness and the target). If truly exculpatory material exists, record that as well. Question suspects and potential defense witnesses in detail and on tape. Never speak to a suspect off the record.

DN/zps