# EXHIBIT U

DISTRICT ATTORNEY OF KINGS COUNTY

M E M O R A N D U M

TO   : FOIL FILE - Indictment Number 2884/94

FROM: Jonathan Inker

DATE: April 1, 1997

RE   : Response to Justice Dowd's decision of Jabbar Collins's Article 78 motion - FOIL

---

Justice Dowd's decision on defendant's Article 78 petition was divided into distinct sections. After consultation with Virginia Modest, Bureau Chief of the Legal Support Bureau, the following is an explanation of how the district attorney's office complied with the Court's decision.

Records Previously Claimed Not to be in the Possession of the District Attorney's office

The District Attorney's previous responses to defendant's FOIL request for deferral forms has consistently been that there were no such documents in our possession. As I was reviewing the trial folder, I came across three pages which were clearly identifiable as deferral forms. These forms have been made available to defendant.

Another document that was found was a letter to a probation officer from Deputy District Attorney Michael Vecchione which stated in part that the reason that Adrian Diaz had not contacted his probation officer was because he was in Puerto Rico because he feared retribution from defendant as a consequence of Diaz's testimony in connection with this case. After conciliation with Virginia Modest, it was determined that this letter was not responsive to defendant's February 7, 1996 FOIL letter. Therefore, it was not made available to defendant.

Police Reports:

The court required the district attorney's office "to supply all

1

memobook, police reports, UF-61 and DD5s and police documents within 20 days of receipt of a copy of this decision. Respondent is granted permission to apply for an exemption."
The district attorney's office complied with the court's decision in the following manner.

DD5s

There were 80 DD5s prepared in this case. 71 were created for the investigation of the homicide of Abraham Pollak, and 9 were created for the investigation for the robbery/attempted murder of Paul Avery. The defendant was given access to 61 pages of DD5s subject to appropriate redactions. Defendant was denied access to the several DD5s because they contained statements of witnesses that did not testify at trial. Witness statements are exempt from disclosure under the Freedom of Information Law unless they have been disclosed in court. See Public Officers Law § 87(2)(e)(iii); see also Knight v. Gold, 53 A.D.2d 694 (2d Dep't 1976); Matter of Spencer v. New York State Police, 187 A.D.2d 919 (3rd Dep't 1992); Matter of Moore v. Santucci, 151 A.D.2d 677 (2d Dep't 1989); Melendez v. City of New York, 109 A.D.2d 13 (1st Dep't 1985).

Defendant was also denied access to DD-5s that contained statements anonymous callers who gave information regarding the homicide. As per Virginia Modest, these DD-5s contained information from a confidential sours, and therefore are exempt from FOIL. These records were compiled for law enforcement purposes and, if disclosed, would identify a confidential source or disclose confidential information relating to a criminal investigation. See Public Officers Law § 87(2)(e)(iii).

DD5 #61 was denied to defendant because it contained steps which the police officers took while investigating the homicide. This DD-5 revealed the steps taken during the investigation. Therefore, it was exempt from FOIL because, if disclosed, it would: i) interfere with law enforcement investigations and ii) reveal nonroutine criminal investigative techniques and/or procedures. See Public Officers Law § 87(2)(e)(i, iv).

Memobook Entries:

Defendant was given access to the memobook entries of P.O. Nieves and Garcia because they testified at trial. Defendant was also given access to memobook entries from an unidentified police officer. Defendant was denied access to the memobook entries of P.O. Jocular because he did not testify at trial, and statements of witnesses that did not testify at trial are exempt from FOIL disclosure.

