# EXHIBIT V

## AFFIDAVIT OF RICHARD RIVERA

RICHARD RIVERA, being duly sworn, hereby states the following is true:

1. I was a prosecution witness against Gregory Ellis in connection with Mr. Ellis' prosecution in the Kings County Supreme Court for the January 1, 1994, murder of John Steadman.

2. While I am currently sober and drug-free and have been for some time, at the time of Mr. Steadman's murder and Mr. Ellis' first trial I was a hard-core drug addict. During that time I used everything, including alcohol, crack-cocaine, and heroin.

3. Although I had previously worked as a truck helper, by January 1, 1994, my drug addiction was so bad that it I was unable to maintain steady employment. It would have been obvious to anyone looking at me around that time that I was a drug addict.

4. Because of my addiction, I was strung out and wasn't in my right state of mind, and I was actually high on drugs when the murder took place.

5. I recall that I first became involved in this case when detectives came to my house a couple of days after the murder. I believe that Mr. Steadman's sister and friend told detectives I knew something about the crime, and as a result the detectives came to my house. I recall speaking to a Detective named Malpica.

6. While I was in the area around the time the murder took place, I didn't want to get involved and I tried to wiggle my way around talking to them. However, the detectives kept harassing me by returning to my house.

7. I later testified at the grand jury and it was around then that I first met prosecutor Kyle Reeves.

8. Prior to Mr. Ellis' first trial in November 1994, I was living in East New York, Brooklyn. I had moved to East New York on my own volition giving the authorities a statement in this case.

9. However, I learned for the first time when speaking to attorney Rita Dave's paralegal Jabbar Collins and Private Investigator Sonya Glover that during Mr. Ellis' trial Reeves represented to the Court that I had been placed in a hotel because of threats Michael Lee's mother directed at me. That representation is absolutely false.

10. I was never threatened by Michael Lee's mother, Mr. Ellis, Michael Lee, or Dwayne Brown. I was never threatened by any of their friends, family members, or anyone else on their behalf.

11. While I was living in East New York, representatives of the DA's office came to me and *they told me* that the defendants and their family members knew where I lived and that I was in danger. The DA representatives said that it was best for me to be moved and promised to relocate me once the case was over.

12. In other words, my move was totally initiated by the DA's Office. I never told them I was in danger or had been threatened. I never asked to be placed in a hotel. However, believing what they told me about my life being in danger was true, I agreed to be moved.

13. I was placed in a hotel where I could go and come as I pleased. Every two days or so, detectives would bring me food money, around $20. The detectives would knock on my room door and then slide the money under the door without coming in to check on me.

14. While I was in the hotel, I continued to use drugs. I believe Reeves and the detectives knew I was using drugs because I would, typical of a drug addict, miss appointments with them and disappear for several days. Nevertheless, they continued to give me the $20 every two days.

15. Prior to me testifying at Mr. Ellis' first trial, I told Reeves that I didn't want to testify because I was on drugs when the murder took place, and my mind was messed up back then. Reeves responded by telling me don't worry about it, everything will be alright.

16. The day or morning before I was scheduled to testify at Mr. Ellis' first trial, I had a telephone conversation with Reeves. I told Mr. Reeves that I didn't want to participate in the case anymore.

17. I lied to Reeves that I wasn't at the hotel, and told him that I was leaving and wasn't going to court.

18. Minutes after my phone call with Reeves, several detectives swarmed into my room, handcuffed me, and placed me under arrest.

19. I was never shown a warrant, taken before a judge, or advised that I had a right to an attorney.

20. While I don't specifically remember at this time where they took me, they probably took me to the DA's Office to meet with Reeves as he was the prosecutor who sent the detectives to arrest me in the first place.

21. My memory is that I was later placed in a different hotel, in a hotel room adjoining one with two detectives.

22. I was placed there against my will. I wasn't allowed to leave, make phone calls, smoke cigarettes, or even use the bathroom without leaving the bathroom door open. I was never given any witness fee.

23. At the time I testified at Mr. Ellis' first trial, I was still using drugs.

24. After I testified at Mr. Ellis' first trial the detectives released me from the hotel and I went right back to using drugs.

25. After I testified at Mr. Ellis' first trial, the DA's Office stopped assisting me financially and essentially made me homeless.

26. Because I had believed the DA's claim about my life being in danger, I was scared to go back to my home. And because the DA stopped paying for the hotel room they initially gave to me, I couldn't go back there either.

27. As a result, I had to stay in abandoned buildings. In January 1995 I was arrested for burglary stemming from me being in an abandoned, garbage filled house with no running water or furniture.

28. Police came into the house, arrested me and charged me with burglary when in truth, I was just trespassing because I didn't have anywhere to live.

29. After my arrest on the burglary case I was put in jail. While in jail there came a point when detectives brought me to the DA's Office. I never asked to be brought there and I didn't have a choice as to whether to go.

30. I was kept handcuffed while at the DA's Office, while Reeves talked to me about the case. He made jokes about me and the case and made me feel uncomfortable.

31. While Reeves did not come out and directly say it, he implied that if I testified against Mr. Ellis, Reeves would help me with my open burglary case. Reeves gave me the impression that if I helped convict Mr. Ellis, Reeves would help me out with my case.

32. I didn't want to testify against Mr. Ellis but I felt that based on the way Reeves had dealt with me I had no choice and was forced to do so.

33. I'm sorry for testifying against Mr. Ellis. I wasn't in my right state of mind at the time the crime took place, and I can honestly say that Mr. Ellis did not have a fair trial.

_____
RICHARD RIVERA

Sworn to before me this 13th day of August, 2020

_____
NOTARY PUBLIC

SONYA GLOVER
Notary Public, State of New York
Reg. No. 01GL6349721
Qualified in Queens County
Commission Expires 10/31/2020