**The Law Firm of Andrew M. Stengel P.C.**
**11 Broadway, Suite 715**
**New York, New York 10004**
**(212) 634-9222 | andrew@stengellaw.com | (212) 634-9223 (Fax)**

May 27, 2025

**By ECF**
Honorable Hector Gonzalez
U.S. District Court for the Eastern District of New York

Re:    **Maddix v. City of New York, et al., 25 CV 1909 (HG)**

Your Honor:

Pursuant to the Court's May 19, 2025, Order, the parties respectfully submit this joint submission concerning defendants City of New York's ("City") and Marriott Hotel Services, Inc.'s and Marriott International, Inc.'s (the "Marriott Defendants") request to stay discovery pending the outcome of their contemplated fully dispositive motions to dismiss.

### A.    Defendant City's Position:

Defendant City respectfully submits that a stay of discovery pending the outcome of its anticipated fully dipositive motion to dismiss is warranted primarily because it is able to make a strong showing that plaintiff's claims against both it and defendant Reeves are unmeritorious. *See, e.g., Zunzurovski v. Finger*, 2023 U.S. Dist. LEXIS 187066, at *4 (S.D.N.Y. Oct. 12, 2023) ("Where, as here, Defendants file dispositive motions that are potentially meritorious, this Court regularly grants motions to stay discovery.") (citing cases); *Williams v. N.Y. State Office of Mental Health*, 2011 U.S. Dist. LEXIS 61266, at *2-3 (E.D.N.Y. June 8, 2011) ("A stay of discovery pending resolution of a potentially dispositive motion is appropriate 'where the motion appear[s] to have substantial grounds or, stated another way, do[es] not appear to be without foundation in law.'") (citation omitted).

Indeed, "when a decision on a dispositive motion 'may significantly narrow, if not eliminate, the issues remaining in the case, proceeding with discovery while the motion is pending would waste the parties' resources and would constitute an undue burden" because "no discovery will be necessary in this forum if Defendants' fully dispositive motions are granted. Thus, any discovery that is engaged in while Defendants' motions are pending would impose costs on the parties that could be wholly unnecessary." *Zunzurovski*, 2023 U.S. Dist. LEXIS 187066, at *4 (citation omitted). "Further, courts routinely stay discovery where, such as here, an initial conference has yet to be held and no discovery schedule has been ordered yet." *Id.*

Moreover, given the nature of this case and the age of the criminal prosecution, "the interests of fairness, economy and efficiency . . . favor the issuance of a stay of discovery." *United States v. Cty. of Nassau*, 188 F.R.D. 187, 189 (E.D.N.Y. 1999) ("[I]t is self-evident that the cost of discovery, coupled with the diversion of employees' time and attention from municipal business to focus on the retrieval of discovery and to otherwise assist in the pursuit of this litigation, would be an unnecessary expense in the event that [defendant's] motion to dismiss is ultimately granted.").[1]  Plaintiff has not sufficiently articulated any undue prejudice, except for referencing,

---

[1]  Indeed, discovery on plaintiff's broad *Monell* claims alone would constitute an undue burden absent a stay.  Thus, should the Court not be inclined to stay discovery pending defendants' motions to dismiss, defendant City respectfully requests that the Court at least stay and/or bifurcate

1

in conclusory, vague and unsupported fashion, "the possibility of witnesses passing away and other evidence being lost over time." Dkt. No. 20 at 1.

***Plaintiff's Claims Fail Because Defendant Reeves is Entitled to Absolute Immunity.*** With respect to the merits of plaintiff's claims, as an initial matter, all of plaintiff's claims, which are premised on an allegation of witness coercion by former ADA Reeves, should be dismissed because "the Second Circuit has made clear that 'the coercion of witnesses' is a prosecutorial activity for which absolute immunity applies." *McDonough v. Smith*, 2022 U.S. Dist. LEXIS 143055, at *58 (N.D.N.Y. Aug. 11, 2022) (citation omitted). Moreover, "[t]he Second Circuit has instructed that an ADA is entitled to absolute immunity for alleged Brady violations" and "[a] conspiracy claim also falls within the ambit of absolute prosecutorial immunity." *Soley v. Cty. of Nassau*, No. 18-CV-377 (ARR) (SJB), 2022 U.S. Dist. LEXIS 132604, at *20 (E.D.N.Y. July 26, 2022); *see also, e.g., Collins v. City of New York*, 923 F. Supp. 2d 462, 470-72 (E.D.N.Y. 2013) (holding that prosecutors were absolutely immune for allegedly "coercing [witnesses] into giving false testimony, presenting that testimony at trial, and failing to disclose the circumstances of their testimony during trial"). Plaintiff's *Monell* claims thus necessarily fail as well. *See, e.g., Malik v. City of New York*, 841 F. App'x 281, 284-85 (2d Cir. 2021) (affirming dismissal of plaintiff's "federal claims on the ground that the individual City defendants were protected by absolute immunity, and, without any underlying constitutional violation, [plaintiff] had no grounds for a *Monell* claim").

