**THE LAW FIRM OF ANDREW M. STENGEL P.C.**
**11 BROADWAY, SUITE 715**
**NEW YORK, NEW YORK 10004**
**(212) 634-9222 │ ANDREW@STENGELLAW.COM │ (212) 634-9223 (FAX)**

July 21, 2025

**By ECF**
Honorable Hector Gonzalez
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Maddix v. The City of New York, et al.*  **25 CV 1909 (HG)**

Dear Judge Gonzalez:

We represent Plaintiff Willie Maddix in this 42 U.S.C. § 1983 action stemming from his wrongful conviction and 19-year imprisonment. I submit this letter in response to Defendants Marriott International, Inc.'s and Marriott Hotel Services, Inc.'s (collectively "Marriott") June 27, 2025, pre-motion letter, and Defendant City of New York's ("City") July 14, 2025, pre-motion letters, concerning their upcoming Fed.R.Civ.P. 12 (b)(6) motions to dismiss. In light of page limitations, any argument not addressed below will be addressed in our opposing motion papers.

## FACTUAL BACKGROUND

In July 1994 Maddix was tried by the Kings County District Attorney's Office ("KCDA") for murder and weapons possession. Prior to and during trial, the trial prosecutor repeatedly represented to Maddix and his attorney that the KCDA was aware of its obligations under *Brady v. Maryland*, 363 U.S. 72 (1963), that no *Brady/Giglio* material existed and that the prosecution's star witness against Maddix, Robert DeJesus, was a Good Samaritan, with no undisclosed motive for testifying. ECF Doc. No. 5, Maddix's First Amended Complaint ("FAC") at ¶¶ 23, 63-69, 72-75, 104, 111, and n. 14. In summation, the prosecutor argued DeJesus had "no motivation to lie," and he had "nothing at stake." *Id.* at ¶¶ 5, 74. The jury, relying on prosecutor's star witness and its narrative, convicted Maddix of weapon possession.

Unbeknownst to Maddix, however, the prosecutor's narrative was false. In truth, the prosecutor secretly and illegally imprisoned the star witness against his will in a Brooklyn Marriott hotel when witness refused to testify against Maddix. The prosecutor held the witness *incommunicado* until he agreed to testify, and only then was he released. These undisclosed facts constituted *Brady/Giglio* material in Maddix's case as they (1) demonstrated the falsity of the prosecutor's "Good Samaritan" narrative at Maddix's trial, (2) provided Maddix with the basis to preclude DeJesus's trial testimony on legal coercion and abuse of process grounds, (3) demonstrated the witness had an undisclosed inducement and incentive for testifying, and (4) enabled Maddix to attack the integrity of the prosecution's case. FAC ¶¶ 62 & nn. 9-10 (citing case law establishing such facts constitute *Brady/Giglio* violations).

1

The FAC alleges Marriott policymakers, its local managers, knowingly facilitated the KCDA's practice of unlawfully imprisoning recalcitrant witnesses. The FAC alleges the mangers (1) "had … actual … notice of the nature of the witnesses' involuntary detentions"; (2) observed KCDA detective-investigators transporting prisoners in and out of the hotel rooms in handcuffs and leg shackles; (3) were aware of damage to the hotel room doors caused by the shackles detective-investigators would place on the doors to prevent the witnesses from escaping; (4) were aware of NYPD responses to the hotel due to volatile prisoner behavior; (5) communicated with the KCDA's Witness Relocation Coordinator concerning the custodies; (6) "took affirmative steps to ensure that the witnesses, in accordance with the KCDA's wishes, had no way to complain or alert anyone of their confinement and that the KCDA's conduct would remain secret;" (7) assigned witnesses "custody" numbers, used those custody numbers to track the witnesses' hotel room, and referenced the custody numbers in billings to the KCD; (8) "instructed employees to keep the practice confidential and rewarded those who did with recognition, good performance evaluations, promotions and raises"; and (9) reported to the KCDA all unusual incidents involving the witnesses. FAC ¶¶ 300-312. Marriott's facilitation of illegal imprisonments was extensive. A KCDA Hotel Custody Log, Exhibit A,[1] documents six other occasions in one month at the time of Maddix's trial, with Marriott serving as a KCDA "black site":

