UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————————X
                                          :
WILLIE MADDIX,                            :
                                          :
                    Plaintiff,            :        25 CV 1909 (HG)
                                          :
        -against-                         :
                                          :
THE CITY OF NEW YORK, MARRIOTT            :
HOTEL SERVICES, INC., and MARRIOTT        :
INTERNATIONAL, INC.,                      :
                                          :
                    Defendants.           :
                                          :
——————————————————————X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT CITY OF NEW YORK'S FED.R.CIV.P. 12(b)(6) MOTION**

Andrew M. Stengel
The Law Firm of Andrew M. Stengel, P.C.
11 Broadway Suite 715
New York, New York 10004
Tel: 212-634-9222
Fax: 212-634-9223
Email: andrew@stengellaw.com

*Attorney For Plaintiff Willie Maddix*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ……………………………………………………….  1

SUMMARY OF ARGUMENT …………………………………………………..  1

STATEMENT OF FACTS ……………………………………………………….  7

POINT I

    DEFENDANTS' AFFIRMATIVE MISCONDUCT EQUITABLY ESTOP THEM
    FROM RAISING THE *HECK v. HUMPRHEY*, 512 U.S.    477 (1994), DEFENSE
    AND, IN ANY EVENT, *HECK* DOES NOT BAR   MADDIX'S LAWSUIT
    BECAUSE HE IS NOT IN CUSTODY ………………………………………..  7

    A.    Standard Of Review Of Fed.R.Civ.P. 12(b)(6) Motions ……………………  7

    B.    This Court Should Heed The Second Circuit's Admonition
        To Avoid Addressing The Non-Custodial Exception To *Heck* ……………...  8

    C.    Defendants Are Equitably Estopped Under Federal Law From
        Raising The *Heck* Defense ………………………………………………..  9

        1.    The *Heck* Defense Is An Affirmative One That May Be Forfeited ….  9

        2.    Maddix Plausibly Alleges Federal Law Equitably Estops
            Defendants From Invoking The *Heck* Defense ……………………..  10

        3.    Defendants' Argument Opposing Equitable Estoppel Fail …………  14

    D.    Binding Second Circuit Case Law Recognizes The *Heck* Non-Custody
        Exception, And Merely Disagrees On Its Parameters ………………………  15

        1.    Maddix Meets the Standard Under Both Lines Of Case Law …………  17

        2.    The Defendants' Arguments For Denial Are Meritless …………….  18

POINT II

    MADDIX'S CLAIMS ARE TIMELY …………………………………………..  19

POINT III

    THE *ROOKER-FELDMAN* DOCTRINE DOES NOT BAR MADDIX'S
    LAWSUIT ………………………………………………………………………..  20

POINT IV

BINDING SECOND CIRCUIT AUTHORITY HOLDS A PROSECUTOR'S ABSOLUTE IMMUNITY FROM INDIVIDUAL LIABILITY DOES *NOT* PRECLUDE A *MONELL* CLAIM ……………………………………………..   23

CONCLUSION ……………………………………………………………………….   25

**TABLE OF AUTHORITIES**

**Cases**                                                                                              **Pages**

*Abbas v. Dixon*, 480 F.3d 636 (2d Cir. 2007) ……………………………………………………… 4

*Anilao v. Spota*, 27 F.4th 855 (2d Cir. 2022) ……………………………………………………. 6, 23

*Artec Constr. and Dev. Corp. v. City of New York*, 2017 WL 5891817,
(S.D.N.Y. Nov. 28, 2017) (Failla, J.) …………………………………………………………… 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ……………………………………………………………. 8

*Askins v. Doe No. 1,* 727 F.3d 248 (2d Cir. 2013) …………………………………………...23

*Ayala v. Looks Great Servs., Inc.*, 2015 WL 4509133 (E.D.N.Y. July 23, 2015)
(Spatt, J.) …………………………………………………………………………………………13

*Banks v. Dretke*, 540 U.S. 668 (2004) …………………………………………………………2, 18

*Bar-Levy v. Mitchell,* 2022 WL 14746399 (S.D.N.Y. Oct. 25, 2022) (Seibel, J.) ………………..21

*Barmapov v. Barry*, 2001 WL 32371 (E.D.N.Y. Jan. 5, 2011) (Mauskopf, J.) ………………  17

*Barnes v. City of New York*, 68 F.4th 123 (2d Cir. 2023)  …………………………………………10

*Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019) …………………………….6, 12, 23, 24

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ………………………………………….8

*Bensky v. Indyke*, 743 F.Supp.3d 586 (S.D.N.Y. 2024) (Subramanian, J.) …………………………13

*Best v. Kelly*, 39 F.3d 328 (D.C. Cir. 1994) …………………………………………………………10

*Black v. United States*, 2020 WL 5939745 (D. Vt. Oct. 6, 2020) …………………………………5

*Brady v. Maryland*, 373 U.S. 83 (1963) …………………………………………………… *passim*

*Brown v. Wagner*, 2014 WL 234821 (W.D.N.Y. Jan. 22, 2014)………………………………16

*Chapman v. Fais*, 540 F.Supp.3d 304 (E.D.N.Y. 2021) (Cogan, J.) ………………………2, 16, 18

*Chillemi v. Town of Southhampton*, 943 F.Supp.2d 365 (E.D.N.Y. 2013) (Spatt, J.) ………..16, 17

*City of New York v. Shalala*, 34 F.3d 1161 (2d Cir. 1994)  …………………………..……….11

i

**Cases**                                                                                                    **Pages**

*Clark v. Hanley*, 89 F.4th 78 (2d Cir. 2023) ……………………………………………………5

*Collins v. City of New York*, 923 F.Supp.2d 462 (E.D.N.Y. 2013) (Block, J.) ………………..6, 23

*Colvin v. LeBlanc*, 2 F.4th 494 (5th Cir. 2021) …………………………………………………9

*Davis v. Travis*, 2008 U.S. Dist. LEXIS 99801 (S.D.N.Y. Dec. 3, 2008) ………………………17

*Deraffele v. City of New Rochelle*, 2016 WL 1274590 (S.D.N.Y. Mar. 30, 2016)
(Karas, J.) …………………………………………………………………………………...5, 21

*Dist. Att'y of New York County v. Republic of the Philippines*, 2016 WL 9022580
(S.D.N.Y. Jan. 20, 2016) (Failla, J.) …………………………………………………………... 5

*Dixon v. Hodges*, 887 F.3d 1235 (11th Cir. 2018) ………………………………………... 10

*Donovan v. Fowle*, 762 F.Supp.2d 186 (D. Me. 2011) …………………………………………..20

*Dorce v. City of New York*, 2 F.4th 82 (2d Cir. 2021) …………………………………….5, 20, 22

*Fortune v. Med. Assocs. of Woodhull, P.C.*, 803 F.Supp. 636 (E.D.N.Y. 1992)
(Johnson, J.) …………………………………………………………………………......…11

*Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84 (2d Cir. 2013) ………………..15

*Giglio v. United States*, 405 U.S. 150 (1972) ……………………………………….. *passim*

*Greathouse v. Meddaugh,* 2023 WL 5439456 (2d Cir. 2023) …………………………………9

*Heck v. Humphrey*, 512 U.S. 477 (1994) ……………………………………………………*passim*

*Hardy v. Fischer*, 701 F.Supp.2d 614 (S.D.N.Y. 2010) (Stein, J.) ………………………………17

*Harris v. Tioga County*, 663 F Supp.3d 212 (N.D.N.Y. 2023)
(Hurd, J.), *appeal dismissed,* 2024 WL 4179651 (2d Cir Sept. 13, 2024) ………………………..3

*Harvey v. People of the City of New York,* 435 F.Supp.2d 175 (E.D.N.Y. 2006)
(Gershon, J.) …………………………………………………………………………..17

*Haughey v. County of Putnam*, 2020 WL 1503513 (S.D.N.Y. Mar. 29, 2020)
(Karas, J.) …………………………………………………………………………..7

*Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005) …………………20, 22

ii

**Cases**                                                                                          **Pages**

*Hope v. City of New York*, 2010 WL 331678 (E.D.N.Y. Jan. 22, 2010) (Cogan, J.) ……………...17

*Horton v Schenectady County*, 2023 WL 2552005 (N.D.N.Y. Mar. 16, 2023) ……………………9

*Houston v. City of New York*, 2013 WL 1310554 (E.D.N.Y. Mar. 28, 2013)
(Dearie, J.) ……………………………………………………………………………….17

*Hurd v. City of New York*, 2019 WL 4696364 (E.D.N.Y.  Sept. 26, 2019)
(Matsumoto, J.) …………………………………………………………………………..16

*In re Ionosphere Clubs, Inc.*, 85 F.3d 992 (2d Cir.1996) …………………………………..11

*Indoafric Exports Priv. Co. v. Citibank, N.A.*, 696 F.App'x 551 (2017) …………………….11, 15

*Jackson v. City of Clevland*, 64 F.3d 736 (6th Cir. 2023), *reh'g denied*, 2023
WL 3806460 (6th Cir. May 10, 2010) …………………………………………………..10, 22