Miscellaneous Police Reports:

In addition to the police reports that had previously been made available to defendant, the following police reports have

2

also been made available to defendant:

|  | # of Pages |
|---|---|
| Log book entries | 7 |
| Medical Examiner Case Follow up | 1 |
| Deferral of Prosecution forms | 3 |
| Index Sheet | 8 |
| Laboratory Latent Print Reports | 6 |
| Fingerprint forms | 3 |
| Ballistic Unit Reports | 4 |
| Request for Sprint tapes | 2 |
| Crime Victims Claim Form | 1 |
| Hospital Canvass Form | 1 |
| Stop and Frisk Report | 1 |

Defendant was denied access to laboratory reports that contained the results of an examination of the victim's clothing because this constituted a nonroutine investigative techniques and thus are not disclosable under the Freedom of Information Law. See Public Officers Law § 87(2)(e)(iv); Matter of Spencer v. New York State Police, 187 A.D.2d 919, 920-921 (3rd Dep't 1992).

Attorney Work Product:

ADA Jonathan Inker was informed by ADA Susan Wagner that when the "attorney work product" documents that were described in her response to defendant's motion included all original pages that were written by the prosecutor's in this case. These included pages where the prosecutor had written down questions that he was going to ask a witness at trial, and also question and answers that were actually asked at trial. Each of these documents was flagged with a pink piece a paper and numbered. There were twenty-four of these documents in the trial folder.

Criminal Records:

The Court required the District Attorney's office to examine all of the district attorney's files and determine if the district attorney's office had any record of convictions that were not obtained through the Division of Criminal Justice Services. To comply with this directive, pedigree information from each trial witness was inputed into the Case Tracking system, and the results were printed out using the PRINT SCREEN key. Defendant was only given access to that portion of the printout which stated that the witness had a criminal conviction. Defendant was not given access to any portion of the printout which either indicated that the witness had no conviction, or that the witness had been convicted of a violation or received an ACD because these are not criminal convictions.

3

Please note that in order to limit the search for criminal conviction of Esther and Luis Velez, the date of birth that was inputed for each of them was the date that was written on the inside cover of the folder bearing their name. Although the date was written and did not explicitly state that it was their date of birth, it was assumed that it was their date of birth.

Furthermore, since the pedigree information of Detective Jose Hernandez and Police Officer Carlos Garcia was limited to their names it was not possible to run an accurate search for any past criminal convictions.

Two cases of Paul Avery were also not turned over to defendant because each one indicated that the final status of the case was that a bench warrant had been issued; however, when this indictment number was checked in the OCA computer it was found that both of the cases had been resolved. Therefore, it would have been improper to release the CASE TRACKING information to the defendant, and since it is not possible to print off the OCA computer, and the OCA computer is not a record of the Kings County District Attorney's office, no further information was provided.

C.P.L. § 240.45

The Court required the district attorney's office to make available to defendant statements by Yousicher Gelbman, Rifka Pollak, Luis Velez and Angel Santos. There were no statements by any of these witnesses that were in the possession of the district attorney's office other than those statements that have either previously been made available to defendant, or have been made available to defendant pursuant to the Court's decision in the instant proceeding, or statements that were made during the Grand Jury proceeding that are exempt from disclosure. The Grand Jury minutes indicate that the following witnesses testified in front of the Grand Jury: Israel Rosado, Paul Avery, Adrian Diaz, Angel Santos, Police Officer Nieves and Detective Jose Hernandez. The Grand Jury testimony of these witnesses were not made available to defendant because Grand Jury testimony is exempt from FOIL. Grand Jury proceedings and the materials and testimony related thereto are secret and cannot be revealed. See Penal Law § 215.70; Criminal Procedure Law § 190.25(4)(a). Therefore, these records are not subject to disclosure under the Freedom of Information Law. See Public Officers Law § 87(2)(a).

Furthermore, Grand Jury minutes are court records, not agency records, and thus are exempt from the ambit of the Freedom of Information Law. See Mullgrav v. Santucci, 3rd Dep't 1993); Gibson v. Grady, 192 A.D.2d 657 (2d Dep't 1993).

4

There were no statements of Doctor Stephen Deroux other than those statements contained in the Autopsy report which are exempt from disclosure pursuant to New York City Charter § 557(g), and thus are exempt from disclosure under the Freedom Of Information Law. See Public Officers Law § 87(2)(a); New York City Charter § 557(g); Assakaf v. Arden, 210 A.D.2d 325 (2d Dep't 1994).