***Plaintiff's Claims Are Barred By Virtue of His Conviction.*** All of plaintiff's claims are also barred because plaintiff was convicted, his conviction has not been reversed or otherwise invalidated, and plaintiff's claims necessarily challenge the validity of his conviction. *See Heck v. Humphrey*, 512 U.S. 477, 486-90 (1994); *Johnson v. N.Y.C. Police Dep't.*, 651 F. App'x 58, 60 (2d Cir. 2016) ("'Brady-based § 1983 claims necessarily imply the invalidity of a challenged conviction . . . because 'the remedy for a *Brady* violation is vacatur of the judgment of conviction and a new trial.' . . . Thus, a *Brady* claim is not cognizable under § 1983 unless the challenged conviction has been invalidated.") (citation omitted).

Defendant City acknowledges that "[t]he Second Circuit has not squarely determined whether *Heck* applies once a plaintiff is no longer in custody, and the issue remains controversial." *Chapman v. Fais*, 540 F. Supp. 3d 304, 307 (E.D.N.Y. 2021) (Cogan, J.). However, where, as here, plaintiff purposely chose not to vacate his conviction by way of, for example, a N.Y. C.P.L. 440 motion, following the alleged discovery of withheld *Brady* material, the *Heck* bar applies. *See, e.g., id.* at 307-08; *Leach v. City of New York*, 2022 U.S. Dist. LEXIS 173580, at *7 n.6 (E.D.N.Y. Sep. 26, 2022); *see also, e.g., Opperisano v. Jones*, 286 F. Supp. 3d 450, 460 (E.D.N.Y. 2018) ("[N]o Circuit court, *including* the Second Circuit, has yet to allow unfettered access to section 1983 claims solely because of a present inability to obtain *habeas* relief.") (emphasis in original).

---

discovery with respect to plaintiff's *Monell* claims. *See, e.g., Rodriguez v. City of New York*, 2022 U.S. Dist. LEXIS 195034, at *3 (E.D.N.Y. Oct. 20, 2022) ("[T]he 'overwhelming weight of authority' in this Circuit . . . 'holds that since the City's liability is derivative of the individual defendants' liability, and since the proof required to establish a *Monell* claim is substantially different from the proof necessary to establish individual liability, the most prudent course is to try the *Monell* claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established.'") (citation omitted).

Moreover, other Circuits that have squarely addressed the issue have found that the *Heck* bar applies even if a plaintiff is no longer in custody. *See, e.g., Wilson v. Midland Cty.*, 116 F.4th 384, 398-404 (5th Cir. 2024); *Savory v. Cannon*, 947 F.3d 409, 420-21, 430 (7th Cir. 2020); *Griffin v. Balt. Police Dep't*, 804 F.3d 692, 696-97 (4th Cir. 2015); *Deemer v. Beard*, 557 F. App'x 162, 167 (3d Cir. 2014); *Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007). Likewise, the *Heck* court itself specifically rejected the notion that a plaintiff's custody status controls, holding that "the principle barring collateral attacks . . . is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Heck*, 512 U.S. at 490 n.10.

*Plaintiff's Claims Are Time Barred.* All of plaintiff's claims should also be dismissed because they are time-barred. Indeed, plaintiff's claims have not even accrued. *See, e.g., Heck*, 512 U.S. at 489-90 ("[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.").

Even if the Court were to find that some or all of plaintiff's claims are not barred by *Heck*, plaintiff's claims are still time-barred as "the statute of limitations accrues for exceptions to *Heck*'s favorable-termination rule when habeas is no longer available." *Opperisano*, 286 F. Supp. 3d at 464. Thus, the applicable statute of limitations expired nearly ten years ago.

Plaintiff's allegations in support of equitable tolling are conclusory and non-specific, and fail to meet the heightened pleading standards of Fed. R. Civ. P. 9(b). *See, e.g., Singh v. Wells*, 445 F. App'x 373, 378 (2d Cir. 2011) ("Generalized or conclusory allegations of fraudulent concealment are insufficient to toll a statute of limitations."). Furthermore, plaintiff's allegations are insufficient and nonsensical, considering that the information plaintiff learned that allegedly triggered his knowledge of his claims was obtained via a public records request, and thus was not affirmatively, let alone fraudulently, "concealed" at all. *See* Dkt. No. 5 at ¶ 103; *see also, e.g., Indoafric Exps. Private Ltd. Co. v. Citibank, N.A.*, 696 F. App'x 551, 553 (2d Cir. 2017) ("'The uncommon remedy of equitable estoppel is triggered by some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient.'"). It is also unclear why plaintiff could not have made a public records request earlier or could not have simply spoken with the "star witness" at any time.