| HOTEL | CUSTODY # | IND. | BUREAU | DATE IN | DATE OUT |
|---|---|---|---|---|---|
| LaGuardia Marriott | 1126 | 6326/92 | Orange ADA Bruen | 1/18/93 | 1/20/93 |
| LaGuardia Marriott | 1129 | 1545/92 | [Illegible] | [Illegible] | 1/25/93 |
| LaGuardia Marriott | 1136 | VOID | Trial Cadre Plazner | [Illegible] | _____ |
| LaGuardia Marriott | 1139 | 7312/92 | Paiser Red | 2/11/93 | 2/17/93 |
| LaGuardia Marriott | 1141 | 14314/91 | Blue Liaison | 2/16/93 | [Illegible] |
| LaGuardia Marriott | 1144 | 7812/92 | Green Omalley | 2/18/93 | [Illegible] |

For 30 years following Maddix's conviction, the KCDA covered up the *Brady/Giglio* material and lied about its existence to every court to review Maddix's case. FAC ¶¶ 81-100. While Marriott did not personally make those misrepresentations, *"as a member of [a] [civil] conspiracy [Marriott] … is, as a matter of law, liable for each act taken in furtherance of the conspiracy, even if [it] was not directly involved in the specific act." O'Hara v. City of New York*, 568 F.Supp.3d 241, 253 (E.D.N.Y. 2021) (Glasser, J.).

---

[1]The Court may take judicial notice of the log, which was filed in this Court in *Quezada v. Smith,* 08 CV 5088 (KAM)(E.D.N.Y.), ECF Doc. No. 26-1. *Braithwaite v. Suffolk Cnty. New York,* 2022 WL 16837341, at *12 n. 11 (E.D.N.Y. Nov. 9, 2022) (Seybert, J.).

Maddix did not learn of the *Brady* material until December 2024, when a researcher working on an unrelated wrongful conviction case contacted Maddix and alerted him to the *Brady/Giglio* material. FAC ¶ 103. Maddix commenced this action four months later, in April 2025.

## MARRIOTT'S MOTION TO DIMISS

### A.  Maddix Is Not Precluded From Invoking *Heck's* Non-Custody Exception

Marriott and the City argue the FAC must be dismissed because Maddix's weapon conviction has not been vacated. But the Second Circuit recognizes "a narrow exception to the *Heck* bar that permits a § 1983 suit where federal *habeas* relief is unavailable." *Wiggins v. Mellia,* 2023 WL 6222303, at *2 (2d Cir. Sept. 26, 2023); FAC at n. 15 (citing cases).

Marriott also incorrectly argues that pursuant to *Chapman v. Fais*, 540 F.Supp.3d 304 (E.D.N.Y. 2021) (Cogan, J.) and *Leach v. City of New York*, 2022 WL 4468288 (E.D.N.Y. Sept. 26, 2022) (Hall, J,) Maddix is not entitled to invoke the *Heck* non-custody because he did not exhaust state court remedies prior to bringing his § 1983 action. But a year or so after *Chapman* and *Leach* were decided, the Second Circuit clarified that it is a plaintiff's inability to seek *federal habeas relief* —not state court relief— that "is the focus of the exception to *Heck*." *Wiggins v. Mellia*, 2023 WL 6222303 (2d Cir. 2023), at *2 (emphasis in original). Moreover, the Second Circuit has emphasized that § 1983 does *not* contain any exhaustion requirement. *See e.g. Jenkins v. Herbert*, 179 F.3d 19, 22 (2d Cir. 1999) ("[T]he Supreme Court has consistently held that courts should not impose an exhaustion requirement on § 1983."), *Heck*, 512 U.S. at 480. (§ "1983 contains no exhaustion requirement beyond what Congress has provided."); *Leather v. Eyck*, 180 F.3d 420, 423 (2d Cir. 1999) (noting the plaintiff elected not to appeal his State conviction, but upholdubg his right to pursue money damages under § 1983).