*Jean–Laurent v. Cornelius*, 2017 WL 933100 (S.D.N.Y.  Mar. 8, 2017) (Koeltl, J) ……………17

*Jeannot v. New York State*, 762 F.Supp.3d 217 (E.D.N.Y. 2025) (Gonzalez, J.) …………………13

*Jeanty v. City of Utica*, 2017 WL 6408878 (N.D.N.Y. Aug. 18, 2017) (Sannes, J.) ……………16

*Jenkins v. Herbert*, 179 F.3d 19 (2d Cir. 1999) …………………………………………18, 19

*John v. Lewis*, 2017 WL 1208428 (E.D.N.Y. Mar. 31, 2017) (Chen, J.) ……………………..1, 16

*Johnson v. Spencer*, 950 F.3d 680 (10th Cir. 2020) …………………………………………..10

*Kates v. New York*, 2024 WL 3228051 (W.D.N.Y. June 27, 2024) (Larimer, J) …………………16

*Cox v. City of New Rochelle*, 2019 WL 3778735 (S.D.N.Y. Aug. 12, 2019) (Karas, J.) …………16

*Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565 (2d Cir. 2011) ………………………..8

*Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706 (2d Cir. 2001) ……………... 11

*Kroemer v. Tantillo*, 2017 WL 6409147 (W.D.N.Y. June 16, 2017) *aff'd*,
758 Fed.Appx 84 (2d Cir 2018) …………………………………………………………..8

*Leach v. City of New York*, 2022 WL 4468288 (E.D.N.Y. Sept. 26, 2022) (Hall, J.) …………2, 18

*Leather v. Eyck*, 180 F.3d 420 (2d Cir. 1999) …………………………………………………18

iii

| **Cases** | **Pages** |
|---|---|

*Malik. v. City of New York*, 2020 WL 2747979 (E.D.N.Y. May 27, 2020)
(Block, J.) …………………………………………………………………………..24

*Malik v. City of New York*, 841 F.App'x 281 (2d Cir. 2021) ……………………………………24

*McKithen v. Brown*, 481 F.3d 89 (2d Cir. 2007) ……………………………………………20

*Mitchell v. New York State*, 2023 WL 2734823 (E.D.N.Y. 2023) (Hall, J.) …………………. 22

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ………………… *passim*

*Morgan v. City of New York*, 2017 WL 6561161 (E.D.N.Y. Dec. 22, 2017)
(Johnson, J.) ……………………………………………………………………...16

*Morse v. Fusto*, 804 F.3d 538 (2d Cir. 2015) …………………………………………… 4

*Music Royalty Consulting, Inc. v. Reservoir Media Mgmt., Inc.*,
2019 WL 6335261 (S.D.N.Y. Oct. 31, 2019) (McMahon, J.) ……………………………..13

*O'Brien v. Town of Bellingham*, 943 F.3d 514 (1st Cir. 2019) ……………………………10

*O'Hara v. City of New York*, 2021 WL 4932287 (E.D.N.Y. 2021) (Glasser, J.) ……………….14

*Olivier v. City of Brandon, Mississippi*, 2025 WL 1829163 (2025) …………………………...1, 8

*Opperisano v. P.O. Jones*, 286 F.Supp.3d 450 (E.D.N.Y. 2018) (Broadie, J.) ………………3, 17

*Palmenta v. Blank*, 2018 WL 4516676 (D. Conn. Sept. 20, 2018) …………………………...2, 18

*Patsy v. Florida Bd. of Regents*, 457 U.S. 496 (1982) ………………………………………..18

*Penn v. New York State*, 2018 WL 10670473 (S.D.N.Y. July 17, 2018)
(Schofield, J.) ……………………………………………………………………………16

*People v. Russ,* 79 N.Y.2d 173 (1992) ………………………………………………………….6

*Pinaud v. County of Suffolk,* 52 F.3d 1139 (2d Cir. 1995) …………………………………….. 23

*Pipitone v. City of New York*, 57 F.Supp.3d 173 (E.D.N.Y. 2014) (Dearie, J.) …………………..4

*Polzin v. Gage,* 636 F.3d 834 (7th Cir. 2011) …………………………………………………….9

*Poventud v. City of New York* 715 F.3d 57 (2d Cir. 2013) …………………………………...15

iv

**Cases**                                                                                                                     **Pages**

*Poventud v. City of New York* 750 F.3d 121 (2d Cir. 2014) …………………………………………19

*Read v. Zugibe*, 2011 WL 1642049 (S.D.N.Y. Apr. 5, 2011)
(Pauley, J.) …………………………………………………………………………………………22

*Ricciuti v. NYC. Transit Auth.*, 941 F.2d 119 (2d Cir. 1991) …………………………………………..8

*Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124 (2d Cir. 2025) ……………………………...13

*Sanders v. Williams*, 2015 WL 7963135 (S.D.N.Y. Nov. 10, 2015)
(Dolinger, M.J.) *report and recommendation adopted,* 2015 WL 8073810
(S.D.N.Y. Dec. 4, 2015) …………………………………………………………………………17

*Schupak v. Florescue*,1993 WL 256572 (S.D.N.Y. July 8, 1993) (Keenan, J.) …………………....13

*Scott v. City of Mt. Vernon,* 2017 WL 1194490 (S.D.N.Y. Mar. 30, 2017) ………………………9

*Scott v. City of White Plains*, 2012 WL 1267873 (S.D.N.Y. Apr. 10, 2012)
(Forrest, J.) …………………………………………………………………………………………17

*Shahzad v. County of Nassau*, 2016 WL 11540145 (E.D.N.Y. Mar. 31, 2016) …………………17

*Smith v. Burdette*, 2019 WL 2713138 (6th Cir. April 26, 2019) …………………………………10

*Smurphat v. Hobb*, 2020 WL 8474801, at *4 (N.D.N.Y. Sept. 21, 2020),
*adopted by* 2021 WL 129055 (N.D.N.Y. Jan. 14, 2021) ………………………………………..9

*State of N.Y. v Hendrickson Bros., Inc.*, 840 F.2d 1065 (2d Cir. 1988) …………………………13

*Su v. Filion*, 335 F.3d 119 (2d Cir. 2003) …………………………………………………………..17

*Tardd v. Brookhaven Nat. Lab'y*, 407 F.Supp.2d 404 (E.D.N.Y. 2006) (Spatt, J.) ………………13

*Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279 (11th Cir. 2018) ……………….21

*Teichmann v. New York,* 769 F3.d 821 (2d Cir. 2014) ……………………………………1, 8, 15, 19

*Topa v. Melendez*, 739 Fed.Appx. 516 (11th Cir 2018) ………………………………………..1

*Veal v. Geraci*, 23 F.3d 722 (2d Cir.1994) …………………………………………………..4

*Varecka v. CSX Transportation, Inc.,* 2022 WL 1750700 (W.D.N.Y. May 31, 2022) …………10

*Vuyanich v. Smithton Borough*, 5 F.4th 379 (3d Cir. 2021) …………………………………………9

**Cases**                                                                                                                                    **Pages**

*Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992) ……………………………………..23

*Washington v. Los Angeles Cty. Sheriff's Dep't*, 833 F.3d 1048 (9th Cir. 2016) …………………9

*Webster v. Himmelbach*, 271 F.Supp.3d 458 (W.D.N.Y. 2017) (Wolford, J.) …………………...17

*Wiggins v. Mellia*, 2023 WL 6222303 (2d Cir. Sept. 26, 2023) …………………………….2, 8, 15

*Wilson v. Celestin*, 2019 WL 2211062 (E.D.N.Y. May 22, 2019) (Broadie, J.) …………………17

*Wilson v. Midland County*, Doc. No. No. 24-672 …..…………………………………………….8

*Wilson v. Midland County, Texas*, 116 F.4th 384 (5th Cir. 2024) ……………………………….16

*Wright v. Orleans Cty.*, 2015 WL 5316410 (W.D.N.Y. Sept. 10, 2015),
report and recommendation adopted, 2015 WL 13660397
(W.D.N.Y. Oct. 27, 2015) …………………………………………………………………………7

*Young v. Monroe County*, 2024 WL 4258187 (W.D.N.Y. Sept. 23, 2024) ……………………….9


**Statutes**

42 U.S.C. § 1983 ……………………………………………………………………. *passim*

CPL § 330.30 ……………………………………………………………………………….12

CPL § 440.10 …………………………………………………………………….. 12, 18


**Federal Rules**

Fed.R.Civ.P. 12(b)(6) ……………………………………………………………… *passim*

Fed.R.Civ.P. 8 (a)(2) ……………………………………………………………………...7


**Treatises**

Equitable estoppel, 16 N.Y.Prac., New York Law of Torts § 19:23 ………………………………4

## PRELIMINARY STATEMENT

Plaintiff Willie Maddix submits this Memorandum of Law in opposition to Defendant the City of New York's September 2, 2025, Fed.R.Civ.P. 12(b)(6) motion to dismiss. ECF Nos 28-30. We respectfully incorporate the Preliminary Statement set forth in Maddix's Memorandum of Law in Opposition to Marriott International, Inc. and Marriott Hotel Services, Inc.'s ("Marriott" or "the Marriott Defendants") Motion to Dismiss. ECF No 35.