*Plaintiff Fails to Allege Fabrication of Evidence.* Plaintiff's fair trial and duplicative substantive due process claims also fail because, *inter alia*, plaintiff merely alleges that a witness was coerced to testify, however "[p]laintiff's fair trial claim requires him to prove fabrication, evidence of coercion is not enough." *Thomas v. Mason*, 2023 U.S. Dist. LEXIS 54585, at *20 (N.D.N.Y. Mar. 30, 2023); *see also, e.g., McDonough*, 2022 U.S. Dist. LEXIS 143055, at *77 ("There is clearly a difference between 'coercing witnesses to testify and fabricating witness testimony.'") (citation omitted). Plaintiff has not alleged that the "star witness" was coerced to falsely testify.

*Plaintiff's Allegations of Coercion Are Insufficient.* Plaintiff also alleges in speculative and conclusory fashion that the "star witness" refused to testify and was coerced into doing so, without any proper basis. *See, e.g., Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 612 (S.D.N.Y. 2009) ("Dawkins's due process claim with respect to Cheeks's alleged refusal to testify rests solely upon speculation that prison officials coerced Cheeks into refusing to testify. The allegations that Cheeks at one time wanted to testify and then later refused to do so does not raise Dawkins's claim about the level of speculation."); *see also, e.g., Allegrino v. Ruskin Moscou Faltischek, P.C.*, 2021 U.S. App. LEXIS 34936, at *6 (2d Cir. Nov. 24, 2021) ("[M]ere speculation is not sufficient to defeat a motion to dismiss."). Indeed, plaintiff merely relies on documents establishing the "star

witness" stayed at a hotel prior to testifying and jumps to absurd conclusions from there. *See* Dkt No. 5-10.

There is also a question concerning the materiality of the alleged *Brady* violation considering, *inter alia*, another witness also implicated plaintiff, *see* Dkt No. 5 at ¶ 70, and the "star witness" had previously given multiple, prior statements implicating plaintiff. *See, e.g.,* Dkt No. 5 at ¶ 83; *People v. Maddix*, 244 A.D.2d 432, 432 (N.Y. App. Div. 1997) (referencing audiotaped interview, handwritten and types copies of interviewer's scratch notes of that interview, and a transcript of a prior interview).

***Plaintiff's Ancillary Claims Fail on Other Grounds.*** Plaintiff's access to courts claim also fails because, *inter alia*, "neither the Supreme Court nor the Second Circuit has expressly recognized as constitutionally valid a backward-looking claim of a right to access to the courts," *Blake v. Dowe*, 36 F. Supp. 2d 271, 277 n. 2 (D. Conn. 2014), and, in any event, plaintiff has not alleged a sufficient "cover-up," or that the alleged "cover-up" made it impossible for him to litigate his claims, and his claims are not "completely foreclosed." Plaintiff's *Monell* and conspiracy claims further fail because, *inter alia*, plaintiff has failed to sufficiently allege an underlying constitutional violation and they are otherwise conclusory.

**B.      The Marriott Defendants' Position:**

Plaintiff seeks $100 million in purported damages from the Marriott Defendants based on events that occurred in a Marriott-branded hotel over thirty years ago. Am. Compl. ¶¶ 1-9, 50-62. Relying on allegations, sworn statements, and court orders from a mishmash of different cases, Plaintiff alleges that between 1990 and 2013, the Kings County District Attorney's Office ("KCDA") incarcerated material witnesses in hotels across New York City and coerced them to testify against criminal defendants. *Id.* ¶¶ 24, 38-39, 49, 149-295. Plaintiff further alleges that the "star" witness in Plaintiff's 1994 criminal trial, Robert DeJesus, was held in the Marriott LaGuardia Hotel for one weekend as part of this unconstitutional practice. *Id.* ¶¶ 50-62. For support, Plaintiff attaches what he claims is a letter from the KCDA to the Marriott LaGuardia Hotel confirming the "custody" room reservation (with a handwritten note requesting no room service, TV, or telephone service) and internal KCDA documents reflecting that DeJesus was to be held in custody. *Id.* Exs. J, K, L.

The factual allegations tying the Marriott Defendants to Plaintiff's purported injuries begin and end with the KCDA's 1994 room reservation request. Although the Complaint speculates that the Marriott Defendants maintained a "practice" of providing the KCDA with a "black site" and knowingly facilitated efforts by the City and defendant Reeves to withhold this information from Plaintiff, there are no factual allegations whatsoever supporting this outlandish theory. For the reasons discussed below, there is abundant good cause to stay discovery pending the outcome of the Defendants' motions to dismiss, including the Marriott Defendants' anticipated motion to dismiss all of Plaintiff's claims against them, which include alleged violations of the Fifth and Fourth Amendments, as well as Plaintiff's right to due process under the New York State Constitution. Am. Compl. ¶¶ 126, 129, 133, 137, 140, 296-329.