In addition, the underlying facts in *Chapman* and *Leach* are distinguishable, and involved criminal defendants who unlike Maddix, were aware of their constitutional claims *at the time of their arrests* but strategically forfeited their direct appeals and/or federal *habeas corpus* petitions. In contrast, Maddix diligently challenged his conviction through every available avenue while incarcerated (direct appeal, CPL§ 440.10 motion, and federal *habeas corpus* petition), but he did *not* learn of his claims until 11 years after he was released from prison and was thus precluded from raising the *Brady/Giglio* claim in prior proceedings because of an affirmative 30-year government cover up and not due to an affirmative strategy. *Accord* Joint Letter, ECF Doc. No. 21 pp. 8-9.

### B.  Maddix's Statute Of Limitations Did Not Begin To Run Until December 2024

Contrary to Marriott's and the City's claims, Maddix's claims are timely under two independent theories: (1) the diligence-discovery rule, and (2) equitable estoppel. Federal law governs when a Section 1983 claim accrues, *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023), and "[g]enerally speaking, a § 1983 claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of New York,* 632 F.2d 185, 191, 192 (2d Cir. 1980). "[W]here [a] plaintiff would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted, the so-called diligence-discovery rule of accrual applies." *Id.* This rule delays accrual until the date the "plaintiff kn[ew] or ha[d] reason to know of the injury which is the basis of his action." *Veal v. Geraci,* 23 F.3d 722, 724 (2d Cir.1994); *Pipitone v. City of New York*, 57 F.Supp.3d 173, 186 (E.D.N.Y. 2014) (Dearie, J.). Maddix's FAC alleges

defendants actively covered up the *Brady/Giglio* violations, and the first time he learned of them was in December 2024.  FAC ¶¶ 103-104.  These facts, which must be accepted as true on a motion to dismiss, plausibly demonstrate the timeliness of Maddix's claim under the diligence discovery rule.[2]

First, Marriott and the City, however, ignore the FAC's specific allegations as to how they actively mislead him that no *Brady/Giglio* material existed, FAC at ¶¶ 2, 23, 67-69, 72-76, 82, 89-90, 93-96, 101-105, 108, 110-111, 115-116, 81-116 (the 30-year coverup), ¶¶ 263-295 (the City's Monell coverup policy), ¶¶ 317-325 (the civil conspiracy), and argue Maddix failed to plead these allegations with particularity, and that because a researcher, at some unknown point, was able to obtain the *Brady/Giglio* material through a public records request, the records could not have been suppressed. But as a temporal and factual matter, simply because a researcher obtained the records at some unknown point does not mean those records were previously available to Maddix while he was incarcerated and litigating his criminal case.  Moreover, federal law "lend[s] no support to the notion that defendants must scavenge for hints of undisclosed *Brady*/*Giglio* material when the prosecution represents that all such material has been disclosed[,]" *Banks v. Dretke,* 540 U.S. 668, 695, 693 (2004), and the Second Circuit has squarely held the fact that evidence might be available through a public records request does establish it was not concealed for *Brady* purposes.  *See United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995) ("Nor are we persuaded that the government's duty to produce the [*Brady* material] was eliminated by that document's availability in a public court file[.]").

Second, "a plaintiff may invoke the doctrine[] … equitable estoppel to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon,* 480 F.3d 636, 642 (2d Cir.2007).  The FAC alleges that for over 30-years, Marriott and the City affirmatively misled Maddix and every court to review his case, repeatedly lying that no *Brady*/*Giglio* material existed.  *O'Hara v. City of New York*, 568 F. Supp.3d at 253 (under a civil conspiracy, "the fact that [Marriott] may not have been directly involved in the solicitation or use of the fabricated testimony … is irrelevant to [its] liability for th[ose] act[s].") Those actions were "akin to a fraud on the federal habeas courts; that is, the [Defendants] took affirmative actions to conceal [its] tacit agreement with the state's key witness until it was too late, procedurally, for [the petitioner] to use that undisclosed agreement successfully to challenge his … conviction." *Douglas v. Workman*, 560 F.3d 1156, 1193 (10th Cir. 2009).  If wrongfully incarcerating a man and covering up for 19 years the very evidence that would free him is insufficient to warrant invocation of equitable estoppel, no set of facts could warrant invocation of the doctrine.