## SUMMARY OF ARGUMENT

Defendant City of New York ("Defendant City" or "the City") and Marriott's arguments for dismissal are meritless. They ignore the specific allegations in Maddix's First Amended Compliant ("FAC"), the applicable standards of review of motions to dismiss, and binding authority entitling Maddix to his day in court.

First, Defendants argue Maddix's lawsuit is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because his weapon possession conviction has not been overturned. This argument is flawed for the following reasons: (1) Maddix plausibly alleges Defendants are equitably estopped from invoking the *Heck* defense by virtue of misconduct by the Kings County District Attorney's Office ("KCDA"), and under Second Circuit authority, this estoppel issue generally may not be resolved on a motion to dismiss; (2) the Second Circuit instructs district courts to avoid resolving the *Heck* non-custody exception issue presented in Maddix's case, *Teichmann v New York,* 769 F3.d 821, 829 (2d Cir. 2014) (Calebresi, J. concurring), an admonition particularly appropriate given the Supreme Court's grant of certiorari to consider the issue in *Olivier v. City of Brandon, Mississippi*, 2025 WL 1829163 (2025); and (3) in any event, the Second Circuit recognizes the *Heck* non-custodial exception, holding *Heck* does not apply to non-custodial plaintiffs such as Maddix who, through no fault of their own , cannot raise their constitutional claims in a federal *habeas corpus* petition. *See e.g. John v. Lewis*, 2017 WL 1208428, at *7 (E.D.N.Y. Mar. 31, 2017)

1

(Chen, J.) ("It is Second Circuit law that a plaintiff not in State custody, who thus does not have a habeas corpus remedy available, may bring a [section] 1983 action, even if a successful claim would 'necessarily imply the invalidity of his conviction.'")

Second, Defendants argues even if the *Heck* non-custody exception applies, Maddix is precluded from invoking it because he did not exhaust state remedies. City Memo. pp. 7-8, Marriott Memo. pp. 9-10, citing (*citing Chapman v. Fais*, 540 F.Supp.3d 304 (E.D.N.Y. 2021) (Cogan, J.), *Leach v. City of New York*, 2022 WL 4468288 (E.D.N.Y. Sept. 26, 2022) (Hall, J), and *Palmenta v. Blank*, 2018 WL 4516676 (D. Conn. Sept. 20, 2018). But each of those cases involved criminal defendants who, aware of their constitutional claims from the moment they were arrested and throughout their incarceration, strategically forfeited state and federal remedies while in prison, and then sought to invoke the *Heck* non-custody exception after their release.

In contrast, Maddix: (1) was *unaware* of his constitutional claims throughout the entirety of his incarceration; (2) was unable to pursue state or federal relief on those claims while incarcerated because he was deceived by prosecutors' false representations that no *Brady/Giglio* existed; (3) did not strategically forgo any remedy while in prison; and (4) to the contrary, *diligently pursued all available state and federal remedies* while in prison, but was precluded from raising his constitutional claims due to government actors' gross misconduct. Maddix cannot, as a matter of law, be faulted under such circumstances. *See e.g. Banks v. Dretke*, 540 U.S. 668, 693 (2004) ("Our decisions lend no support to the notion that defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed; the State asserted, on the eve of trial, that it would disclose all *Brady* material …. Banks *cannot* be faulted for relying on that representation.") (emphasis added).

Moreover, *Chapman*, *Leach* and *Palmenta* were all decided before the Second Circuit's important, clarifying decision in *Wiggins v. Mellia*, 2023 WL 6222303(2d Cir. Sept. 26, 2023),

2

where the court explained that it is a plaintiff's inability to seek "federal habeas relief"—not state court relief—that "is the focus of the [non-custody] exception to *Heck*." *Id.* *2. After all, the whole point of the *Heck* exception is to provide plaintiffs who are unable to resort to federal habeas corpus with a *federal* remedy to raise their constitutional claims. The existence of a state court remedy does not provide any such federal platform and could in fact, by virtue of doctrines like *res judicata* and collateral estoppel, actually preclude federal review.

Third, Defendants argue Maddix's claims are untimely because: (1) they did not accrue (because his conviction has not been overturned), or (2) they accrued the moment Maddix was released from prison in 2012. Both arguments fail. Defendant's first argument erroneously presupposes *Heck* applies in Maddix's case when, in truth, Maddix qualifies for the non-custodial exception to *Heck.* Defendant's second argument fails because when Maddix was released from prison in 2012, Defendants continued to conceal the *Brady/Giglio* material from him, and he was totally unaware of his constitutional injuries. Generally speaking, a § 1983 claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Harris v. Tioga County*, 663 F Supp.3d 212, 234 (N.D.N.Y. 2023) (Hurd, J.), *appeal dismissed,* 2024 WL 4179651 (2d Cir Sept. 13, 2024).

In arguing this rule does not apply, the City ignores all of Maddix's allegations, which must be accepted as true for Fed.R.Civ.P. 12 (b)(6) purposes, that prior to December 2024, he was deceived by prosecutors, totally unaware of the *Brady/Giglio* material, and unable to raise his claims earlier due to the misconduct of those prosecutors.

Defendants also cite *Opperisano v. P.O. Jones*, 286 F. Supp.3d 450, 464 (E.D.N.Y. 2018) (Broadie, J.) for the proposition that the statute of limitations begins for *Heck* non-custody purposes when the previously incarcerated plaintiff is released from prison, but ignore that the

3

plaintiff in that case was fully aware of the basis for his § 1983 claim the moment he was released from custody, and thus able to pursue a § 1983 action within one year.

More importantly, Defendants ignore Maddix's § 1983 claims are timely under three independent theories: (1) the general accrual rule; (2) the diligence-discovery rule; and (3) equitable estoppel. As previously stated, under the general accrual rule Maddix's time limitation only begins to run when he learns of his constitutional injury. Under the diligence-discovery rule accrual of a cause of action is delayed until the date the "plaintiff kn[ew] or ha[d] reason to know of the injury which is the basis of his action." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir.1994). *Pipitone v. City of New York*, 57 F. Supp.3d 173, 190 (E.D.N.Y. 2014) (Dearie, J.) (denying summary judgment in § 1983 case where constitutional violation took place 30 years earlier, but factual issues precluded the court from concluding, "as a matter of law that these claims are untimely" under the diligence-discovery rule), And under equitable estoppel, a defendant who induced a plaintiff by fraud, misrepresentations or deception to refrain from filing a timely action may be barred from asserting a statute of limitation defense. *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (federal law), 19:23. Statute of limitations tolling provisions—Equitable estoppel, 16 N.Y.Prac., New York Law of Torts § 19:23 (New York law).

The FAC alleges that for over 30 years, the City (*via* the KCDA) affirmatively misled Maddix and every court to review his case, that no *Brady/Giglio* material existed, resulting in his 19-year incarceration. *Morse v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015) ("Information may be 'false' if material omissions render an otherwise true statement false[,]" and both "affirmative misrepresentations and misleading omissions … threaten the integrity of the judicial process by injecting it with falsity provided by officers of the state whose official status gives the misinformation a special aura of reliability[.]")

4

These allegations raise factual issues which, accepted as true, cannot be resolved at this early stage of the litigation. *See e.g. Black v. United States*, 2020 WL 5939745, at *5 (D. Vt. Oct. 6, 2020) ("Because Defendants have failed to demonstrate that Plaintiffs' claims are barred as a matter of law, the court denies their motion to dismiss on the basis of the non-applicability of the diligence-discovery rule."); *Clark v. Hanley*, 89 F.4th 78, 94 (2d Cir. 2023) (equitable claims "often raises fact-specific issues premature for resolution on a Rule 12(b)(6) motion, before a plaintiff can develop the factual record."); *Dist. Att'y of New York County v. Republic of the Philippines*, 2016 WL 9022580, at *1 (S.D.N.Y. Jan. 20, 2016) (Failla, J.) ("[T]he factual record is insufficiently developed to decide the …. statute of limitations defense as a matter of law, particularly given the Republic's equitable estoppel arguments. In sum, the Motion … must be decided on a more fully developed record.")

Fourth, the City argues Maddix's suit is barred by the *Rooker-Feldman* doctrine, which prevents a district court from acting as an appellate court for state court judgments. But the *Rooker-Feldman* doctrine neither bars claims stemming from an opposing party's misconduct during state court litigation that procured a state court judgment, *Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021) ("[P]laintiffs are permitted to seek damages for injuries caused by a defendant's misconduct in procuring a state court judgment, but not for injuries directly caused by that judgment."), nor claims based on Defendants' 30-year cover up *after* the state court judgment was rendered. *See e.g. Deraffele v. City of New Rochelle*, 2016 WL 1274590, at *8–9 (S.D.N.Y. Mar. 30, 2016) (Karas, J.) ("As to any allegations regarding Plaintiff's right to petition subsequent to [the state court] decision, such an injury would be 'independent of [that] adverse state court decision as Plaintiff complains that [defendant] interfered with the filing of his appeal after [the state court] decision.")