**1.  The Marriott Defendants Can Establish A Strong Showing that All of Plaintiff's Claims Are Unmeritorious**

The Marriott Defendants can easily show that their anticipated motion is "potentially dispositive and appears to be not unfounded in law," which would satisfy the first stay factor. *Oestreicher v. Equifax Info. Servs.*, *LLC*, No. 23-CV-239, 2023 WL 3819378, at *2 (E.D.N.Y. June 5, 2023) (citation omitted). *See also supra* the City's Position.

***Plaintiff Fails to Allege that the Marriott Defendants Are State Actors.*** Plaintiff's § 1983 claims against the Marriott Defendants[2] are based on three theories of liability: (1) liability under *Monell*, (2) civil conspiracy, and (3) civil aiding and abetting.  Am. Compl. ¶ 8. But Plaintiff ignores a basic element of a § 1983 claim, which is that the "challenged conduct constitutes 'state action.'" *Oliveira v. Price L. Firm*, No. 14-CV-4475, 2014 WL 4088199, at *2 (S.D.N.Y. July 30, 2014) (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002)). The Complaint fails to plausibly allege that the Marriott Defendants were state actors. They are not.

The three "main tests" to determine whether a private entity's action may be fairly attributed to the state are: "(1) when the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); and (3) when the entity has been delegated a public function by the state ('the public function test')." *Barrows v. Becerra*, 24 F.4th 116, 135 (2d Cir. 2022) (cleaned up). Plaintiff's allegations do not come close to satisfying any of these tests.  Plaintiff does not suggest that the Marriott Defendants were coerced—rather, he casts them as willing participants in the wrongdoing.  Am. Compl. ¶¶ 299, 303-04; *see also Abadi v. Am. Airlines, Inc.*, No. 23-CV-4033, 2024 WL 1346437, at *19 (S.D.N.Y. Mar. 29, 2024) (only allegations of "actual coercion" by a state actor that "impact[]" a "private actor's decision-making" satisfy compulsion). And, operating a hotel and renting hotel rooms are not "the kind of decisions traditionally and exclusively made by the sovereign for and on behalf of the public." *Lurch v. City of New York*, No. 19-CV-11253, 2021 WL 1226927, at *3 (S.D.N.Y. Mar. 31, 2021).

Likewise, Plaintiff fails to allege facts supporting "joint action" between Marriott and the KCDA. *Barrows*, 24 F.4th at 135. "The touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the [state]." *Abadi*, 2024 WL 1346437, at *20. Further, "[a] private actor can only be a willful participant in joint activity with the [s]tate or its agents if the two share some common goal to violate the *plaintiff's* rights." *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014) (emphasis added). Here, Plaintiff alleges no facts to support a "common goal" between any Marriott Defendant and the KCDA to deprive Plaintiff (or any other person) of his constitutional rights.  Not only is there no plausible allegation explaining what the "common goal" was, there are no allegations suggesting that any Marriott employee even knew who Plaintiff or DeJesus were, let alone that Plaintiff was on trial.

For the same reasons, the alleged conspiracy fails because there are no factual allegations suggesting that either Marriott Defendant "willfully entered into an agreement" to violate

---

[2] The Amended Complaint defines "Marriott" to include both Marriott Defendants and asserts factual allegations against "Marriott" collectively. *Compare* Am. Compl. ¶ 18, *with, e.g.*, ¶¶ 108, 114, 119, 129, 140, 306, 318.  This is improper.  Plaintiff must allege the individual participation of each defendant to satisfy Federal Rule of Civil Procedure 8(a). *See Hill v. Katz*, No. 1:24-CV-3266, 2025 WL 964094, at *2 (E.D.N.Y. Mar. 31, 2025) (holding plaintiffs cannot lump defendants together for pleading purposes and group pleading is insufficient to provide defendants fair notice of the claims against them). Moreover, Plaintiff cannot impute one Marriot entity's purported violations to the other because corporations are "separate legal entities, and a parent corporation is not liable for the acts of its subsidiaries." *Darby v. Societe des Hotels Meridien*, No. 88 CIV. 7604 (RWS), 1999 WL 459816, at *5 (S.D.N.Y. June 29, 1999), *aff'd sub nom. Darby v. Compagnie Nat. Air France*, 13 F. App'x 37 (2d Cir. 2001).

5

Plaintiff's *Brady/Giglio* or other rights. *Blount v. Swiderski*, No. 2:03-CV-23, 2006 WL 3314635, at *15 (E.D.N.Y. Nov. 14, 2006); *see also Ciambriello*, 292 F.3d at 325 ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.").