*Opperisano v. P.O. Jones*, 286 F. Supp.3d 450, 464 (E.D.N.Y. 2018) (Hall, J.), cited by Marriott, does not support its untimeliness argument.  *Oppersiano* held the statute of limitations accrues for *Heck* non-custody purposes "when habeas is no longer available."  But *Opperisano* is distinguishable, involving a plaintiff who was aware of the basis for his § 1983 claim the moment he was released from custody, and who was thus able to pursue a § 1983 action within a year.  It was on those specific facts that the *Oppersiano* court held the one-year time limitation applied.  *Oppersiano*

---

[2]As the due diligence-discovery rule provides an independent basis for finding Maddix's claims timely, respectfully, the Court erred in concluding Maddix "must rely on equitable estoppel" to establish the timeliness of his claims.  *Maddix v. City of New York*, 2025 WL 1530648, at *2 (E.D.N.Y. May 29, 2025) (Gonzalez, J.) (granting defendants' request to stay discovery pending their motions to dismiss).

had no occasion to consider the impact of a 30-year coverup and the diligence-discovery accrual and equitable estoppel rules. Likewise, *Heck*'s declaration that the statute of limitation for wrongful conviction accrues once a plaintiff's conviction is vacated was announced with respect to prisoners, and did not address the *Heck* non-custodial exception recognized by the Second Circuit.

### C.    Maddix Properly Alleges State Action, And Marriott Knowingly Serving As A KCDA Black Site To Imprison Witnesses Against Their Will

In the Second Circuit, an official has *Monell* final policymaking authority "if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." *Roe v. City of Waterbury*, 542 F.3d 31, 38 (2d Cir. 2008) (citation and quotation marks omitted). "[W]here a policymaker wholly delegates certain policy powers to a subordinate, the subordinate may herself qualify as a policymaker, thus subjecting the municipality to liability." *Haughey v. Cnty. of Putnam,* 2020 WL 1503513, at *11 (S.D.N.Y. Mar. 29, 2020) (Karas, J.). The FAC alleges Marriott "wholly delegated final policymaking authority to several local managers of the Marriott LaGuardia Hotel. The managers were autonomous and their decisions on the assistance provided and the hotel rooms they rented to the KCDA went unreviewed and were never overruled." FAC ¶ 297. The FAC also alleges through those managers "Marriott created and implemented a plainly illegal, unconstitutional, improper and deliberately indifferent policy, custom, or practice to knowingly facilitate and aid and abet the KCDA's illegal imprisonment of witnesses as prisoners" and to serve as a KCDA black site. *Id.* at ¶ 298. These allegations are more than sufficient at this stage to establish Marriott's liability. *Stalter v. Cnty. of Orange*, 2016 WL 8711397, at *11 (S.D.N.Y. Aug. 5, 2016) (Roman, J.) ("[A]t this stage of the litigation," plaintiff's allegation that Sheriff delegated all final disciplinary authority to defendant and defendant's actions thus constitute municipal policy, "sufficiently alleges *Monell* liability on the basis that Defendant Jones was delegated final policy-making authority.")

These facts also plausibly allege Marriott's knowing participation in a civil conspiracy, aiding and abetting, and the requisite state action for § 1983 purposes. *See e.g.*, *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("[A] private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents."); *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) (private party who conspired with a judge acted under color of state law). Moreover, the frequency of Marriott serving as KCDA black site, as indicated by the KCDA Hotel Custody Log, renders Maddix's allegations all the more plausible.[3]

### THE CITY'S MOTION TO DISMISS[4]

### A.    The *Rooker-Feldman* Doctrine Does Not Bar Maddix's Lawsuit

Citing a 2011 case, the City argues Maddix's case is barred by the *Rooker-Feldman* doctrine, *Read v. Zugibe*, 2011 WL 1642049, at *1 (S.D.N.Y. Apr. 5, 2011) (Pauley, J.), which bars a district

---

[3]Critically, "even a single action by a decision maker who possesses final authority to establish municipal policy with respect to the action ordered is sufficient to implicate the municipality." *Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 127 (2d Cir. 2004). Thus, the allegations in the FAC are sufficient to establish Marriott's and the City's liability. Without further discovery, there is nothing Plaintiff can add to the FAC by virtue of an amendment.