5

Fifth, the City argues the trial prosecutor's absolute immunity from individual liability precludes Maddix from pleading a *Monell* claim based on that conduct. But the Second Circuit "squarely" held in *Anilao v. Spota*, 27 F.4th 855 (2d Cir. 2022), that a prosecutor's entitlement to absolute immunity does *not* bar a claim against a municipality. *Id.* at 874 n. 4 ("To the extent the [municipality] suggests that it cannot be liable for [the prosecutors'] conduct during the judicial phase because of their absolute immunity, that argument is squarely foreclosed by our precedent") (citations omitted); *Bellamy v. City of New York*, 914 F.3d 727, 761 (2d Cir. 2019) (sustaining *Monell* claim based on prosecutor's *Brady* violation and and false summation, conduct clearly covered by a prosecutor's absolute immunity); *Collins v. City of New York*, 923 F.Supp.2d 462, 472 (E.D.N.Y. 2013) (Block, J.) (dismissing individual capacity claims against a prosecutor based on his absolute immunity, but sustaining a *Monell* claim predicated on the constitutional violation resulting from that immunized conduct).

Sixth, the City argues Maddix cannot establish an underlying constitutional violation because he does not allege the trial prosecutor coerced the star witness into giving false testimony, a requirement for a Fifth Amendment coercion claim. That claim is a red herring. Maddix never pled a coercion claim. As developed below, Maddix's pleading alleges three predicate constitutional violations: a violation of (1) his right to disclosure of *Brady/Giglio* material during trial; (2) his right to not have knowingly false or misleading testimony and argument used at his trial; and (3) his post-conviction due process right to ongoing disclosure of *Brady/Giglio* material suppressed during his trial, and to petition for relief. Maddix's references to "legal coercion," which is a term of art under New York law, *see e.g. People v. Russ,* 79 N.Y.2d 173, 178 (1992) (excluding "legally coerced" testimony), was simply a moniker for the legal basis to have

6

testimony obtained through abuse of New York court process suppressed.  FAC at Doc. No. 5 at

p. 46.[1]

Maddix's case presents the Court with a number of complex legal issues.  However, none

of those issues entitle Defendants to summary dismissal of his lawsuit as a matter of law.  Maddix

is entitled to his day in Court, and an opportunity to prove his well-documented claims.

## STATEMENT OF FACTS

Maddix respectfully incorporates the Statement of Facts set forth in his Memorandum of

Law Opposing the Marriott Defendants' Motion to Dismiss.  ECF No. 35 at pp. 2-8.

## POINT I

**DEFENDANTS' AFFIRMATIVE MISCONDUCT EQUITABLY ESTOP THEM FROM RAISING THE *HECK v. HUMPRHEY*, 512 U.S. 477 (1994), DEFENSE AND, IN ANY EVENT, *HECK* DOES NOT BAR MADDIX'S LAWSUIT BECAUSE HE IS NOT IN CUSTODY**

**A.** **Standard Of Review Of Fed.R.Civ.P. 12(b)(6) Motions**

A pleading must contain a "short and concise statement of the claim showing that the

pleader is entitled to relief." Fed.R.Civ.P. 8 (a)(2).  It "does not need detailed factual allegations"

to survive a motion to dismiss, but a plaintiff is obligated to provide more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action.  The FAC's "[f]actual

---

[1] Co-defendant Marriott asserts two additional arguments, contending Maddix failed to demonstrate Marriott acted under color of state law, and that he used improper group pleading.  As Maddix discusses in his Memorandum of Law opposing Marriott's motion to dismiss, ECF No. 35, Maddix, by plausibly alleging Marriott engaged in a civil conspiracy with a state actor, amply pleads Marriott acted under color of state law. *See Haughey v. County of Putnam*, 2020 WL 1503513, at *8 (S.D.N.Y. Mar. 29, 2020) (Karas, J.) (plaintiff adequately alleged state action by asserting private citizen conspired with detectives to frame plaintiff), and referring to Marriott's International, Inc. and Marriott Hotel Services, Inc.'s joint conduct is not a prohibited group pleading, *i.e.*, one that fails to "give each defendant fair notice of the claims against it." *Wright v. Orleans Cty.*, 2015 WL 5316410 at *13 (W.D.N.Y. Sept. 10, 2015), report and recommendation adopted, 2015 WL 13660397 (W.D.N.Y. Oct. 27, 2015); Marriott Memo. at pp. 5-6 (summarizing the claims Maddix asserted against it).

allegations must be enough to raise a right to relief above the speculative level," and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).[2]

In evaluating the plausibility of the FAC, the court must accept Maddix's allegations as true and give him the benefit of all reasonable inferences from the pleaded facts. *See Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 567 (2d Cir. 2011). Moreover, the Court may use "its judicial experience and common sense," to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.     This Court Should Heed The Second Circuit's Admonition
To Avoid Addressing The Non-Custodial Exception To *Heck***

The Second Circuit has instructed its district courts to avoid tackling the difficult issue of whether the non-custody *Heck* exception applies in a given case. *Teichmann v. New York,* 769 F.3d at 829 (Calebresi, J.) (concurring) ("[M]any cases that have the potential to raise *Heck* questions can be disposed of based on well-settled principles upon which there is broad agreement, and when that is so, it is generally desirable for us and for district courts to decide them on these non *Heck* grounds."); *Kroemer v. Tantillo*, 2017 WL 6409147, at *7 n. 10 (W.D.N.Y. June 16, 2017) (Crawford, J.) ("As Judge Calabresi has recently observed, decisions on grounds other than *Heck* are 'generally preferable.'"), *aff'd,* 758 Fed Appx 84 (2d Cir 2018).

This principle is particularly appropriate here as the Supreme Court recently granted certiorari in *Olivier v. City of Brandon*, 145 S. Ct. 2871 (2025) to determine if *Heck* bars claims by plaintiffs who never had access to habeas corpus, and relatedly, delayed ruling on certiorari in *Wilson v. Midland County*, Doc. No. No. 24-672, which asks if such plaintiffs must pursue state

---

[2] The facts alleged in the complaint need not be admissible at trial, *Ricciuti v. NYC. Transit Auth.*, 941 F.2d 119, 123-24 (2d Cir. 1991), and need not suffice to *prove* Maddix's claims, but need merely show they are *plausible*.

court remedies before bringing their § 1983 actions.  Considering these facts, this Court should avoid deciding the *Heck* issue and instead base its decision on Maddix's assertion of equitable estoppel.    In any event, if the Court is inclined to consider the *Heck* non-custody exception, Maddix easily meets that exception.

### C.    Defendants Are Equitably Estopped Under Federal Law From Raising The *Heck* Defense

#### 1.    The *Heck* Defense Is An Affirmative One That May Be Forfeited

Whether "the procedural bar" of *Heck* "is waivable is a question [the Second Circuit] has not addressed." *Greathouse v. Meddaugh,* 2023 WL 5439456, at *3 (2d Cir. 2023) (summary order) ("In this case, we assume without deciding that *the procedural bar* is waivable[.]") (Emphasis added).  District courts in the Second Circuit are divided on the issue.  Several courts hold *Heck* is not jurisdictional and can be waived.  *See e.g. Horton v Schenectady County*, 2023 WL 2552005, at *7 (N.D.N.Y. Mar. 16, 2023) ("[T]he bar in *Heck* is not jurisdictional….We see no basis for converting Heck's favorable-termination rule into a 'jurisdictional' rule."); *Scott v. City of Mt. Vernon,* 2017 WL 1194490 (S.D.N.Y. Mar. 30, 2017) (Karas, J.) ("*Heck* is not jurisdictional").[3]

Likewise, the majority of other circuits —Third, Fifth, Seventh, Ninth, and Tenth Circuits— hold *Heck* is *not* jurisdictional.  *See Vuyanich v. Smithton Borough*, 5 F.4th 379, 389 (3d Cir. 2021); *Colvin v. LeBlanc*, 2 F.4th 494, 498-99 (5th Cir. 2021); *Polzin v. Gage*, 636 F.3d 834, 837-38 (7th Cir. 2011); *Washington v. Los Angeles Cty. Sheriff's Dep't*, 833 F.3d 1048, 1056 (9th Cir. 2016) ("[C]ompliance with *Heck* most closely resembles the mandatory administrative

---

[3] Other New York courts hold *Heck* is jurisdictional.  *See e.g. Young v Monroe County*, 2024 WL 4258187, at *4 (W.D.N.Y. Sept. 23, 2024) (*Heck* bar is jurisdictional); *Smurphat v. Hobb*, 2020 WL 8474801, at *4 (N.D.N.Y. Sept. 21, 2020), *adopted by* 2021 WL 129055 (N.D.N.Y. Jan. 14, 2021) (recognizing *Heck* as "creat[ing] a jurisdictional prerequisite to civil suits brought under 42 U.S.C. § 1983").

exhaustion of PLRA claims, which constitutes an affirmative defense and not a pleading requirement."); *Johnson v. Spencer*, 950 F.3d 680, 697-98 (10th Cir. 2020) (same).