*Plaintiff Fails to Allege Facts Supporting* **Monell** *Liability.* Plaintiff alleges in conclusory fashion that the Marriott Defendants, through local "managers" at the Marriott LaGuardia Hotel, implemented "a policy, custom, or practice to knowingly facilitate and aid and abet" the KCDA's illegal imprisonment policy. Am. Compl. ¶ 298. The sole factual basis alleged in support of this "policy," however, is the single instance of DeJesus being "held" at a Marriott hotel. *Id.* ¶¶ 50-62. A "single instance of conduct is not enough to establish a policy or custom for the purposes of municipal liability." *Walker v. Mirbourne NPN 2 LLC*, No. 22 CIV. 2382, 2023 WL 11867001, at *4 (E.D.N.Y. Feb. 27, 2023).

*Plaintiff Fails to Allege that Marriott Aided and Abetted the KCDA.* "To state a claim for aiding and abetting liability, a plaintiff must show that (1) the party whom the defendant aids performed a wrongful act that causes an injury; (2) the defendant was generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant knowingly and substantially assisted the principal violation." *Woods v. Chadwick*, No. 9:21-CV-0662, 2021 WL 12318012, at *6 (N.D.N.Y. July 19, 2021) (cleaned up). Assuming *arguendo* that the KCDA did commit a constitutional violation, Plaintiff fails to sufficiently allege that the Marriott Defendants "caused" any failure to disclose *Brady*/*Giglio* material, were "generally aware" that law enforcement was engaging in illegal detentions and *suppressing* that material, or that they *knowingly and substantially assisted* in these purported acts. First, a single room reservation request made by the KCDA is insufficient to meet these standards. Second, Plaintiff himself alleges that the KCDA's practice was not publicly disclosed until the 2013, so the Marriott Defendants could not have "knowingly" committed a *Brady* violation. Am. Compl. ¶ 24, 150-54. Third, the alleged injury to Plaintiff under *Brady* is the suppression of favorable or impeaching evidence, an obligation that inures to the KCDA, not private entities.

*Plaintiff's Claims Are Time Barred.* Marriott agrees with the City that Plaintiff's § 1983 claims are barred by *Heck* and, therefore, they have not accrued. *See supra*. But even if the *Heck* bar does not apply, all of Plaintiff's claims are barred by the three-year statute of limitations applicable to § 1983 claims. *Volker v. Cnty. of Nassau*, No. 13-CV-1187, 2016 WL 7635960, at *12 (E.D.N.Y. Nov. 19, 2016).[3] The wrongdoing alleged in Plaintiff's complaint stems from the purported deprivation of *Brady* material that occurred during Plaintiff's criminal trial and during his subsequent efforts to overturn his conviction between 1994 and his release in 2012. Am. Compl. ¶¶ 83, 89, 92, 97-100. Plaintiff himself claims that the KCDA's unconstitutional practices ended in 2013, over a decade ago. *Id.* ¶ 49.

Plaintiff alleges that the KCDA concealed its alleged *Brady* violations and that Plaintiff did not discover them until December 2024 when an unnamed researcher provided unspecified "material" obtained from a "public records request." Am. Compl. ¶ 101-04, 108, 116. But these

---

[3] The claims appear to suffer from numerous other pleading and legal deficiencies, *see* City's Position, *supra*, and Marriott reserves all rights to further expand upon those deficiencies in its anticipated motion to dismiss. Marriott's counsel intends to continue to investigate the bases for Plaintiff's claims in preparation for the June 27, 2025, deadline to file a pre-motion letter seeking leave to file a motion to dismiss.

allegations have no connection whatsoever to the Marriott Defendants and do not satisfy Rule 9(b). *See*, *e.g.*, *Hodges v. Glenholme School*, 713 F. App'x 49, 51 (2d Cir. 2017) (summary order) (Rule 9(b) requirement to plead with particularity applies to fraudulent concealment). Plaintiff also fails to allege that he exercised reasonable diligence to discover his claims, particularly in light of Plaintiff's claim that the KCDA's practices in similar cases and Reeves's purported misconduct were reported in the news, Am. Compl. ¶¶ 22 n.2, 163, 215, and that Plaintiff's *own* purported *Brady* material was obtained through a public records request. *See also supra* the City's Position.

**The Court Should Decline to Exercise Jurisdiction Over the New York Constitution Claim.** Because any federal claim would be "eliminated in the early stages of litigation," the court should "decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006). *See Kunz v. Brazill*, No. 6:14-CV-1471, 2015 WL 792096, at *3 (N.D.N.Y. Feb. 25, 2015) (declining jurisdiction over state constitutional claims after dismissing § 1983 claim as *Heck* barred).

### 2. The Remaining Factors Support a Stay.

Given the Amended Complaint's multiple pleading deficiencies and the Marriott Defendants' impending dispositive motion, requiring the Marriott Defendants to search for records from over a quarter century ago would be unduly burdensome and potentially unnecessary. *See also supra* the City's Position at pp. 1-2. The Marriott Defendants agree with the City that Plaintiff has not identified any meaningful prejudice that would result to him from a brief stay until the motions are decided. For these reasons, the Marriott Defendants respectfully request that the Court stay discovery pending resolution of the anticipated motions to dismiss.