[4] For the same reasons discussed above in response to Marriott's arguments, neither *Heck* nor the statute of limitation bars Maddix's § 1983 claims.

court from acting as an appellate court for state court judgments. But *Read* is no longer good law, as the Second Circuit clarified in 2021 that the *Rooker/Feldman* doctrine does not bar claims stemming from an opposing party's misconduct during the state court litigation that procured a state court judgment. *See e.g. Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021) ("[P]laintiffs are permitted to seek damages for injuries caused by a defendant's misconduct in procuring a state court judgment, but not for injuries directly caused by that judgment."); *Bar-Levy v. Mitchell*, 2022 WL 14746399, at \*4 (S.D.N.Y. Oct. 25, 2022) (Seibel, J.) ("[T]he injuries of which Plaintiff complains do not arise from the state-court judgment, but rather from his interaction with Officer Mitchell, and thus they existed in [their] exact form prior to the state-court judgment.")

Further, the *Rooker/Feldman* doctrine does not apply to Maddix's claims based Defendants' 30-year cover up, which took place after the state court judgment was rendered. *See e.g. Deraffele v. City of New Rochelle,* 2016 WL 1274590, at \*8–9 (S.D.N.Y. Mar. 30, 2016) (Karas, J.) ("As to any allegations regarding Plaintiff's right to petition subsequent to Judge Kettner's decision, such an injury would be "*independent of* [that] adverse state court decision as Plaintiff complains that Generoso interfered with the filing of his appeal *after* Judge Kettner rendered her decision."); *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1286 (11th Cir. 2018) ("[A]s a matter of temporality, it's difficult to imagine a case where a federal court could be barred by *Rooker–Feldman* from hearing a claim that arose only after the relevant state court decision had been issued[.]")

## B.    Prosecutorial Immunity Does Not Bar Maddix From Establishing A Predicate Constitutional Violation For His *Monell* Claim

In *Anilao v. Spota*, 27 F.4th 855 (2d Cir. 2022), the Second Circuit squarely held a prosecutor's entitlement to absolute immunity does <u>not</u>, as the City argues, bar a claim against a municipality. *Id.* at 874 n. 4 ("To the extent the County suggests that it cannot be liable for Spota's and Lato's conduct during the judicial phase because of their absolute immunity, that argument is squarely foreclosed by our precedent") (citations omitted). This well settled rule was applied in *Collins v. City of New York*, 923 F.Supp.2d 462, 472 (E.D.N.Y. 2013) (Block, J). There, Judge Block held a trial prosecutor was entitled to absolute immunity for his trial conduct and dismissed the claims against him, but nevertheless upheld a *Monell* claim based on constitutional violations caused by that same conduct. The City's attempt to mislead the Court regarding this legal issue is outrageous, and based on a misleading case citation.[5]

---

[5]*See Malik v. City of New York*, 841 F. App'x 281, 284–85 (2d Cir. 2021). In *Malik*, the district court (1) dismissed federal claims against prosecutors on absolute immunity grounds, and (2) dismissed a related *Monell* claim *for pleading deficiencies*, not on absolute immunity grounds. *See Malik. v. City of New York*, 2020 WL 2747979, at \*3 (E.D.N.Y. May 27, 2020) (Block, J.). On appeal, the Second Circuit referred to the district court's dismissal of the "federal claims on the ground that the individual City defendants were protected by absolute immunity, and, without any underlying constitutional violation, Malik had no grounds for a *Monell* claim." *Malik v. City of New York*, 841 F.App'x 281, 284 (2d Cir. 2021). In other words, the Second Circuit has not held a prosecutor's entitlement to immunity required dismissal on the *Monell* claim or precluded a *Monell* claim based on that same conduct. Indeed, the Second Circuit has sustained *Monell* claims based on constitutional violations arising from a prosecutor's *Brady* violation and improper summation, acts clearly covered by a prosecutor's absolute immunity. *See e.g. Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir.

Respectfully submitted,

Andrew Stengel

ECF
Encl.

---

2019) (*Brady* and summation misconduct) and *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992) (*Brady* and perjury).