In contrast, the "minority view" is *Heck* is a jurisdictional rule[,]" *Topa v. Melendez*, 739 Fed.Appx. 516, 518 (11th Cir 2018).  The First, Sixth, Eleventh and D.C. Circuits have suggested *Heck* is jurisdictional.  *See O'Brien v. Town of Bellingham*, 943 F.3d 514, 528-29 (1st Cir. 2019) ("Whether *Heck* bars § 1983 claims is a jurisdictional question that can be raised at any time during the pendency of litigation"); *Smith v. Burdette*, No. 18-5670, 2019 WL 2713138, at *2 (6th Cir. April 26, 2019) (referring to dismissal under *Heck* as "a dismissal on jurisdictional grounds"); *Dixon v. Hodges*, 887 F.3d 1235, 1237 (11th Cir. 2018) (same); *see also Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994) (same).

In line with the majority view, Maddix contends *Heck* is <u>not</u> jurisdictional but rather an affirmative defense that may be waived or forfeited.

### 2. Maddix Plausibly Alleges Federal Law Equitably Estops Defendants From Invoking The *Heck* Defense

As federal law governs when a Section 1983 claim accrues, *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023), Maddix's equitable estoppel claim is governed by federal common law. *Varecka v. CSX Transportation, Inc.,* 2022 WL 1750700, at *6 (W.D.N.Y. May 31, 2022) ("Because this is an equitable estoppel claim under a federal statute, federal law principles of equitable estoppel are applicable.")[4]

---

[4] Defendants cite several district court cases applying equitable estoppel under *New York* law and argue Maddix is required to prove Defendants committed obstructive acts separate from the factual basis underlying his causes of action. City Memo. pp. 11-12, Marriott Memo. p. 15.  But federal law contains no such requirement.  Moreover, even if New York law applied, Maddix would meet this additional requirement: Defendants' post-conviction coverup is separate and distinct from their due process violations during Maddix's criminal trial.  *See e.g. Jackson v. City of Cleveland*, 64 F.4th 736, 748 (6th Cir. 2023) ("A post-conviction petition for relief is different in kind from a damages claim, even if they are derived from the same *Brady* violations."), *reh'g denied,* 2023 WL 3806460 (6th Cir. May 10, 2023).  Moreover, while Maddix's case involves equitable *estoppel*,

10

The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct. *See In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir.1996). The elements of equitable estoppel under federal common law are as follows:

> (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation.

*Fortune v. Med. Assocs. of Woodhull, P.C.*, 803 F. Supp. 636, 643 (E.D.N.Y. 1992) (Johnson, J.).

A municipality may be subject to equitable estoppel as well: "We apply estoppel to the Government only in those limited cases where the party can establish both that the Government made a misrepresentation upon which the party reasonably and detrimentally relied and that the Government engaged in affirmative misconduct." *City of New York v. Shalala*, 34 F.3d 1161, 1168 (2d Cir. 1994) (citations omitted).[5]

Maddix's allegations of Defendants' pre-conviction and post-conviction conduct, accepted as true, establish Defendants are equitably estopped from raising the *Heck* defense. Maddix alleges:

(1)    The prosecutor was required, under the U.S. Constitution to disclose all *Brady/Giglio* material during Maddix's 1994 criminal trial, FAC ¶¶ 60-69;

---

not tolling, the case the City cherry-picks its quote from, *Indoafric Exports Priv. Co. v. Citibank, N.A.*, 696 F. App'x 551 (2d Cir. 2017), to claim a failure to disclose is not enough to warrant tolling actually establishes a defendant's failure to disclose is sufficient when, as here, there is an ongoing duty to disclose. *Id.* at 552 ("Typically, mere silence or failure to disclose the wrongdoing is insufficient .... Where a defendant has a duty to speak, however, and fails to do so, a plaintiff's reliance on a defendant's silence can provide grounds for equitable tolling") (cleaned up).

[5] "Whether equitable estoppel applies in a given case is ultimately a question of fact[.]" *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001).

(2)     Rather than comply with that obligation, the prosecutor suppressed the material and falsely portrayed DeJesus as a Good Samaritan with no undisclosed motive for testifying, *id.* ¶ 72;

(3)     The prosecutor created the false impression that his dealings with DeJesus had been above board, and that DeJesus had "no motive" to lie and nothing at stake when, in truth, DeJesus' freedom was dependent on his testimony, *id.* ¶¶ 73-74;

(4)     The "special role" the prosecutor owed to Maddix, and the prosecutor's obligations under *Brady/Giglio* and federal law, created the legal equivalent of a fiduciary relationship between the prosecutor and Maddix, *id.* ¶ 105;

(5)     The prosecutor's representations throughout "trial and the KCDA's representations afterward misled Maddix to believe no such impeachment materials existed, and DeJesus had no undisclosed motive for testifying, *id.* ¶ 104;

(6)     The KCDA had a continuing obligation to disclose the *Brady/Giglio* material suppressed during Maddix's trial. Yet rather than disclose the *Brady/Giglio* material, the KCDA suppressed it throughout Maddix's 19-year incarceration, *id.*[6]

(7)     In 1994, the prosecutor "opposed Maddix's pre-sentencing CPL § 330.30 motion, while continuing to conceal the *Brady/Giglio* material, *id.* ¶ 84;

(8)     In 1997, KCDA appellate prosecutors opposed Maddix's direct appeal by recounting DeJesus' trial testimony implicating Maddix, without disclosing the abuse of process underlying it and the, the false aspects of it, and the *Brady/Giglio* material the KCDA was continuing to suppress, *id.* ¶¶ 86-88;

(9)     In 1998 the KCDA opposed Maddix's CPL § 440.10 motion, representing DeJesus' trial testimony was credible, and continuing to hide the *Brady/Giglio* material, *id.* ¶ 90;

(10)    In 1999 the KCDA opposed Maddix's federal habeas corpus petition by submitting to federal court the prosecutor's false statements in the trial record, "akin to a fraud on the federal habeas courts," *id.* ¶¶ 92-97

(11)    "Maddix reasonably relied on the KCDA's misrepresentations to his detriment, and as a result, was unable to raise the *Brady/Giglio* issues in his federal habeas corpus petition." *Id.* ¶¶ 114-115;

---

[6] Under Second Circuit *Monell* jurisprudence, the actions of the KCDA during Maddix's habeas proceeding are attributable to City. *See Bellamy v. City of New York,* 914 F.3d 727, 759 (2d Cir. 2019) ("[W]e have been consistent in holding that the actions of county prosecutors in New York are generally controlled by municipal policymakers for purposes of *Monell*[.]")

(12)     Due solely to Defendants' misconduct, Maddix never had any opportunity to raise his *Brady/Giglio* claims in his federal habeas petition, *id.* ¶ 110

(13)     Prior to December 2024, Maddix was totally unaware of the *Brady/Giglio* material, *id.* ¶ 106; and

(14)     As a result of Defendants' acts and omissions, Maddix lost 19 years of his life in prison, was deprived of the ability to challenge his conviction and suffered a host of other damages, *id.* ¶ 117.

For purposes Fed.R.Civ.P. 12 (b)(6) purposes, these allegations must be accepted "as true" and "all reasonable inferences" drawn in Maddix's favor. *See Jeannot v. New York State*, 762 F.Supp.3d 217, 223 (E.D.N.Y. 2025) (Gonzalez, J.). At this early stage, these allegations are sufficient to preclude summary resolution of Maddix's entitlement to equitable estoppel. *See e.g. Tardd v. Brookhaven Nat. Lab'y*, 407 F.Supp.2d 404, 417 (E.D.N.Y. 2006) (Spatt, J.) ("Whether or not this defense should be available … in this case cannot be determined without a more fully developed record.")[7]

The same reasoning applies to Marriott who, as a co-conspirator of the City, is chargeable with this estoppel. *See e.g. State of N.Y. v Hendrickson Bros., Inc.*, 840 F.2d 1065, 1085 (2d Cir.