## PLAINTIFF WILLIE MADDIX'S POSITION

**1. Factual Issues Preclude The Court From Resolving, On A Motion To Dismiss, The** ***Heck* Waiver, Equitable Estoppel And Diligence-Discovery Rule Accrual Issues.** The Court's May 19, 2025, Order, cited *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006) (Boyle, M.J.), obligating defendants seeking stays of discovery to, among other things, make "a strong showing that the plaintiff's claim is unmeritorious[.]" Defendants however, purport to meet this burden by ignoring huge portions of the First Amended Complaint ("FAC") and binding authority, and omitting key facts from cases they quote out context for legal propositions they do not support. In reviewing Defendants' motions, the Court must assume the truth of Maddix's well-pleaded, specific allegations, which surpass plausibility and are bolstered by evidence embedded in the FAC and in the 22 annexed exhibits, demonstrate that Defendants (1) suppressed *Brady/Giglio* material and used false testimony and argument during his trial, (2) covered it up for 30 years, (3) made material misrepresentations and concealed the *Brady/Giglio* material throughout *all* of Maddix's state appeals and federal habeas proceeding, (4) precluded Maddix from raising those issues, (5) Maddix was totally unaware of the falsity of Defendants' representations and (6) Maddix reasonably relied on, and was deceived by, Defendants' false representations. FAC ¶¶ 96, 104-106, 109-111. *Jeannot v. New York State*, 762 F.Supp.3d 217, 223 (E.D.N.Y. 2025) (Gonzalez, J.)("[C]ourt must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff[.]") Under these facts Defendants are, as a matter of law, precluded from invoking the *Heck* and statute of limitations defenses under the equitable estoppel and/or diligence discovery rules.

*First*, Defendants ignore several factual issues that cannot be resolved on a motion to dismiss. As discussed in our letter, ECF Doc. No. 20 pp. 2-3, opposing Defendants' initial request for a stay, *Heck v. Humphrey*, 512 U.S. 477 (1994) is an affirmative defense that may be forfeited, and "[w]hether equitable estoppel applies in a given case is ultimately a question of fact[.]"

*Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001).  Similarly, under the federal "diligence discovery rule," accrual of Maddix's causes of action is postponed if he establishes Defendants deliberately concealed his injury and he remained "blamelessly ignorant" of his claims.  ECF Doc. No. 20 p. 2 ¶ 3.  "[A]ny issue of genuine material fact regarding ... claim accrual … must be reserved for trial." *Pipitone v. City of New York*, 57 F.Supp. d 173, 186 (E.D.N.Y. 2014) (Dearie, J.), citing *Singh v. Wells,* 445 Fed.Appx. 373, 376 (2d Cir. 2011).  None of these factual issues can be resolved on Defendants' proposed motions without first affording Maddix discovery.

*Second*, and importantly, the equitable issues should be resolved *before* the Court decides Maddix's entitlement to the *Heck* non-custody exception.  As Judge Calabresi advised in his concurring opinion in *Teichmann v. New York,* 769 F.3d 821, 829 (2d Cir. 2014), "it is generally desirable for … district courts to decide [cases on] non-*Heck* grounds."  *Kroemer v. Tantillo*, 2017 WL 6409147, at *7 (W.D.N.Y. June 16, 2017) (Crawford, J) (same).

### 2. <u>Maddix Is Not Precluded From Invoking The *Heck* Non-Custody Exception</u>.

The legion of Second Circuit case law cited in footnote 15 of Maddix's FAC establishes our circuit recognizes "a narrow exception to the *Heck* bar that permits a § 1983 suit where federal *habeas* relief is unavailable." *Wiggins v. Mellia*, 2023 WL 6222303, at *2 (2d Cir. Sept. 26, 2023); *Oppersiano v. Jones*, 286 F.Supp.3d 450, 460 (E.D.N.Y. 2018) (Broadie, J.) (quoted out of context by Defendants but actually recognizing the exception and the differing views on its parameters). (Defendants cite several non-binding sister circuit cases that decline to recognize the *Heck* exception.)    Nevertheless, Defendants cite two district court cases out of context and omit their key facts, *Chapman v. Fais*, 540 F.Supp.3d 304 (E.D.N.Y. 2021) (Cogan, J.) and *Leach v. City of New York*, 2022 WL 4468288 (E.D.N.Y. Sept. 26, 2022) (Hall, J), erroneously claiming the cases stand for the proposition that the *Heck* non custody exception does not apply to Maddix because he purposely chose not to pursue a CPL § 440.10 motion after discovering the *Brady* material nearly 30 years after he exhausted his state appeals and federal *habeas* petition.  In truth, (1) neither *Chapman* or *Leach* support Defendants' argument and both cases were based on facts that are alien to Maddix's case, where neglectful criminal defendants, aware of their constitutional claims at the time of their arrests, nevertheless forfeited their direct appeals and/or federal *habeas corpus* petitions, (2) both cases preceded the Second Circuit's clarifying decision in *Wiggins v. Mellia supra* and (3) a CPL § 440.10 motion would *not* remedy Maddix's inability to receive federal *habeas* review and would nullify the *Heck* non-custody exception by depriving a state plaintiff of a federal venue for his or her federal claims.