---

[7] *Accord Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 142 (2d Cir. 2025) ("We have emphasized that, because equitable [defenses] often raises fact-specific issues premature for resolution on a Rule 12(b)(6) motion, before a plaintiff can develop the factual record ... it is generally improper to dismiss a complaint as untimely.") (citation omitted); *Music Royalty Consulting, Inc. v. Reservoir Media Mgmt., Inc.*, 2019 WL 6335261, at *9 (S.D.N.Y. Oct. 31, 2019) (McMahon, J.) ("Since whether equitable estoppel applies in a given case is, ultimately, a question of fact, Defendant cannot obtain dismissal of the claims relating to these three statements") (citation omitted); *Tardd v. Brookhaven Nat. Lab'y*, 407 F. Supp. 2d 404, 417 (E.D.N.Y. 2006) (Spatt, J.) ("Whether or not [equitable estoppel] should be available … in this case cannot be determined without a more fully developed record."); *Bensky v. Indyke*, 743 F. Supp. 3d 586, 602 (S.D.N.Y. 2024) (Subramanian, J.) (equitable defenses such as equitable estoppel under New York law is "inherently fact-bound and are rarely fit for a motion to dismiss"); *Ayala v. Looks Great Servs., Inc.*, 2015 WL 4509133, at *5 (E.D.N.Y. July 23, 2015) (Spatt, J.) (the court finds "Plaintiffs' equitable estoppel affirmative defense to be plausible and declines at this time to find the Plaintiffs' FLSA claims to be time-barred."); *Schupak v. Florescue*,1993 WL 256572, at *5 (S.D.N.Y. July 8, 1993) (Keenan, J.) ("Plaintiff has alleged facts which, if true, do not preclude the possibility that equitable estoppel applies to this claim, and therefore the Court cannot dismiss this claim pursuant to defendant's 12(b)(6) motion.").

13

1988) (as co-conspirators, "defendants' affirmative acts of concealment were properly admissible against all of the defendants."); *O'Hara v. City of New York*, 2021 WL 4932287, at \*8 (E.D.N.Y. 2021) (Glasser, J.) ("[A]s a member of the conspiracy [Marriott] is, as a matter of law, liable for each act taken in furtherance of the conspiracy, even if [it] was not directly involved in the specific act. Thus, the fact that [Marriott] may not have been directly involved in the solicitation or use of the fabricated testimony ... is irrelevant to [its] liability for that act") (emphasis added).

### 3.    Defendants' Argument Opposing Equitable Estoppel Fail

Defendants ignore this body of case law and argue (1) Maddix failed to allege they made any misrepresentations to him, that they gained anything from doing so, and took "subsequent and specific actions" that were "separate from" the factual basis underlying his causes of action, and (2) mere silence or failure to disclose is insufficient.  City Memo. pp. 11-12; Marriott Memo. pp. 14-15.

First, under Maddix's civil conspiracy theory, he need not allege Marriott made any misrepresentation as long as he adequately alleges one of its co-conspirators did.  Those co-conspirators' misrepresentations are legally chargeable to Marriott.  *See O'Hara v. City of New York*, 2021 WL 4932287, at \*8.

Second, as previously stated, the requirement that a plaintiff allege "subsequent and specific actions" that were "separate from" the factual basis underlying his causes of action is a requirement of *New York* law.  As discussed above, *federal common law* governs equitable estoppel with respect to Defendants' forfeiture of the *Heck* defense.  Moreover, although not required under federal law, Maddix alleged Marriott profited with "substantial income," FAC ¶¶ 31, from their participation in the conspiracy.  *Id*. ¶ 9.

Finally, as previously stated, the City's claim that silence and failure to disclose are not enough is based on *New York* law, pertains to equitable tolling, not equitable estoppel, and, in any

14

event, is simply wrong when there is an ongoing duty to disclose. *See Indoafric Exports Priv. Co. v. Citibank, N.A.*, 696 F. App'x at 552 ("Where a defendant has a duty to speak, however, and fails to do so, a plaintiff's reliance on a defendant's silence can provide grounds for equitable tolling") (cleaned up), citing *Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 90 (2d Cir. 2013). Maddix's post-conviction claims are based on exactly that, Defendants' violation of his right to ongoing disclosure of *Brady/Giglio* material suppressed during his trial. And Defendants continuation of their suppression after Maddix was released from custody in 2012 can be said to be separate and distinct, for estoppel purposes, from their suppression while he was in prison and had access to habeas corpus.

D.    **Binding Second Circuit Case Law Recognizes The *Heck* Non-Custody Exception, And Merely Disagrees On Its Parameters**

The Second Circuit has consistently held *Heck* does not bar a § 1983 lawsuit by a former State criminal defendant who no longer is in custody and thus cannot raise his constitutional issue in a federal habeas corpus proceeding. FAC p. 20 n. 15; *Wiggins v. Mellia*, 2023 WL 6222303, at *2 (2d Cir. Sept. 26, 2023) ("There is … a narrow exception to the *Heck* bar that permits a § 1983 suit where federal habeas relief is unavailable."); *Teichmann v. New York*, 769 F.3d 821, 829-30 (2d Cir. 2014) (Calebrisi, J. Concurring) ("The law in this Circuit … holds … that *Heck* does not bar § 1983 claims when habeas is unavailable, at least so long as the unavailability was not intentionally caused by the plaintiff …. Indeed, it is only because of …seemingly binding Circuit cases that in *Poventud v. City of New York* [715 F.3d 57, 62 (2d Cir. 2013)] the panel majority (as opposed to the *en banc* majority) reached the *Heck*-habeas issue that led to *en banc* consideration in the first place.").[8]

---

[8] The City ignores all of the Second Circuit case law discussed above and instead relies on cases from other circuit courts that do not recognize the *Heck* non-custody exception. City Memo. pp. 8-10. But this Court, of course, is bound by Second Circuit case law. Moreover, it is worth noting

15

Numerous New York district judges, including E.D.N.Y. Judges Chen and Spatt, view this as a settled issue in the Second Circuit. *See e.g. John v. Lewis*, 2017 WL 1208428, at *7 (E.D.N.Y. Mar. 31, 2017) (Chen, J.) ("It is Second Circuit law that a plaintiff not in State custody, who thus does not have a habeas corpus remedy available, may bring a [section] 1983 action, even if a successful claim would 'necessarily imply the invalidity of his conviction.'"); *Chillemi v. Town of Southhampton*, 943 F.Supp.2d 365, 375 (E.D.N.Y. 2013) (Spatt, J.) (noting that "Section 1983 remains a possible remedy when there is no other federal avenue through which to bring a claim" and finding that *Heck* did not bar plaintiff's claims); *Brown v. Wagner*, 2014 WL 234821, at *5 (W.D.N.Y. Jan. 22, 2014) ("[T]here is no clearer or more recent precedential pronouncements than those that find '*Heck* acts only to bar § 1983 suits when the plaintiff has a habeas corpus remedy available to him.' The recent *en banc* decision in *Poventud* does not alter this; indeed, the court took pains to emphasize that it expressed no view on the question.")[9]

The only disagreement centers on the parameters of the non-custody exception. Our research indicates thirteen courts recognize the exception can be invoked any time federal *habeas* relief is unavailable.[10] In contrast, eight courts recognize the exception when: (1) *habeas* was

---

that many judges in the circuits that do not recognize the *Heck* non-custody exception have filed vehement dissents declaring their circuits were on the wrong side of the circuit divide. *See e.g. Wilson v. Midland County, Texas*, 116 F.4th 384, 421 (5th Cir. 2024) (Willett, J., dissenting) ("Our circuit has been on the wrong side of this fateful split for almost a quarter-century. Today, we squander the opportunity to take '[t]he better view' of *Heck* by holding that 'a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement.")

[9] *But see Chapman v. Fais*, 540 F.Supp.3d 304, 307 (E.D.N.Y. 2021) (Cogan, J.) ("The Second Circuit has not squarely determined whether *Heck* applies once a plaintiff is no longer in custody, and the issue remains controversial.")

[10] *Kates v. New York*, 2024 WL 3228051, at *2 (W.D.N.Y. June 27, 2024) (Larimer, J.); *Hurd v. City of New York*, 2019 WL 4696364, at *3 (E.D.N.Y. Sept. 26, 2019) (Matsumoto, J.); *Cox v. City of New Rochelle*, 2019 WL 3778735, at *3 n. 2 (S.D.N.Y. Aug. 12, 2019) (Karas, J.); *Penn v. New York State*, 2018 WL 10670473, at *1 (S.D.N.Y. July 17, 2018), n. 3 (Schofield, J.); *Morgan v. City of New York*, 2017 WL 6561161, at *4 n. 2 (E.D.N.Y. Dec. 22, 2017) (Johnson, J.); *Jeanty v. City of Utica*, 2017 WL 6408878, at *4 (N.D.N.Y. Aug. 18, 2017) (Sannes, J.); *John v. Lewis*,

16

never reasonably available to the plaintiff through no lack of diligence; or (2) the plaintiff was in custody too briefly to enable him to purse *habeas* relief.[11]

### 1.   Maddix Meets the Standard Under Both Lines Of Case Law

Under the first line of case law, because Maddix is no longer in custody or on parole he cannot avail himself to federal *habeas corpus* relief and is thus entitled to invoke the non-custody exception. *See Harvey v. People of the City of New York,* 435 F. Supp.2d 175, 177 (E.D.N.Y. 2006) (Gershon, J.) ("[T]he petitioner must be in custody pursuant to the challenged judgment" to obtain federal habeas corpus relief).