*Chapman* involved a *pro se* plaintiff who was aware of his constitutional claims (false arrest and malicious prosecution) from the moment of his arrest, but he pleaded guilty, and while incarcerated, he strategically chose to forgo both his direct appeal and federal *habeas corpus* petition.  After his release, he brought a § 1983 action.  The *Chapman* court, extending the principle that a plaintiff cannot not invoke the *Heck* non-custody exception if he intentionally forfeits federal *habeas* review, *id.* at 307, held Chapman's failure to lodge a challenge to his conviction *in any way* barred him from invoking the *Heck* non-custody exception.  *Chapman* at 307 (the plaintiffs' failure to "seek relief from his conviction by way of a state appeal, a state collateral proceeding, or federal habeas corpus" is a "good reason to apply *Heck*").  *Leach* simply followed *Chapman* in a case where another *pro se* plaintiff who was also aware of his constitutional claims (false arrest and malicious prosecution) from the moment of his arrest, failed to appeal or challenge his conviction *in any way. Leach* at *3 n. 6.  In contrast, no Second Circuit case holds that a non-custodial plaintiff who diligently challenged his conviction through every available avenue while

incarcerated (direct appeal, CPL § 440.10 motion, and federal *habeas corpus* petition), but who was precluded from raising a newly discovered *Brady/Giglio* claim in those proceedings because of an affirmative 30-year government coverup of its illegal acts, must first exhaust a state court remedy before invoking the *Heck* non-custody exception.

A year or so after *Chapman* and *Leach* were decided, the Second Circuit decided *Wiggins v. Mellia*, 2023 WL 6222303 where it clarified that a plaintiff's inability to seek "*federal habeas relief*"—not state court relief—"is the focus of the exception to *Heck.*" *Id.* at *2 (emphasis in original); *cf.* FAC n. 16 (citing Second Circuit cases holding § 1983 does not contain a state exhaustion requirement). Thus, the availability of a state CPL § 440.10 motion, which Defendants blocked Maddix for pursing for 30 years, is irrelevant. *See Accord Wilson v. Midland County, Texas*, 116 F.4th 384, 420-21 (5th Cir. 2024) (Willett, J., dissenting) ("If Wilson is allowed to sue under § 1983, then it matters not whether she might also have state remedies available to her. That's the whole point of § 1983: to give those victimized by state officials a federal forum.")

The pursuit of a CPL § 440.10 motion could actually preclude federal review. Should the victimized plaintiff, who is unable to obtain *habeas* relief because he or she is no longer in custody, lose a CPL § 440.10 motion, the later § 1983 action could be barred under *res judicata* based on the 440 decision. In other words, requiring victimized plaintiffs to exhaust a constitutional claim through a state CPL § 440.10 motion as a prerequisite to invoking the *Heck* non-custody exception would bring about the very wrong the *Heck* non-custody exception was created to prevent (depriving a victimized state plaintiff of a *federal* forum).

3. **Maddix's Claims Are Timely**. As set forth in our letter, ECF Doc. No. 20 pp. 2-3, opposing Defendants' initial request for a stay, all of Maddix's claims are timely under the federal diligence-discovery rule and equitable estoppel doctrine. Yet, Defendants Kafkaesque-ly argue that Maddix's allegation that they suppressed *Brady/Giglio* material is "nonsensical" because "a researcher" working on an unrelated wrongful conviction case obtained that material through a public records request. The fact that a researcher was able to obtain the *Brady/Giglio* material through a public records request does establish Defendants did not suppress that evidence under *Brady*. *See, e.g.*, *United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995) ("Nor are we persuaded that the government's duty to produce the [*Brady* material] was eliminated by that document's availability in a public court file. We have seen … no indication that Payne's counsel was aware of facts that would have required him to discover the [*Brady* material] through his own diligent investigation on behalf of his client[.]") Moreover, how could Maddix know to look for or request *Brady/Giglio* material when Defendants repeatedly lied to him that none existed? Federal law "lend[s] no support to the notion that defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed[,]" *Banks v. Dretke*, 540 U.S. 668, 695, 693 (2004), and Defendants' argument ignores Maddix's allegations, which must be accepted as true, that Defendants actively mislead him that no *Brady/Giglio* material existed. *See* FAC at ¶¶ 2, 23, 67-69, 72-76, 82, 89-90, 93-96, 101-105, 108, 110-111, 115-116, 81-116 (the 30-year coverup), ¶¶ 263-295 (the City's *Monell* coverup policy), ¶¶ 317-325 (the civil conspiracy).