Under the second line of case law, Defendants' suppression of *Brady/Giglio* material, use of false arguments at trial, repeated misrepresentations to Maddix, and 30-year suppression and coverup rendered *habeas* review unavailable to him through fault of his own. Indeed, considering Defendants' repeated misrepresentations, "it would be an unreasonable application of federal law, as determined by the Supreme Court, to fault [Maddix] for not proceeding … on the assumption that the prosecutor is a liar." *Su v. Filion*, 335 F.3d 119, 128 (2d Cir. 2003).

---

2017 WL 1208428, at *7 (E.D.N.Y. Mar. 31, 2017) (Chen, J.); *Chillemi v. Town of Southhampton*, 943 F. Supp. 2d 365, 375 (E.D.N.Y. 2013) (Spatt, J.); *Hope v. City of New York*, 2010 WL 331678, at *2 (E.D.N.Y. Jan. 22, 2010) (Cogan, J.); *Houston v. City of New York*, 2013 WL 1310554, at *3 (E.D.N.Y. Mar. 28, 2013) (Dearie, J.); *Barmapov v. Barry*, 2001 WL 32371, at *4 (E.D.N.Y. Jan. 5, 2011) (Mauskopf, J.); *Hardy v. Fischer*, 701 F.Supp.2d 614, 620 n.6 (S.D.N.Y. 2010) (Stein, J.); *Davis v. Travis*, 07 CV 3047 (WHP), 2008 U.S. Dist. LEXIS 99801, *6 (S.D.N.Y. Dec. 3, 2008).

[11] *Wilson v. Celestin*, 2019 WL 2211062, at *2 (E.D.N.Y. May 22, 2019) (Broadie, J.); *Opperisano v. P.O. Jones*, 286 F.Supp 3d 450, 459-60 (E.D.N.Y. 2018) (Broadie, J.); *Webster v. Himmelbach*, 271 F.Supp.3d 458, 469 (W.D.N.Y. 2017) (Wolford, J.); *Artec Constr. and Dev. Corp. v. City of New York*, 2017 WL 5891817, at *5 (S.D.N.Y. Nov. 28, 2017) (Failla, J.); *Jean–Laurent v. Cornelius*, 2017 WL 933100, at *6 (S.D.N.Y. Mar. 8, 2017) (Koeltl, J.); *Sanders v. Williams*, 2015 WL 7963135 (S.D.N.Y. Nov. 10, 2015) (Dolinger, M.J.), *report and recommendation adopted,* 2015 WL 8073810 (S.D.N.Y. Dec. 4, 2015); *Sanders v. Williams*, 2015 WL 7963135, at *5 n. 2 (Crotty, J.); *Scott v. City of White Plains*, 2012 WL 1267873, at *3 (S.D.N.Y. Apr. 10, 2012) (Forrest, J.); *Shahzad v .County of Nassau*, 2016 WL 11540145, at *12 (E.D.N.Y. Mar. 31, 2016).

## 2.    The Defendants' Arguments For Denial Are Meritless

In arguing Maddix cannot invoke the *Heck* non-custody exception, Defendants cite three cases involving *pro se* plaintiffs who, aware of their constitutional claims from the moment of their arrests and throughout their incarceration, strategically forfeited state and federal remedies while in prison and then, after their release, sought invoke the *Heck* non-custody exception. *See Chapman v. Fais*, 540 F.Supp.3d 304 (E.D.N.Y. 2021) (Cogan, J.), *Leach v. City of New York*, 2022 WL 4468288 (E.D.N.Y. Sept. 26, 2022) (Hall, J), and *Palmenta v. Blank*, 2018 WL 4516676 (D. Conn. Sept. 20, 2018). Under those narrow circumstances, the *Chapman, Leach*, and *Palmenta* courts held the former prisoners could not invoke the *Heck* non-custody exception.

In contrast, Maddix was *unaware* of his constitutional claims throughout the entirety of his incarceration, and unable to pursue state or federal relief while incarcerated because prosecutors repeatedly deceived him with their false representations that no *Brady/Giglio* existed, and he "cannot be faulted for relying on that representation" *Banks v. Dretke*, 540 U.S. at 693. Further, unlike the *Chapman, Leach* and *Palmenta* plaintiffs, Maddix diligently pursued all available state and federal remedies while in prison but was precluded from raising his constitutional claims because of several government actors' suppression, misrepresentation and interference with his post-conviction efforts to overturn his conviction.

Not a single Second Circuit or district court case holds that such a diligent, victimized plaintiff could be barred from invoking the *Heck* non-custody exception because he did not first file a C.P.L. § 440.10 motion, which is not even required under § 1983. *See e.g. Jenkins v. Herbert*, 179 F.3d 19, 22 (2d Cir. 1999) ('[T]he Supreme Court has consistently held that courts should not impose an exhaustion requirement on § 1983."), *quoting Patsy v. Florida Bd. of Regents*, 457 U.S. 496, 502 (1982); *Leather v. Eyck*, 180 F.3d 420, 423 (2d Cir. 1999) (after noting that the plaintiff

18

had elected not to appeal his State conviction, went on to uphold his right to pursue money damages under § 1983); FAC p. 20 n. 16.

In fact, requiring a victimized plaintiff like Maddix to exhaust state court remedies in order to invoke the *Heck* non-custody exception effectively nullifies the very policy concern the exception was meant to address, and would serve to encourage continued prosecutorial misconduct. The whole point of the exception is to give a plaintiff, who through no fault of his own was unable to purse federal habeas corpus, *a federal forum* to raise his constitutional claims.[12] But if a victimized plaintiff is required to first file a C.P.L. § 440.10 motion, any later § 1983 action brought to challenge that conviction could be barred under *res judicata* and collateral estoppel principles.  In other words, deeming exhaustion of state remedies a prerequisite to diligent plaintiffs seeking to invoke the *Heck* non-custody exception would result in the very wrong the exception was recognized to prevent in the first place: depriving a plaintiff of federal review.

## POINT II

### MADDIX'S CLAIMS ARE TIMELY

Maddix respectfully incorporates the arguments set forth in Point I of his Memorandum in opposition to Marriott's Motion to Dismiss.  ECF No. 35 at pp. 8-15.

---

[12] *See e.g. Jenkins v. Haubert*, 179 F.3d 19, 26 (2d Cir. 1999) ("The concurring opinions in *Spencer* …. revealed that five justices hold the view that, where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be."); *Poventud v. City of New York*, 750 F.3d 121, 163 (2d Cir. 2014)(*en banc*)(Jacobs, J., dissenting) ("The motivating concern [on which the non-custody exception is based] was that circumstances beyond the control of a criminal defendant might deprive him of the opportunity to challenge a federal constitutional violation in federal court."); *Teichmann v New York*, 769 F.3d 821, 825 (2d Cir 2014) (Calebresi, J.) ("The animating rationale of this result was stated to be that "some federal remedy—either habeas corpus or § 1983—must be available" to redress constitutional violations.").

**POINT III**

**THE *ROOKER-FELDMAN* DOCTRINE
DOES NOT BAR MADDIX'S LAWSUIT**

The City argues Maddix's lawsuit is barred by the *Rooker-Feldman* doctrine, which precludes a district court from acting as an appellate court for state court judgments. City Memo. pp. 13-14. The City's one paragraph argument is meritless.

The *Rooker-Feldman* doctrine applies in a given case only if four requirements are met: (1) "the federal-court plaintiff must have lost in state court[;]" (2) "the plaintiff must complain of injuries caused by a state-court judgment[;]" (3) "the plaintiff must invite district court review and rejection of that judgment[;]" and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). The City fails to satisfy the second and third requirements.

First, *Rooker-Feldman* does not preclude lawsuits for injuries *preceding* a state court judgment. *See e.g. McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007) ("[G]iven that McKithen in federal court seeks redress for an injury that existed in its exact form prior to the state-court judgment, he cannot be complaining of an injury 'caused by' the state court. Rather, the preexisting injury in this case is properly understood to have been 'simply ratified, acquiesced in, or left unpunished by [the state court].'"); *Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021) ("In other words, plaintiffs are permitted to seek damages for injuries caused by a defendant's misconduct in procuring a state court judgment, but not for injuries directly caused by that judgment."); *Donovan v. Fowle*, 762 F. Supp.2d 186, 197–98 (D. Me. 2011) (rejecting *Rooker-Feldman* doctrine where prisoner challenged defendants' actions in denying him a hearing, relying on "false" testimony, and concealing evidence, not the state court judgment, and sought damages

20

for prosecutorial misconduct but did not seek to overturn conviction).[13]   Thus, to the extent Maddix

seeks recovery for damages inflicted *before* the state court judgment was entered —*i.e.*, between

July 20, 1994, when the *Brady/Giglio* material was suppressed, and August 21, 1994, when the

judgment was entered —*Rooker-Feldman* does not apply.[14]

Second, the *Rooker-Feldman* doctrine does not bar Maddix's post-conviction coverup

claims stemming from Defendants' misconduct *after the state judgment was entered.*[15]   *See e.g.*

*Deraffele v. City of New Rochelle,* 2016 WL 1274590, at *8–9 (S.D.N.Y. Mar. 30, 2016) (Karas.