4. **Maddix's *Brady/Giglio* Claims Surpass Plausibility**. The FAC alleges the undisclosed evidence was *Brady/Giglio* material as it (1) established DeJesus was illegally held as a KCDA "Prisoner," FAC ¶ 54 & Exhibit K; (2) provided Maddix with the basis to preclude DeJesus's trial testimony on legal coercion and abuse of process grounds; (3) demonstrated DeJesus' secret motive for testifying; and (4) enabled Maddix to attack the integrity of the prosecution's case. *Id.* ¶ 62 & nn. 9-11. *Smith v. Kemp*, 715 F.2d 1459, 1467 (11th Cir. 1983)

9

("The thrust of *Giglio* and its progeny has been to ensure that the jury knows the facts that might motivate a witness in giving testimony, and that the prosecutor not fraudulently conceal such facts from the jury.") The FAC also alleges ADA Reeves gave a blatantly false summation arguing DeJesus "had no motive for testifying: '[He] came in here and told you what he saw. He's got no motivation to lie. He's got nothing at stake.'" FAC ¶ 74; *Glossip v. Oklahoma*, 145 S.Ct. 612, 626 (2025) (conviction knowingly "obtained through use of false evidence" violates due process). Finally, the FAC alleges Defendants committed conduct "akin to fraud on a federal court." *Id.* ¶ 96. These allegations amply plead predicate constitutional violations for Maddix's *Monell* claims.

     **5.**     **<u>Maddix Amply Alleges Marriott Engaged In State Action</u>.** In *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980), the Supreme Court held a private party who conspired with a judge acted under color of state law: "to act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.") (citations omitted); *Haughey v. County of Putnam*, 2020 WL 1503513, at *8 (S.D.N.Y. Mar. 29, 2020) (Karas, J.) (same). The FAC adequately alleges state action and Marriott's liability under joint conduct, aiding and abetting and civil conspiracy theories. Moreover, "as a member of the conspiracy [Marriott] is, as a matter of law, liable for each act taken in furtherance of the conspiracy, even if [it] was not directly involved in the specific act." *O'Hara v. City of New York*, 2021 WL 4932287, at *8 (E.D.N.Y. 2021) (Glasser, J.); *Haughey v. County. of Putnam*, 2020 WL 1503513, at *9 (same). The FAC alleges Marriott policymakers knowingly facilitated the KCDA's kidnappings and internally tracked the victims' hotel rooms with KCDA "Custody Numbers." FAC ¶¶ 300-302. The FAC alleges the overt acts causing Maddix's injuries— suppression of *Brady/Giglio* material and false arguments at his trial—were committed in furtherance of the common goal of maintaining the secrecy of the coercion and hotel jail program, and "it was reasonably foreseeable that the secrecy Marriott and the KCDA employed to conceal the witnesses' unlawful confinement would continue throughout" Maddix's case. ¶ 314; ¶ 319 ("the goal of the conspiracy, [was] illegally imprisoning DeJesus and covering up the *Brady/Giglio* material resulting from those actions"); ¶¶ 317-318 (alleging Marriott and the City corruptly agreed to "cover-up each other's conduct"); ¶ 313 (Marriott earned "substantial income" from the conspiracy)*.* An offense by a co-conspirator is reasonably foreseeable "if it is [as here,] a necessary or natural consequence of the unlawful agreement," *United States v. Ward*, 505 Fed.Appx 18, 22 (2d Cir. 2012), and whether a consequence was foreseeable is a factual question for a jury, *Semi-Tech Litig., LLC v. Bankers Tr. Co.*, 353 F.Supp.2d 460, 483 (S.D.N.Y. 2005), not a court on a motion to dismiss.

     Finally, Marriott claims Maddix's allegation that Marriott had a "policy" to serve as a Hynes' black site is "outlandish." But Maddix alleges Marriott policymakers took part in the illicit scheme, FAC ¶¶ 296-298. *Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 127 (2d Cir. 2004) ("[E]ven a single action" by a policymaker establishes *Monell* liability). Moreover, an excerpt from a Kings County District Attorney "Hotel Custody Log," in *Quezada v. Smith,* 08 CV 5088 (KAM)(E.D.N.Y.), Doc. No. 26-1, which this Court may judicially notice on a motion to dismiss, *Braithwaite v. Suffolk Cnty. New York* 2022 WL 16837341, at *12 n. 11 (E.D.N.Y. Nov. 9, 2022) (Seybert, J.), documents *six other occasions in* a *one-month period* between January and February 1993 on which Marriott served as a Hynes' black site. Discovery should not be stayed.

     **6**.     **Maddix agrees to voluntary discontinue his Second Cause of Action (First Amendment Right of Access) and to dismiss Defendant Kyle Reeves from this lawsuit.**

Respectfully submitted,

Andrew Stengel

cc:     All counsel (by ECF)

11