J.) (allegations regarding right to petition subsequent to state court decision would be "*independent*

*of* [that] adverse state court decision"); *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d

1279, 1286 (11th Cir. 2018) ("[I]t's difficult to imagine a case where a federal court could be

barred by *Rooker–Feldman* from hearing a claim that arose only after the relevant state court

decision had been issued …. This temporal sequence forecloses the applicability of *Rooker–*

*Feldman* and removes our need to inquire into whether the claim presented is identical to or

inextricably intertwined with a previously decided state court claim. A claim about conduct

occurring after a state court decision cannot be either the same claim or one inextricably

intertwined with that state court decision and thus cannot be barred under *Rooker–Feldman*.")

---

[13] *Accord Bar-Levy v. Mitchell*, 2022 WL 14746399, at *4 (S.D.N.Y. Oct. 25, 2022) (Seibel, J.) ("[T]he injuries of which Plaintiff complains do not arise from the state-court judgment, but rather from his interaction with Officer Mitchell, and thus they existed in [their] exact form prior to the state-court judgment.  Indeed, the Complaint does not request overturning or modifying that state court judgment, but rather seeks compensatory and punitive damages for ... alleged constitutional violations that preceded the state-court decision. Plaintiff's claims are therefore not barred by the *Rooker-Feldman* doctrine.") (citations and quotes omitted); *Deraffele v. City of New Rochelle*, 2016 WL 1274590, at *8–9 (S.D.N.Y. Mar. 30, 2016) (Karas, J.) (same).

[14] These damages include, among others, Maddix being: (1) forced to stand trial; (2) remanded to Rikers, (3) incarcerated between July 20, 1994, and August 21, 1994; (4) subjected to emotional distress; and (4) subjected to the associated trauma with those events. These injuries and Defendants' misconduct causing them "preceded the judgment of conviction," which "merely ratified, acquiesced in or left [that] conduct unpunished." FAC ¶ 80.

[15] FAC at Third, Fourth, Sixth, Seventh and Eighth Causes of Action.

21

Ignoring these authorities, the City cites a 2011 case, *Read v. Zugibe*, 2011 WL 1642049, at *1 (S.D.N.Y. Apr. 5, 2011) (Pauley, J.), where the court ruled *Rooker-Feldman* barred a lawsuit where the plaintiff "invite[d] th[e] Court to review the alleged improprieties that led to that conviction." But *Read* is no longer good law. As demonstrated above, in 2021 the Second Circuit clarified that the *Rooker-Feldman* doctrine does not bar claims stemming from an opposing party's misconduct during the state court litigation that procured a state court judgment. *Dorce v. City of New York*, 2 F.4th at 104 ("[P]laintiffs are permitted to seek damages for injuries caused by a defendant's misconduct in procuring a state court judgment, but not for injuries directly caused by that judgment.")

The City also cites *Mitchell v. New York State*, 2023 WL 2734823 (E.D.N.Y. 2023) (Hall, J.), a case where the plaintiff "challenge[d] the validity of his state court criminal conviction" and "invite[d] the Court to review the judgment of conviction." *Id.* *4. But as demonstrated above, Maddix does not invite the court to review his conviction—the third requirement for *Rooker-Feldman* to apply—and the mere fact that his claims might implicitly deny the validity of his conviction does not trigger the *Rooker-Feldman* doctrine. *See Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85–86 (2d Cir.2005) (the "*Rooker–Feldman* doctrine does not deprive an inferior federal court of jurisdiction if the federal plaintiff raises an "independent claim," even if that claim "denies a legal conclusion that a state court has reached in a case to which he was a party.")[16]

---

[16] While *Heck* would normally bar such a claim, Maddix's case, as discussed above, falls within the non-custody exception to *Heck*. Similarly, Maddix's post-judgment coverup claims are separate and distinct from any claim concerning him being wrongfully convicted, and instead focus on the obstruction of his right to seek post-conviction relief. *See e.g. Jackson v. City of Cleveland*, 64 F.4th at 748 ("A post-conviction petition for relief is different in kind from a damages claim, even if they are derived from the same *Brady* violations.")

22

**POINT IV**

**BINDING SECOND CIRCUIT AUTHORITY HOLDS A PROSECUTOR'S ABSOLUTE IMMUNITY FROM INDIVIDUAL LIABILITY DOES *NOT* PRECLUDE A *MONELL* CLAIM**

In *Anilao v. Spota*, 27 F.4th 855 (2d Cir. 2022), the Second Circuit held a prosecutor's entitlement to absolute immunity does not bar a claim against a municipality:

> To the extent the County suggests that it cannot be liable for [prosecutors'] conduct during the judicial phase because of their absolute immunity, that argument is squarely foreclosed by our precedent. *See Pinaud v. County of Suffolk,* 52 F.3d 1139, 1153 (2d Cir. 1995) ("Since municipalities do not enjoy immunity from suit —either absolute or qualified—under § 1983, [the plaintiff's] malicious prosecution claim against the County of Suffolk is not barred by prosecutorial immunity." (quotation marks omitted)); *see also Askins v. Doe No. 1,* 727 F.3d 248, 254 (2d Cir. 2013) ("[T]he entitlement of the individual municipal actors to qualified immunity because at the time of their actions there was no clear law or precedent warning them that their conduct would violate federal law is also irrelevant to the liability of the municipality.").

*Id.* at n. 14 (cleaned up) (full citations added).

This is settled law. Indeed, the Second Circuit has sustained *Monell* claims based on constitutional violations arising from a prosecutor's *Brady* violation and improper summation, conduct clearly protected by a prosecutor's absolute immunity from individual liability. *See e.g. Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019) (*Brady* and summation misconduct) and *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992) (*Brady* and perjury).

This court has done the same. For example, in *Collins v. City of New York*, 923 F.Supp.2d 462, 472 (E.D.N.Y. 2013) (Block, J.), Judge Block held a trial prosecutor was entitled to absolute immunity from personal liability for his trial conduct and dismissed the claims against him. Yet

23

Judge Block went on to uphold the plaintiff's *Monell* claim based on constitutional violations caused by that immunized conduct.[17]

The City's misleading of the Court regarding this issue is outrageous. The City cites an unpublished Second Circuit decision, *Malik v. City of New York*, 841 F.App'x 281, 284–85 (2d Cir. 2021) and claims there the Second Circuit held a prosecutor's absolute barred a *Monell* claim. Nothing could be further from the truth. In *Malik* Judge Block, who authored the previously mentioned *Collins* decision, (1) dismissed federal claims against prosecutors on absolute immunity grounds; and (2) dismissed a related *Monell* claim *for pleading deficiencies. See Malik. v. City of New York*, 2020 WL 2747979, at *3 (E.D.N.Y. May 27, 2020) (Block, J.) (dismissing *Monell* claim because: (1) there was probable cause for plaintiff's arrest, thus evidencing the lack of constitutional violation; (2) plaintiff's case was dismissed before trial, and thus there was no *Brady* violation; and (3) a single act of coercion by an ADA as alleged by the plaintiff could not "be deemed City policy.")

On appeal, the Second Circuit simply referred to the district court's dismissal collectively, stating the district court dismissed the "federal claims on the ground that the individual City defendants were protected by absolute immunity, and, without any underlying constitutional violation, Malik had no grounds for a *Monell* claim[,]" *Malik v. City of New York*, 841 F.App'x 281, 284 (2d Cir. 2021), and affirmed on that basis. In other words, the Second Circuit *never* held

---

[17] This makes perfect sense. Absolute immunity simply prevents a prosecutor from being sued *individually* for violating a plaintiff's rights. It does not equate with a legal finding that the violation did not occur. Sustaining a prosecutor's absolute immunity simply means that for *individual liability* purposes, the prosecutor's conducts falls under his role as an advocate and the prosecutor is thus protected by absolute immunity from a civil lawsuit in his personal capacity. The prosecutor's conduct may nevertheless still be attributable to a municipality for *Monell* purposes. *See e.g. Bellamy v. City of New York*, 914 F.3d 727, 760 (2d Cir. 2019) ("In contrast to the immunity inquiry, *Monell* addresses not *whether* certain functions can open *individuals* to liability, but simply *which governmental entity* (the state or the municipality) is responsible for a given function.").

the prosecutor's entitlement to immunity required dismissal of the *Monell* claim or precluded a *Monell* claim based on that same conduct, and issue that was not even before the Second Circuit.

## CONCLUSION

Maddix, having navigated the hurdles applicable in § 1983 actions, is entitled to his day in court. The City's motion to dismiss should be denied in its entirety.

Dated:   October 1, 2025
         New York, New York

Andrew M. Stengel
The Law Firm of Andrew M. Stengel, P.C.
11 Broadway Suite 715
New York, New York 10004
Tel: 212-634-9222
Fax: 212-634-9223
Email: andrew@stengellaw.com

25