UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————X
                                     :

WILLIE MADDIX,                    :

                                     :

                   Plaintiff,     :        25 CV 1909 (HG)

                                     :

          -against-            :

                                     :

THE CITY OF NEW YORK, MARRIOTT   :
HOTEL SERVICES, INC., and MARRIOTT  :
INTERNATIONAL, INC.,            :

                                   :

                 Defendants.  :

                                   :
———————————————————————X

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT MARRIOTT INTERNATIONAL, INC. &
MARRIOTT HOTEL SERVICES, INC.'S
FED.R.CIV.P.  12(b)(6) MOTION**

---

Andrew M. Stengel
The Law Firm of Andrew M. Stengel, P.C.
11 Broadway Suite 715
New York, New York 10004
Tel: 212-634-9222
Fax: 212-634-9223
Email: andrew@stengellaw.com

*Attorney For Plaintiff Willie Maddix*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ………………………………………………………..    1

SUMMARY OF ARGUMENT …………………………………………………….    2

STATEMENT OF FACTS …………………………………………………………..    2

    A.    Defendants' Pre-Conviction Conduct …………………………………    2

    B.    Defendant's Post-Conviction Conduct: The 30-Year Coverup ………………    7

POINT I

    DEFENDANTS' AFFIRMATIVE MISCONDUCT EQUITABLY ESTOP THEM
    FROM RAISING THE *HECK v. HUMPRHEY,* 512 U.S. 477 (1994), DEFENSE
    AND, IN ANY EVENT, *HECK* DOES NOT BAR MADDIX'S LAWSUIT
    BECAUSE HE IS NOT IN CUSTODY …………………………………………..    8

POINT II

    MADDIX'S CLAIMS ARE TIMELY …………………………………………….    8

    A.    Defendants Are Equitably Estopped Under *Federal Law* From
        Challenging The Accrual Date Of Maddix's Claims ………………………...    8

    B.    Under The Federal Accrual And Diligence-Discovery Rules,
        Maddix's Claims Did Not Accrue Until December 2024 When
        He Discovered His Constitutional Injuries …………………….………    9

    C.    Assuming *Arguendo* That The Statute Of Limitations
        Began To Run When Maddix Was Released From Prison In 2012,
        He Nevertheless Plausibly Pleads Defendants Are Equitably
        Estopped, Under Both Federal And New York Law, From Raising
        The Statute Of Limitation Defense ………………………………….……    12

    D.    Defendant's Arguments To The Contrary Are Meritless …………….……    14

POINT III

    MADDIX STATES A VALID CIVIL CONSPIRACY CLAIM
    AGAINST MARRIOTT ………………………………………………………...    15

A.    Marriott Policymakers' Actions Render Marriott Liable For Civil Conspiracy    15

B.    Maddix Plausibly Pleads A Civil Conspiracy Claim Against Marriott ……..    17

C.    Marriott's Arguments To The Contrary Are Meritless ………………………    21

POINT IV

MARRIOTT ENGAGED IN STATE ACTION ……………………………………. 24

POINT V

MADDIX ADEQUATELY PLEADS VIOLATIONS OF HIS
CONSTITUTIONAL RIGHTS ……………………………………………………….. 24

POINT VI

MARRIOTT INTERNATIONAL, INC.'S GROUP PLEADING
ARGUMENT IS MERITLESS ………………………………………………………. 24

CONCLUSION ………………………………………………………………………….. 25

## TABLE OF AUTHORITIES

**Cases**                                                                                                                          **Pages**

*Amnesty Am. v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004) ……………………………16

*Barnes v. City of New York*, 68 F.4th 123 (2d Cir. 2023) …………………………………………7

*Brady v. Maryland,* 373 U.S. 83 (1963) …………………………………………………. *Passim*

*Braithwaite v. Suffolk Cnty. New York*, 2022 WL 16837341 (E.D.N.Y. Nov. 9, 2022) (Seybert, J.) …………………………………………………………………………………….6

*Brown v. Wainwright*, 785 F.2d 1457 (11th Cir. 1986) …………………………………………4

*Butler v. Hesch*, 286 F. Supp.3d 337 (N.D.N.Y. 2018) (D'Agostino, J.) ………………………..18

*Carmody v. City of N.Y.*, 2006 WL 1283125 (S.D.N.Y. May 11, 2006) (Baer, J.) ………………17

*Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002) …………………………………17

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) ……………………………………………16

*Collins v. Davirro*, 160 A.D.3d 1343 (4th Dep't 2018) …………………………………………13

*Corsini v. City of New York*, 2023 WL 4420113 (E.D.N.Y. July 10, 2023) (Gonzalez, J) ………11

*Dennis v. Sparks*, 449 U.S. 24 (1980) ……………………………………………………………24

*Fossil Grp., Inc. v. Angel Seller LLC*, 2022 WL 9447259 (E.D.N.Y. Oct. 14, 2022) (Gonzalez, J.) …………………………………………………………………………...…6

*Fisk v. Letterman*, 401 F.Supp.2d 362 (S.D.N.Y. 2005) (Marrero, J.) ……………………………17

*Francois v Metro-N. Commuter R.R. Co.*, 107 F4th 67 (2d Cir. 2024) …………………………20

*Freeman v. HSBC Holdings PLC*, 57 F.4th 66 (2d Cir. 2023) …………………………………..23

*Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84 (2d Cir. 2013) ………………..13

*Giglio v. United States*, 405 U.S. 150 (1972) ……………………………………….. *passim*

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) …………………………………19*, 22, 23*

*Halstead v. City of New York*, 2015 WL 1506133 (E.D.N.Y. Mar. 31, 2015) (Broadie, J.) …………………………………………………………………………...…10

**Cases**                                                                                                 **Pages**

*Harris v. Tioga County*, 663 F Supp.3d 212 (N.D.N.Y. 2023) (Hurd, J.) ……………………….. 9

*Haughey v. County of Putnam,* 2020 WL 1503513 (S.D.N.Y. Mar. 29, 2020) (Karas, J)   5, 16, 17

*Haughey v. County of Putnam*, 2022 WL 4468066 (S.D.N.Y. Sept. 26, 2022) (Karas, J.) …..… 16

*Heck v. Humphrey*, 512 U.S. 477 (1994) …………………………………………… *passim*

*Indoafric Exports Priv. Co. v. Citibank, N.A.*, 696 F.App'x 551 (2d Cir. 2017) ……………..… 13

*Johnson v. Nyack Hosp.*, 86 F.3d 8 (2d Cir. 1996) …………………………………………….12

*Keating v. Carey*, 706 F.2d 377 (2d Cir. 1983) …………………………………………… 10

*Kronisch v. United States,* 150 F.3d 112 (2d Cir.1988) ……………………………….…10

*Kyles v. Whitley*, 514 U.S. 419 (1995) …………………………………………………….4

*LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412 (2d Cir. 1995)
*Lockwood v. Town of Hempstead*, 2017 WL 3769253 (E.D.N.Y. Aug. 28, 2017)
 (Feuerstein, J.) …………………………………………………………………………..16

*Matter of Atlantic States Legal Found., Inc. v. New York State Dept. of
Envtl. Conservation,* 119 A.D.3d 1172 (3d Dep't 2014) …………………………..……………13

*Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp.2d 778 (S.D.N.Y. 2008) (Karas, J) ……………18

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)  …………………*passim*

*Ocasio v. City of Canandaigua*, 344 F.R.D. 158 (W.D.N.Y. 2022) (Payson, M.J.) …………….12

*O'Hara v. City of New York*, 2021 WL 4932287 (E.D.N.Y. 2021) (Glasser, J.) ……….…2, 20, 22

*Opperisano v. P.O. Jones*, 286 F. Supp.3d 450 (E.D.N.Y. 2018) (Broadie, J.) ………………..9, 15

*Patterson v. Burge*, 328 F. Supp.2d 878 (N.D. Ill. 2004) …………………………………..…24

*Pearl v. City of Long Beach*, 296 F.3d 76 (2d Cir. 2002) …………………………..…. 10, 12

*Peacock v. City of Rochester*, 2016 WL 2347448 (W.D.N.Y. May 4, 2016)
(Telesca, J) ……………………………………………………………………………… 20

*People v. Arocho*, 85 Misc.2d 116 (Sup. Ct. New York Co. 1976) …………………………... 4

**Cases**                                                                                                    **Pages**

*People v. Steven Ruiz, et al.,* Kings Co. Ind. No. 12848/94 (April 20, 1995, Order) (Kreindler, J.) ……………………………………………………………………….… 4

*People v. Russ,* 79 N.Y.2d 173 (1992) …………………………………………………….4

*People v. Williams*, 7 N.Y.3d 15 (2006) ………………………………………..……4

*Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014) (*en banc*) ………………………….. 9

*Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995) ………………………………………10

*Pipitone v. City of New York*, 57 F.Supp.3d 173 (E.D.N.Y. 2014) (Dearie, J.) ……………...10, 11

*Proffitt v. Ridgway*, 279 F.3d 503 (7th Cir. 2002) ……………………………………………..... 19

*Receivable Collection Servs., LLC v. Nassau County,* 227 A.D.3d 834 (2d Dep't 2024) ……….13

*Reed v. Goertz*, 598 U.S. 230 (2023) …………………………………………………………9

*Rieves v. Town of Smyrna, Tennessee*, 67 F.4th 856 (6th Cir. 2023) ………………………..17, 18

*Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008) …………………………………………16

*Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124 (2d Cir. 2025) …………………………...10

*Siegel v. La Guardia Cmty. College,* 2006 WL 1084780 (E.D.N.Y. Apr. 25, 2006) (Townes, J.) …………………………………………………………………………...10

*Singleton v. City of New York,* 632 F.2d 185 (2d Cir.1980) ……………………………………..10

*Smith v. City of Chicago Heights*, 951 F.2d 834 (7th Cir. 1992) ………………………………..12

*Smith v. Kemp*, 715 F.2d 1459 (11th Cir. 1983) ………………………………………………..4

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F.Supp.3d 401, 425 (S.D.N.Y. 2014) (Karas, J.) ……………………………………...25

*Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406 (2d Cir. 2008) ………………………..6

*Stalter v. County of Orange*, 2016 WL 8711397 (S.D.N.Y. Aug. 5, 2016) (Roman, J.) …………5

*Steidl v. Fermon*, 494 F.3d 623 (7th Cir. 2007) …………………………………………..1, 24

*Su v. Filion*, 335 F.3d 119 (2d Cir. 2003) ……………………………………………..11

**Cases**                                                            **Pages**

*Thompson v. Metro. Life Ins. Co.*, 149 F.Supp.2d 38 (S.D.N.Y. 2001) (Baer, J.) ………………12

*United States v. Crocker*, 788 F.2d 802 (1st Cir. 1986) ……………………………………………21

*United States v. Gleason*, 616 F.2d 2 (2d Cir 1979) ……………………………………………..19

*United States v. Khalupsky*, 5 F.4th 279 (2d Cir. 2021) ………………………………………….21

*United States v. Payne*, 63 F.3d 1200 (2d Cir. 1995) ……………………………………………14

*United States v Rosario*, 2017 WL 3841867 (S.D.N.Y. Sept. 1, 2017) ……………………...21, 22

*United States v. Salameh*, 152 F.3d 88 (2d Cir 1998) …………………………………..2, 20, 22

*United States v. Ward*, 505 Fed.Appx 18 (2d Cir. 2012) …………………………………..…20

*Veal v. Geraci,* 23 F.3d 722 (2d Cir.1994) ……………………………………………………10

*Whisenant v. City of Haltom City*, 106 Fed. Appx 915 (5th Cir. 2004) …………………………16

*Wright v. Orleans Cty.*, 2015 WL 5316410 (W.D.N.Y. Sept. 10, 2015), report and recommendation adopted, 2015 WL 13660397 (W.D.N.Y. Oct. 27, 2015) ……………………. 24

*Young v. Suffolk County*, 705 F.Supp.2d 183 (E.D.N.Y. 2010) (Brodie, J.) ……………………24

**Statutes**

42 U.S.C. § 1983 ………………………………………………………………………… *passim*

CPL § 440.10 ………………………………………………………………………………..7

CPL § 330.30 ………………………………………………………………………………..7

**Federal Rules**

Fed.R.Civ.P. 12 (b)(6) ……………………………………………………………... *passim*

**Other**

5 Wright & Miller, Federal Practice & Procedure § 1366 & n. 33 (3d ed. 2004) …………………..6

**Other**                                                                                      **Pages**

Wright & Miller, § 4519, Determining the Content of Federal Common Law—
Statutes of Limitations Federal Practice and Procedure ……………………………………….12

97 N.Y. Jur.2d Summary Judgment, Etc. § 175 ……………………………………………….13

## PRELIMINARY STATEMENT

Plaintiff Willie Maddix submits this Memorandum of Law in opposition to Defendants Marriott International, Inc. and Marriott Hotel Services, Inc.'s (collectively "Marriott" or "the Marriott Defendants") September 2, 2025, Fed.R.Civ.P. 12 (b)(6) motion to dismiss.

Willie Maddix lost 19 years of his life in prison due to egregious prosecutorial misconduct by the Kings County District Attorney's Office ("KCDA") under the administration of disgraced former District Attorney Charles J. Hynes ("DA Hynes"). KCDA prosecutors suppressed *Brady/Giglio* material during Maddix's 1994 trial, and then covered up that suppression for nearly three decades.

Maddix's First Amended Complaint ("FAC"), ECF Doc. No. 5, pleads violations of his fair trial rights (First Cause of Action), a due process claim based on Defendants' post-conviction coverup (Third Cause of Action) and *Monell* and civil conspiracy claims (Fourth, Fifth, Sixth and Seventh Causes of Action). The FAC also raises a pendent New York State Constitutional claim solely against Marriott (Eighth Cause of Action).

Unbeknownst to Maddix, the prosecutor's star witness at Maddix's trial refused to testify. As a result, KCDA prosecutors and investigators illegally imprisoned the witness in a Queens hotel room against his will and held him *incommunicado* until he was agreed to testify. The trial prosecutor then falsely portrayed the witness to the jury as a Good Samaritan with "no motivation to lie" with "nothing at stake," even though the witness's release from custody was contingent on his testimony. Maddix alleges this suppression and use of false testimony violated his right to a fair trial, and later, his post-conviction right to challenge his conviction and to ongoing disclosure of *Brady/Giglio* material suppressed during at trial. *See Steidl v. Fermon*, 494 F.3d 623, 630 (7th Cir. 2007) ("For evidence known to the state at the time of the trial, the duty to disclose extends throughout the legal proceedings that may affect either guilt or punishment, including post-

1

conviction proceedings. Put differently, the taint on the trial that took place continues throughout the proceedings, and thus the duty to disclose and allow correction of that taint continues.")

Maddix alleges the Marriott Defendants are liable for this conduct by virtue of a conspiracy its local policymakers, hotel managers, entered in with KCDA staff to illegally imprison witnesses, including the star witness against Maddix, and cover-up that misconduct. After Maddix was convicted of weapon charges based on the KCDA's false trial presentation, KCDA employees, in accordance with that conspiracy, covered up their misconduct and suppressed *Brady/Giglio* material for nearly 30 years, repeatedly deceiving Maddix, his attorneys and every court that reviewed his conviction.

Maddix contends Marriott is liable for this coverup as it was a reasonably foreseeable consequence, indeed one of the goals, of the civil conspiracy Marriott joined. *See e.g. United States v. Salameh*, 152 F.3d 88, 151 (2d Cir 1998) ("[A] conspirator can be held responsible for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if [the conspirator] did not himself participate in the substantive crimes."); *O'Hara v. City of New York*, 2021 WL 4932287, at *8 (E.D.N.Y. 2021) (Glasser, J.) (same). Marriott now moves to dismiss.

## SUMMARY OF ARGUMENT

Maddix respectfully incorporates the summary of argument set forth in his Memorandum of Law opposing the City of New York's (the "City") Motion to Dismiss. ECF No. 34 at pp. 1-7.

## STATEMENT OF FACTS

### A.    Defendants' Pre-Conviction Conduct

On July 20, 1993, Jose Felix was killed and Larry Blutcher was shot during a shootout in front of 657 Vermont Avenue in Brooklyn. FAC ¶ 20. Maddix was arrested six weeks after the shooting, on August 30, 1993. Following his arrest, the KCDA assigned the case to Assistant

2

District Attorney ("ADA") Kyle Reeves, a prosecutor with a horrendous history of prosecutorial misconduct. FAC ¶¶ 21-22. Reeves was required, under the U.S. Constitution and laws of the State of New York, to disclose to the defense all evidence and information known to the KCDA that was favorable to the defense, and Maddix was legally entitled to rely on the truth of the prosecutor's representations. *Id*. ¶¶ 60, 68.

At Maddix's trial, DeJesus was the star witness. *Id.* at 70-71. The prosecutor portrayed DeJesus as a Good Samaritan with no undisclosed motive for testifying. *Id.* at ¶ 72. In summation, Reeves argued DeJesus was credible and that he had no motive for testifying: "[He] came in here and told you what he saw. He's got no motivation to lie. He's got nothing at stake." *Id.* at ¶ 74. The jury, unaware of the *Brady/Giglio* material, convicted Maddix of Criminal Possession of a Weapon in the Second Degree based in part on DeJesus's testimony. *Id.* at ¶ 78.

It turns out the prosecution's entire trial presentation regarding DeJesus was false. Thirty years after Maddix was convicted, and 12 years after he was released from prison, he discovered that unbeknownst to him or his attorney during trial:

(1)     DeJesus testified against Maddix only after the KCDA unlawfully imprisoned him at the LaGuardia Marriott hotel, for over two days, without any legal authority to do so, with the door shackled, under armed guard by two detectives and with no access to a telephone, visitors or the attorney he was entitled to under New York State law;

(2)     After DeJesus was unlawfully imprisoned and deprived of his right to counsel, the trial prosecutor went to the hotel and interrogated DeJesus, and conveyed that he would be released from custody after he cooperated, a promise the prosecutor fulfilled after DeJesus testified at Maddix's trial; and

(3)     The prosecutor orchestrated the illegal imprisonment of DeJesus by obtaining a material witness warrant under false pretenses, and then secretly abusing the warrant. The prosecutor obtained the material witness warrant by swearing to the court that DeJesus would be produced to court forthrightly upon his arrest for a material witness hearing. Yet upon arresting DeJesus, rather than produce him to court, the prosecutor circumvented the entire court process, kidnapped and incarcerated DeJesus in a hotel, depriving him of an arraignment, appointment of counsel and the right for the court to set bail.

3

FAC ¶¶ 50-80.

Additionally, the prosecutor's summation argument that DeJesus "came in here and told you what he saw. He's got no motivation to lie. He's got nothing at stake[,]" was blatantly false.

The FAC asserts these undisclosed facts constituted *Brady/Giglio* material under four theories:

(1)    Demonstrated the falsity of the prosecutor's "Good Samaritan" narrative at Maddix's trial, and his claim that DeJesus had no motivation for testifying. *See e.g. Smith v. Kemp*, 715 F.2d 1459, 1467 (11th Cir. 1983) ("The thrust of *Giglio* and its progeny has been to ensure that the jury know the facts that might    motivate a witness in giving testimony, and that the prosecutor not fraudulently conceal such facts from the jury.");

(2)    Provided Maddix with the basis to preclude DeJesus's trial testimony on New York legal coercion and abuse of process grounds. *See People v. Russ,* 79 N.Y.2d 173, 177-78 (1992) (excluding "legally coerced" testimony); *People v. Steven Ruiz, et al.,* Kings Co. Ind. No. 12848/94 (April 20, 1995, Order) (Kreindler, J.) (precluding DA from using statement obtained by an illegal office subpoena); *People v. Arocho*, 85 Misc.2d 116, 118 (Sup. Ct. New York Co. 1976) (suppressing statements taken during illegal office subpoena interview); *People v. Williams*, 7 N.Y.3d 15, 19 (2006) ("[D]efendant was entitled to disclosure of any evidence of a material nature [favorable to the defense] which if disclosed could affect the ultimate decision on a suppression motion");

(3)    Demonstrated DeJesus had an undisclosed inducement and incentive for testifying. *See Brown v. Wainwright*, 785 F.2d 1457, 1465 (11th Cir. 1986) ("The constitutional concerns address the realities of what might induce a witness to testify falsely, and the jury is entitled to consider those realities in assessing credibility."); and

(4)    Enabled Maddix to attack the integrity of the prosecution's case. See *Kyles v. Whitley*, 514 U.S. 419 (1995) (*Brady* violation where undisclosed evidence could have been used to impeach the thoroughness and good faith of law enforcement's investigation or the investigators themselves).

FAC ¶ 62.

Neither the prosecutor nor anyone else from the KCDA disclosed the above facts to Maddix or his trial attorney, which would have been utilized as impeachment material on cross examination. *Id.* at ¶ 74. Nor did the jury ever have a chance to consider the *Brady/Giglio* material

4

when deciding whether to credit DeJesus' testimony. *Id.* at ¶ 76. On August 22, 1994, Maddix was convicted of weapon possession and sentenced to 5 to 15 years in prison. *Id.* at ¶ 79.

Marriott International, Inc. owned and operated the Marriott LaGuardia Hotel in Queens where DeJesus was imprisoned, FAC ¶¶ 16, 18, 297-316, and was the corporate parent of Marriott Hotel Services Inc. which managed the day-to-day operations of the hotel. *Id.* ¶ 17. The FAC alleges both Marriott entities "wholly delegated final policymaking authority to several local managers of the Marriott LaGuardia Hotel[,]" those mangers were "autonomous and their decisions on the assistance provided and the hotel rooms they rented to the KCDA went unreviewed and were never overruled[,]" and "[t]hrough those managers, Marriott implemented a plainly illegal, unconstitutional, improper and deliberately indifferent policy, custom, or practice "to knowingly facilitate … the KCDA's illegal imprisonment of witnesses as prisoners and to serve as one of Hynes's *de facto* black sites (the "Marriott policy")." FAC ¶¶ 18, 296-298.[1]

Marriott, through those local managers, knowingly took part in the KCDA's practice of unlawfully imprisoning recalcitrant witnesses. Specifically, the FAC alleges the local mangers:

(1)   "[H]ad … actual … notice of the nature of the witness's involuntary detentions";

(2)   Observed KCDA detective-investigators transporting prisoners in and out of the hotel rooms in handcuffs and leg shackles;

(3)   Were aware of damage to the hotel room doors caused by the shackles detective-investigators would place on the doors to prevent the witnesses from escaping;

---

[1] As discussed below, "where a policymaker wholly delegates certain policy powers to a subordinate, the subordinate may herself qualify as a policymaker, thus subjecting the municipality to liability." *Haughey v. County of Putnam,* 2020 WL 1503513, at *11 (S.D.N.Y. Mar. 29, 2020) (Karas, J.). General allegations of delegation suffice. *See Stalter v. County of Orange*, 2016 WL 8711397, at *11 (S.D.N.Y. Aug. 5, 2016) (Roman, J.) ("[A]t this stage of the litigation," plaintiff's allegation that Sheriff delegated all final disciplinary authority to defendant and defendant's actions thus constitute municipal policy, "sufficiently alleges *Monell* liability on the basis that Defendant Jones was delegated final policymaking authority.")

5

(4)     Were aware of NYPD responses to the hotel due to volatile prisoner behavior;

(5)     Communicated with the KCDA's Witness Relocation Coordinator concerning the witness custodies;

(6)     "[T]ook affirmative steps to ensure that the witnesses, in accordance with the KCDA's wishes, had no way to complain or alert anyone of their confinement and that the KCDA's conduct would remain secret[,]" by, for example, ensuring the witnesses could not contact anyone to challenge their confinement;

(7)     Instead of using a witnesses' legal name, assigned witnesses "custody" numbers, used those custody numbers to track the witness's hotel room, and referenced the custody numbers in billings to the KCDA;

(8)     "[I]nstructed employees to keep the practice confidential and rewarded those who did with recognition, good performance evaluations, promotions and raises"; and

(9)     Reported to the KCDA all unusual incidents involving the witnesses.

FAC ¶¶ 300-312.

Thus, Marriott did not merely operate a hotel for the purpose of renting rooms, but rather knowingly participated in these illegal confinements. Marriott's facilitation of the KCDA's illegal imprisonments was extensive. A KCDA "Hotel Custody Log," attached to this memorandum as Exhibit A, documents six other occasions in just a one-month period before Maddix's trial when Marriott served as a KCDA black site:[2]

---

[2] Critically, "matters judicially noticed by the District Court are *not* considered matters outside the pleadings." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008) (emphasis added), citing 5 Wright & Miller, Federal Practice & Procedure § 1366 & n. 33 (3d ed. 2004); *Fossil Grp., Inc. v. Angel Seller LLC*, 2022 WL 9447259, at *2 (E.D.N.Y. Oct. 14, 2022) (Gonzalez, J.). The Court may take judicial notice of this log, which was filed in this Court in *Quezada v. Smith*, 08 CV 5088 (KAM)(E.D.N.Y.), ECF Doc. No. 26-1. *Braithwaite v. Suffolk Cnty. New York*, 2022 WL 16837341, at *12 n. 11 (E.D.N.Y. Nov. 9, 2022) (Seybert, J.) (court may take judicial notice of its own records).

| HOTEL | CUSTODY # | IND. | BUREAU | DATE IN | DATE OUT |
|---|---|---|---|---|---|
| LaGuardia Marriott | 1126 | 6326/92 | Orange ADA Bruen | 1/18/93 | 1/20/93 |
| LaGuardia Marriott | 1129 | 1545/92 | [Illegible] | [Illegible] | 1/25/93 |
| LaGuardia Marriott | 1136 | VOID | Trial Cadre Plazner | [Illegible] | _____ |
| LaGuardia Marriott | 1139 | 7312/92 | Paiser Red | 2/11/93 | 2/17/93 |
| LaGuardia Marriott | 1141 | 14314/91 | Blue Liaison | 2/16/93 | [Illegible] |
| LaGuardia Marriott | 1144 | 7812/92 | Green Omalley | 2/18/93 | [Illegible] |

### B.    Defendant's Post-Conviction Conduct: The 30-Year Coverup

The KCDA had a continuing obligation to disclose the *Brady*/*Giglio* material suppressed during Maddix's trial.  p. 2, *supra*.  Yet rather than disclose that *Brady*/*Giglio* material, the KCDA suppressed it throughout Maddix's entire 19-year incarceration.  *Id.* at ¶¶ 81-82.  Specifically, in response to Maddix's CPL § 330.10 motion, direct appeal and CPL § 440.10 motion, KCDA attorneys repeatedly reiterated the false or misleading arguments at trial, represented DeJesus' testimony was credible, and suppressed the *Brady*/*Giglio* material.  *Id.* ¶¶ 83-91.  Likewise, during Maddix's 1999 federal habeas proceeding, KCDA failed to disclose the *Brady*/*Giglio* material, precluding Maddix from moving to stay his habeas petition, amend it, or seek leave to file a second or successive petition.  *Id.* at ¶ 95.  As result, the district court denied Maddix's habeas petition, *id.* at ¶ 97, and following that denial, Maddix served an additional 12 years in prison.  On August 29, 2012, Maddix was finally released from prison and later discharged from parole supervision.  *Id.* at ¶¶ 99-100

After Maddix was released in 2012 and until December 2024, KCDA attorneys continued to conceal the *Brady/Giglio* material suppressed from Maddix.  *Id.* at ¶¶ 101-102. It was not until

7

December 18, 2024, that Maddix learned of that material, when a researcher working on an unrelated wrongful conviction case alerted Maddix to it. *Id.* at ¶ 103. Prior to December 18, 2024, Maddix did not know or have any reason to know of the *Brady/Giglio* violations in his case, or the KCDA's black sites. *Id.* at ¶¶ 104-106. Defendants' actions and omissions totally precluded Maddix from discovering and raising the *Brady/Giglio* issues in his *habeas* petition. *Id.* at ¶ 108-110. "The City, through the KCDA and conduct attributable to the City's co-conspirators Marriott, concealed facts it was constitutionally required to disclose and made numerous misrepresentations of fact to Maddix," which it had reason to believe Maddix would rely on. *Id.* at ¶¶ 111-115.

## POINT I

**DEFENDANTS' AFFIRMATIVE MISCONDUCT EQUITABLY ESTOP THEM FROM RAISING THE *HECK v. HUMPRHEY*, 512 U.S. 477 (1994), DEFENSE AND, IN ANY EVENT, *HECK* DOES NOT BAR MADDIX'S LAWSUIT BECAUSE HE IS NO LONGER IN CUSTODY**

Maddix respectfully incorporates here the arguments set forth in Point I of his Memorandum in opposition to the City's Motion to Dismiss. ECF 34 at pp. 7-19.

## POINT II

## MADDIX'S CLAIMS ARE TIMELY

A.   **Defendants Are Equitably Estopped Under *Federal Law* From Challenging The Accrual Date Of Maddix's Claims**

As discussed in Point I, Maddix's allegations concerning Defendants' pre and post-conviction conduct, factual misrepresentations, and 30-year coverup plausibly plead an equitable estoppel under federal law with respect to Defendants' invocation of the *Heck* defense. *See* ECF No. 34, Maddix Opp. to City Defendants' Motion to Dismiss, pp. 10-14. For those same reasons, Marriott is equitably estopped from challenging the accrual date of Maddix's federal claims, and the fact-specific issues presented by Maddix's invocation of equitable estoppel are premature for resolution on a Rule 12(b)(6) motion.

**B.**    **Under The Federal Accrual And Diligence-Discovery Rules, Maddix's Claims Did Not Accrue Until December 2024 When He Discovered His Constitutional Injuries**

While state law determines the duration of a § 1983 statute of limitation, *federal law* determines when that statute of limitations begins to run. *Reed v. Goertz*, 598 U.S. 230, 235, (2023) (the question of when the "limitations period began to run" for Section 1983 procedural due process claim was "one of federal law"); *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir 2023) (same).

Normally, where the *Heck* rule applies, the statute of limitations begins to run from the date a plaintiff's conviction is vacated. *See e.g. Poventud v. City of New York*, 750 F.3d 121, 130 (2014) ("[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."), *citing Heck* at 489-90. However, the Supreme Court established that rule with respect *to inmates who had access to federal habeas corpus* to challenge their convictions, and whose vacatur of their convictions was a prerequsite to bringing a § 1983 action. The Court never considered when the time period would accrue for non-custodial individuals who were not subject to *Heck.*[3]

When the *Heck* rule does not apply, the accrual of such a claim is logically subject to the general rule applicable in § 1983 action. Generally speaking, a § 1983 claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Harris v. Tioga County*, 663 F Supp.3d 212, 234 (N.D.N.Y. 2023) (Hurd, J.). Thus, "[t]he crucial time for

---

[3] As discussed below, *Opperisano v. P.O. Jones*, 286 F. Supp.3d 450, 464 (E.D.N.Y. 2018) (Hall, J.) held the statute of limitations accrues for *Heck* non-custody exception purposes when *habeas* is no longer available, but *assumed the non-custodial plaintiff w*as *fully aware* of the factual basis for his § 1983 *when he was released from custody*, and thus able to pursue a § 1983 action within a one-year of his release. *Opperisano* never considered how the diligence-discovery rule would impact its analysis, or when the statute would run for a victimized plaintiff such as Maddix who was totally unaware of his constitutional injuries at the time he was released from prison.

9

accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." *Singleton v. City of New York,* 632 F.2d 185, 191, 192 (2d Cir.1980).

Relatedly, where a plaintiff "would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted, the so-called 'diligence-discovery rule of accrual' applies." *Id.* The rule delays accrual until the date the "plaintiff kn[ew] or ha[d] reason to know of the injury which is the basis of his action." *Veal v. Geraci,* 23 F.3d 722, 724 (2d Cir.1994); *Pipitone v. City of New York*, 57 F.Supp.3d 173, 186 (E.D.N.Y. 2014) (Dearie, J.) ("[A] claim accrues only when the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury *and its cause.*") (emphasis added and citation omitted).[4]

The diligence-discovery rule can postpone the accrual of a cause of action where the government deliberately concealed a plaintiff's injury and he remained "blamelessly ignorant" of his claim. *Pearl v. City of Long Beach*, 296 F.3d 76, 80, 82 (2d Cir. 2002); *Kronisch v. United States,* 150 F.3d 112, 121 (2d Cir.1988); *Siegel v. La Guardia Cmty. College,* 2006 WL 1084780, at *3 (E.D.N.Y. Apr. 25, 2006) (Townes, J.). Thus, when a "defendant fraudulently conceals the wrong, the [statute of limitations] does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action." *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) (quoting *Keating v. Carey*, 706 F.2d 377, 382 (2d Cir. 1983; *Pearl*, 296 F.3d at 81; *see also Halstead v. City of New York*, 2015 WL 1506133, at *4 (E.D.N.Y. Mar. 31, 2015) (Broadie, J.). Courts have thus sustained claims under the diligence-

---

[4] Defendants argue Maddix failed to establish equitable tolling under federal law. Marriott Memo. p. 13; City Memo. pp. 11-12. But Maddix asserted equitable *estoppel*, not equitable tolling. Defendants' memorandums improperly conflate the two doctrines. Moreover, equitable tolling and the diligence-discovery rule are distinct: the "discovery rule" delays the date of accrual of a claim, whereas, the doctrine of "equitable tolling" applies after the claim has already accrued, suspending the statute of limitations to prevent unfairness to a diligent plaintiff. *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 141 n. 6 (2d Cir. 2025).

discovery rule that were brought, as here, 30 years after the injury.  *See e.g. Pipitone v. City of New York*, 57 F Supp.3d at 189.

Maddix's § 1983 claims are timely under both the general accrual and diligence-discovery rules.  As established by the FAC, Maddix had no indication that the prosecutor suppressed the *Brady/Giglio* regarding DeJesus.  To the contrary, the KCDA's repeated, false representations pre and post-conviction misled Maddix to believe no such impeaching materials existed.  Further, KCDA attorneys continued to conceal the *Brady/Giglio* material from Maddix and every court to review his case, all in violation of its continuing obligation to disclose such material suppressed at trial.

Maddix was entitled to rely on the KCDA's representations and cannot be faulted for doing so.  *See e.g. Su v. Filion*, 335 F.3d 119, 128 (2d Cir. 2003) ("[I]t would be an unreasonable application of federal law, as determined by the Supreme Court, to fault [him] for not proceeding … on the assumption that the prosecutor is a liar.").  Indeed, even after Maddix's release from prison in 2012, he lacked any knowledge of what had taken place in his case.  Maddix only discovered the *Brady/Giglio* material in December 2024 when he was contacted by a researcher who uncovered the misconduct.  Thus, Maddix's causes of action did not accrue until December 2024, when he learned or had reason to know of his injuries.[5]

---

[5] Marriott argues that because Maddix knew the names of his trial prosecutor, "other prosecutors, and DA Hynes, and because of the news accounts cited in the FAC, Maddix "was on inquiry notice" for diligence-discovery rule purposes.  First, there is no evidence before the Court that before 2024, Maddix saw any of the news articles cited in his FAC.  More importantly, there was nothing in those articles that could have alerted Maddix that DeJesus had been subjected to hotel custody, and that the KCDA had been lying to Maddix about the non-existence of *Brady/Giglio* material for over a decade. Second, Marriott's argument that Maddix was on inquiry notice ignores the FAC's allegations, which must be accepted as true, that Maddix relied on the prosecutor's factual representations that there was no undisclosed *Brady/Giglio* material.  *Corsini v. City of New York*, 2023 WL 4420113, at *4 (E.D.N.Y. July 10, 2023) (Gonzalez, J.) ("At the motion to dismiss stage, the Court must assume that Plaintiff accurately alleges that the unreviewab[ility of] violations.… The Court, therefore, disregards the City's contrary assertions[.]").  Third, even if

**C.**    **Assuming *Arguendo* That The Statute Of Limitations Began To Run When Maddix Was Released From Prison In 2012, He Nevertheless Plausibly Pleads Defendants Are Equitably Estopped, Under Both Federal And New York Law, From Raising The <u>Statute Of Limitations Defense</u>**

Federal claims such as 42 U.S.C. § 1983 "borrow not only a state's limitations period but also its tolling rules." *Pearl v. City of Long Beach*, 296 F.3d at 80. Thus, the running of § 1983's three-year limitation period is subject to New York tolling doctrines. However, it is unsettled whether federal courts considering equitably estopping a defendant from raising that statute of limitation defense should apply federal or New York law.[6] Maddix's allegations are sufficient under both federal and New York law.

We have already discussed the standard for federal equitable estoppel. pp. 8-9, *supra* (citing *See* ECF No. 34, Maddix Opp. to City Defendants' Motion to Dismiss, pp. 10-14). "New York appears to use the label 'equitable estoppel' to cover both the circumstances 'where the defendant conceals from the plaintiff the fact that he has a cause of action [and] where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired.'" *Pearl v. City of Long Beach*, 296 F.3d at 82.

---

Maddix was required, contrary to law, to assume the trial prosecutor was a liar and suppressed *Brady/Giglio*, Marriott cannot establish, as a matter of law what he would have uncovered, much less *when* he would have uncovered the material and the misconduct of the KCDA. It does not follow that simply because a "researcher," at some unknown point, uncovered the evidence that Maddix's efforts would have been successful had he been alerted to pursue them in 2012. Finally, "[t]he determination of whether a plaintiff was put on 'inquiry notice' of his or her claim is clearly a question of fact[,]" *Thompson v. Metro. Life Ins. Co.*, 149 F. Supp. 2d 38, 50 n. 9 (S.D.N.Y. 2001) (Baer, J.), inappropriate for resolution on a motion to dismiss.

[6] *Smith v. City of Chicago Heights*, 951 F.2d 834, 841 (7th Cir. 1992) ("In contrast to equitable tolling, federal courts do not borrow [the] state equitable estoppel doctrine when they borrow a state statute of limitations; federal courts apply the federal doctrine of equitable estoppel."), quoting Wright & Miller, § 4519, *Determining the Content of Federal Common Law—Statutes of Limitations Federal Practice and Procedure; Ocasio v. City of Canandaigua*, 344 F.R.D. 158, 172 (W.D.N.Y. 2022) (Payson, M.J.) (applying New York equitable estoppel but holding "courts may apply the federal equitable tolling standard 'as a matter of fairness.'"), quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)

Estoppel may be invoked in "exceptional cases in which there has been a showing of fraud, misrepresentation, deception, or similar affirmative misconduct, along with reasonable reliance thereon." *Matter of Atlantic States Legal Found., Inc. v. New York State Dept. of Envtl. Conservation,* 119 A.D.3d 1172, 1173 (3d Dep't 2014). Similarly, under exceptional circumstances, estoppel is available against a government agency: "The doctrine may be asserted against a municipal defendant in exceptional circumstances involving the wrongful or negligent conduct of a governmental subdivision, or its misleading nonfeasance, which induces a party relying thereon to change his or her position to his or her detriment resulting in manifest injustice." *Receivable Collection Servs., LLC v. Nassau County,* 227 A.D.3d 834, 835 (2d Dep't 2024) (cleaned up). "Where a defendant has a duty to speak ... and fails to do so, a plaintiff's reliance on a defendant's silence can provide grounds for equitable tolling[,]" *Indoafric Exports Priv. Co. v. Citibank, N.A.*, 696 F.App'x 551, 552 (2d Cir. 2017) (cleaned up), citing *Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 90 (2d Cir. 2013).[7]. Finally, unlike federal law, New York law requires a plaintiff to alleged Defendants committed obstructive acts separate from the factual basis underlying his causes of action.

Here, the FAC alleges Maddix relied on Defendants' false representations to his detriment, and their actions precluded him bring bringing his claim until December 2024. For New York equitable estoppel purposes, (1) Defendants' initial 19-year cover-up of the *Brady/Giglio* material while Maddix was incarcerated were obstructive actions separate from their suppression during his trial, and (2) Defendants' 2012 to 2024 coverup after Maddix was released from prison was separate from their 19-year suppression during Maddix's incarceration. More fundamentally, if

---

[7] As with federal law, New York equitable estoppel generally may not be resolved on a motion to dismiss, at least where it is sufficiently pled. *See e.g.* 97 N.Y. Jur.2d Summary Judgment, Etc. § 175; *Collins v. Davirro*, 160 A.D.3d 1343 (4th Dep't 2018) (same).

13

railroading a man and preventing him from challenging his conviction while he served 19 years in prison are not the type of "exceptional" circumstances warranting application of the equitable estoppel doctrine against a municipality, no set of facts could meet warrant application of that doctrine. Given Maddix's allegations, it would violate the most basic principles of equity to allow Defendants to complain that Maddix's lawsuit is untimely in light of such egregious and culpable conduct.

## D.    Defendant's Arguments To The Contrary Are Meritless

First, Defendants challenge Maddix's allegation that prosecutors suppressed *Brady/Giglio* material simply because at some unknown point, "a researcher" working on an unrelated wrongful conviction case obtained that material through a public records request. City Memo. p. 12-13 (Marriott relies on the City's arguments as well). But as previously stated, it does not follow that because a member of the public was at some unknown point able to obtain the *Brady/Giglio* material, Maddix, an indigent inmate, should have obtained the same material during his 19-year incarceration or at anytime before December 2024.[8]

Likewise, the fact that the *Brady/Giglio* material was obtained through a researcher's public records request does establish it was not suppressed for *Brady* purposes, especially since Maddix was unaware of its existence and relied on the prosecutor's representations that it did not exist. *See e.g. United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995) ("Nor are we persuaded that the government's duty to produce the [*Brady* material] was eliminated by that document's availability in a public court file. We have seen … no indication that [defense] counsel was aware of facts that would have required him to discover the [*Brady* material] through his own diligent investigation on behalf of his client[.]"); FAC at ¶¶ 2, 23, 67-69, 72-76, 82, 89-90, 93-96, 101-

---

[8] Maddix was declared indigent during his 1999 federal *habeas* proceeding. *See Maddix v. Moscicki*, 99 CV 347 (ARR), Doc. No. 3.

14

105, 108, 110-111, 115-116, 81-116 (the 30-year coverup), ¶¶ 263-295 (the City's *Monell* coverup policy), ¶¶ 317-325 (the civil conspiracy).  As previously stated, Maddix cannot, as a matter of law, be faulted for relying on the truthfulness of a prosecutor's representations.

*Second,* Defendants cite *Opperisano v. P.O. Jones*, 286 F. Supp.3d at 464, for the proposition that the statute of limitations accrues for *Heck* non-custody purposes and begins to run when *habeas* is no longer available.  But as we explained, unlike Maddix, the plaintiff in *Opperisano* was fully aware of the basis for his § 1983 claim the moment he was released from custody and was thus able to pursue a § 1983 action within one year.  It was on those specific facts that the *Oppersiano* court decided the issue.

*Oppersiano* <u>never</u> considered when the statute of limitation accrued in a case like Maddix's where: (1) a plaintiff was totally unaware of his constitutional injuries while in prison and at the time he was released from prison; (2) the plaintiff's ignorance was caused by a 30-year affirmative government coverup; and (3) the diligence-discovery accrual and equitable estoppel rules governed assessment of the timeliness his claims.  *Oppersiano* is thus not precedent on when Maddix's claims accrued, and this Court should disregard arguments that its holding applies to Maddix.

**POINT III**

**MADDIX STATES A VALID CIVIL CONSPIRACY CLAIM
AGAINST MARRIOTT**

**A.**     **Marriott Policymakers' Actions Render Marriott Liable For Civil Conspiracy**[9]

One way of establishing municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), is to allege "actions taken by government officials responsible for establishing the municipal policies ... caused the particular deprivation in question[.]" *Haughey v.*

---

[9] The *Monell* standard applies in § 1983 actions seeking to hold a private corporation liable. *See e.g. Rojas v. Alexander's Dept. Store, Inc.*, 924 F2d 406, 408 (2d Cir. 1990).

15

*County of Putnam*, 2020 WL 1503513, at \*11 (S.D.N.Y. Mar. 29, 2020) (Karas, J.) (citation omitted). In the Second Circuit, "[a]n official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." *Roe v. City of Waterbury*, 542 F.3d 31, 38 (2d Cir. 2008); *Haughey v. County of Putnam*, 2022 WL 4468066, at \*13 (same). Relatedly, where such a "policymaker wholly delegates certain policy powers to a subordinate, the subordinate may herself qualify as a policymaker, thus subjecting the municipality to liability." *Haughey v. County of Putnam,* 2020 WL 1503513, at \*11.[10]

If such a policymaker then takes part in a civil conspiracy, his or her participation in the conspiracy renders the municipality/entity liable for resultant damages. *See e.g. LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995) (municipality may be liable for conspiracy under under § 1985); *Whisenant v. City of Haltom City*, 106 Fed. Appx 915, 917 (5th Cir. 2004) ("City can be held liable for the city council's part in the conspiracy, because the city council is the City's policymaking body and, consequently, its decisions constitute City policy"); *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 127 (2d Cir. 2004) ("[E]ven a single action by a policymaker is sufficient to establish *Monell* liability.")

The FAC alleges Marriott International and Marriott Hotel Services "wholly delegated final policymaking authority to several local managers of the Marriott LaGuardia Hotel[,]" those mangers were "autonomous and their decisions on the assistance provided and the hotel rooms they rented to the KCDA went unreviewed and were never overruled[,]" and "[t]hrough those managers, Marriott implemented a plainly illegal, unconstitutional, improper and deliberately indifferent policy, custom, or practice to knowingly facilitate … the KCDA's illegal imprisonment

---

[10] Policymaking authority may be shared among various individuals. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) ("There seems to be no disagreement among the members of the Court that in some municipalities policymaking responsibility is shared among more than one official or body[.]")

16

of witnesses as prisoners and to serve as one of Hynes's *de facto* black sites." FAC ¶¶ 18, 296-298. At the motion to dismiss stage, these allegations amply plead that Marriott's local hotel managers were Marriott policymakers by virtue of delegation. *See e.g. Stalter v. County of Orange*, 2016 WL 8711397, at *11 (S.D.N.Y. Aug. 5, 2016) (plaintiff's allegation that a sheriff "delegated all final policy-making authority as to disciplinary matters" to an undersheriff, sufficiently plead a *Monell* action based on the undersheriff's conduct while wielding that delegated authority) (record citation and quotation marks omitted).[11]

## B.    Maddix Plausibly Pleads A Civil Conspiracy Claim Against Marriott

"The charge of conspiracy in a [§ 1983] civil action is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible for any overt act or acts." *Rieves v. Town of Smyrna, Tennessee*, 67 F.4th 856, 863 (6th Cir. 2023) (citations omitted). To demonstrate a private-party defendant engaged in a § 1983 conspiracy with state actors, "[a] plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, but the pleadings must present facts tending to show agreement and concerted action." *Fisk v. Letterman*, 401 F.Supp.2d 362, 376 (S.D.N.Y.2005) (Marrero, J.) (citations and quotations omitted). A plaintiff need only allege: (1) an agreement between the private party and state actors; (2) to inflict an unconstitutional injury; and (3) an overt act in furtherance of the goal. *See Carmody v. City of N.Y.*, 2006 WL 1283125, at *5 (S.D.N.Y. May 11, 2006) (Baer, J.), citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). Maddix's Complaint easily satisfies this standard.

---

[11] Marriott cites *Lockwood v. Town of Hempstead*, 2017 WL 3769253, at *4 (E.D.N.Y. Aug. 28, 2017) (Feuerstein, J.), as requiring "explicit reference" to individuals with policymaking authority. The case does not contain any such holding, and the language Marriott "quotes" does not appear in the opinion.

First, Maddix adequately alleges an agreement between Marriott and the KCDA to illegally imprison DeJesus and coverup "the *Brady/Giglio* material resulting from those actions" and to "cover-up" the other conspirators' conduct. FAC ¶¶ 314, 317-319. Courts "give plaintiffs particular leeway in pleading conspiracy[.]" *Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp.2d 778, 795, n. 12 (S.D.N.Y. 2008) (Karas, J.). "[A]llegations of direct evidence of conspiracy are not necessary, as conspiracies have long been recognized to be secretive by nature and often are proven by circumstantial evidence, though detailed allegations of the conspiracy's time and place are helpful to cross the plausibility threshold." *Butler v. Hesch*, 286 F. Supp.3d 337, 363 (N.D.N.Y. 2018) (D'Agostino, J.) (citations omitted). A plaintiff can "rely on circumstantial evidence to establish an agreement[.]" *Rieves v. Town of Smyrna, Tennessee*, 67 F.4th 856, 862 (6th Cir. 2023).

Here, the FAC alleges, and includes official KCDA documentation and deposition testimony establishing, the City's policymaker, DA Hynes, had a blatantly illegal policy of abusing court process and using a web of NYC hotels to incarcerate recalcitrant witnesses *incommunicado*, without any legal authorization to do so, to compel their cooperation. FAC ¶¶ 24-48. The FAC then alleges the local Marriott mangers:

(1)    Had both "actual and constructive notice" of the nature of the witnesses involuntary detentions by virtue of their communications with the KCDA's Witness Relocation Unit, observing shackled prisoners being escorted in and out of hotel rooms, and damage to hotel doors caused by those shackles, FAC ¶ 304;

(2)    Knew they were contracting with the KCDA, which prosecuted crimes in Brooklyn, New York, that the KCDA was confining witnesses in the LaGuardia Marriott, and thus that the witnesses in the hotel were likely connected to the KCDA's criminal cases, *id.* ¶ 299;

(3)    Instead of using a witnesses' legal names, assigned witnesses "custody" numbers, and used those "custody numbers" to track the witnesses' hotel rooms and to keep their identities a secret, *id.* ¶¶ 301-302;

18

(4)    Gave hotel staff special instructions on how to deal with witnesses to ensure the witnesses isolation and inability to challenge their confinement, *id.* ¶ 309;

(5)    Instructed hotel employees to keep the practice confidential and rewarded those who did with recognition, good performance evaluations, promotions and raises, *id.* ¶ 411;

(6)    Received substantial revenue from this practice, so much so they gave the KCDA government rates, encouraging the KCDA to use Marriott to incarcerate even more recalcitrant witnesses, *id.* ¶¶ 312-313.

(7)    Secretly and illegally incarcerated DeJesus as a prisoner in a room at the LaGuardia Inn, under Custody Number 1407, with his room door shackled with leg irons, *id.* ¶¶ 3-2, 50-61, 106-107, ¶¶ 21-49, and held him *incommunicado,* and he was unable to leave until he agreed to testify in accordance with the KCDA's wishes.

Coupled with the above, the KCDA Hotel "Custody Log," attached to this memorandum as Exhibit A, supports the inference that there was indeed an agreement between the KCDA and Marriott to house involuntary "custodies." *Halberstam v. Welch*, 705 F.2d 472, 486 (D.C. Cir. 1983) ("Factors like the relationship between the parties' acts, the time and place of their execution, and the duration of the joint activity influence the determination" of whether an illicit agreement existed).

Maddix also adequately alleges concerted acts to inflict an unconstitutional injury. As previously stated, the FAC alleges "the goal of the conspiracy, [was] illegally imprisoning DeJesus and covering up the *Brady/Giglio* material resulting from those actions" and to "cover-up" the other conspirators' conduct. FAC ¶¶ 314, 319¶¶ 317-318. That this conspiracy was aimed principally at DeJesus is not a bar to recovery; if, in the course of the conspiracy, there are other illegal acts not specifically contemplated by Marriott but reasonably akin to the anticipated illegality and in furtherance or in consequence of the scheme, Marriott may not on that account escape liability for that conduct. *United States v. Gleason*, 616 F.2d 2, 16-17 (2d Cir 1979); *Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002) (explaining in a § 1983 case that "[a]s a conspirator,

19

the citizen is liable, in civil as in criminal law, for the wrongful acts of the other conspirators committed within the scope of the conspiracy") (citations omitted).[12]

Thus, so long as Maddix plausibly alleges the suppression of *Brady*/*Giglio* material at his trial and post-conviction coverup was a reasonably foreseeable consequence of the acts furthering the unlawful agreement, Marriott may be liable as a member of the conspiracy. This is precisely the present case. The FAC alleges "it was reasonably foreseeable that the secrecy Marriott and the KCDA employed to conceal the witnesses' unlawful confinement would continue throughout" Maddix's case, and that the coverup was part of that conspiracy. *Id.* ¶¶ 314, 319 ("the goal of the conspiracy, [was] illegally imprisoning DeJesus and covering up the *Brady*/*Giglio* material resulting from those actions"), ¶¶ 317-318 (alleging Marriott and the City corruptly agreed to "cover-up each other's conduct"). That Marriott only knew DeJesus by his "custody number" and did not know Maddix's name is irrelevant.

Obviously, it was reasonably foreseeable in a conspiracy to secretly and illegally incarcerate witnesses and cover it up, that other conspirators would maintain the secrecy of those illegal actions in perpetuity.[13] Indeed, the fact that the conspiracy involved inherently illegal conduct rendered it self-concealing. At a minimum, this is a factual question that cannot be resolved on a motion to dismiss. *Francois v Metro-N. Commuter R.R. Co.*, 107 F.4th 67, 74 (2d

---

[12] Thus, a person "can be a conspirator by agreeing to facilitate only some of the acts leading up to" the substantive offense, *Peacock v. City of Rochester*, 2016 WL 2347448, at *11 (W.D.N.Y. May 4, 2016) (Telesca, J), and a conspirator can be held responsible for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, *even if [the conspirator] did not himself participate in the substantive crimes*. *United States v. Salameh*, 152 F.3d 88, 151 (2d Cir 1998); *O'Hara v. City of New York*, 2021 WL 4932287, at *8 (in light of civil conspiracy, the fact that defendant may not have been directly involved in the solicitation or use of the fabricated testimony "is irrelevant to his liability for that act[.]")

[13] An offense by a co-conspirator is reasonably foreseeable "if it is [as here,] a necessary or natural consequence of the unlawful agreement," *United States v. Ward*, 505 Fed.Appx 18, 22 (2d Cir. 2012).

Cir. 2024) (foreseeability is a question of fact); *United States v. Crocker*, 788 F.2d 802 (1st Cir. 1986) (whether an act is attributable to a conspirator is a question of fact).

Finally, Marriott alleges numerous overt acts in furtherance of the goal of the conspiracy. FAC ¶ 319, incorporating all of Marriott's conduct (¶¶300-312) as overt acts in furtherance of the conspiracy. Marriott communicated with the KCDA's Witness Relocation Coordinator concerning the custodies, ensured the custodies had no way to complain or alert anyone of their confinement, assigned witnesses "custody" numbers, instructed Marriott employees to keep the illicit practice confidential, and rewarded employees who did. Thus, for 12 (b)(6) purposes, Maddix adequately alleged Marriott engaged in a civil conspiracy.

## C.      Marriott's Arguments To The Contrary Are Meritless

Marriott ignores the FAC's allegations of specific conduct undertaken by its local managers, and raises three main arguments.

First, Marriott claims it is entitled to dismissal because the FAC does not specifically allege Marriott agreed with KCDA "to deprive Maddix of *Brady/Giglio* material." Marriott Memo. p. 19. But Maddix was not required to allege that was Marriott's goal. Co-conspirators' goals in a conspiracy "need not be congruent for a single conspiracy to exist, so long as their goals are not at cross-purposes." *United States v. Khalupsky*, 5 F.4th 279, 289 (2d Cir. 2021). Marriott's goal, of course, was a financial one, but it was not at cross-purposes with the KCDA.

Second, Marriott argues the FAC does not allege Marriott acted in concert "to inflict a *Brady/Giglio* violation on Maddix." Marriott Memo. p. 19. Again, there is no such requirement. That Marriott's motive for joining the conspiracy was pecuniary does not exempt it from liability for its conduct simply because its co-conspirator, the KCDA, had a different goal. *United States v. Rosario*, 2017 WL 3841867, at *3 n. 4 (S.D.N.Y. Sept. 1, 2017) ("To be convicted as a member of a conspiracy, a defendant need not know every objective of the conspiracy, every detail of its

21

operation or means employed to achieve the agreed-upon criminal objective, or even the identity of every co-conspirator.") (citations omitted). As long as Maddix's damages were reasonably foreseeable when Marriott took part in the conspiracy, Marriott can be held liable for them. *United States v. Salameh*, 152 F.3d 88, 151 [2d Cir 1998] ("[A] conspirator can be held responsible for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if [the conspirator] did not himself participate in the substantive crimes."); *O'Hara v. City of New York*, 2021 WL 4932287, at \*8 (same).

Third, Marriott alleges it was impossible for it to have had a meeting of the minds with the KCDA because there is no allegation that it knew Maddix or DeJesus or "agreed to deprive Maddix of his rights." Marriott Memo. p. 19 n. 11. But Marriott did know DeJesus by his "custody number" 1407, instead of his legal name, which was kept secret. More importantly, a "defendant need not know every objective of the conspiracy, every detail of its operation or means employed to achieve the agreed-upon criminal objective, or even the identity of every co-conspirator." *United States v Rosario*, 2017 WL 3841867, at \*3 n. 4 (S.D.N.Y. Sept. 1, 2017). For example, in *Halberstam v. Welch*, 705 F.2d 472, *supra*, the defendant was found liable for, among other things, civil conspiracy for an unplanned murder committed by her boyfriend during a botched burglary. The defendant, who assisted what she claimed was her boyfriend's antiques business, argued she did not know about, let alone intend to commit (or intend that her boyfriend commit), the murder- or even the burglary. The *Halberstam* court expressly rejected the argument that the object of defendant's unlawful agreement had to be murder or even the burglary during which the murder took place, *id.* 488. Instead, the court held the very fact that the defendant "agreed to participate in an unlawful course of action and that [the] murder ... was a reasonably foreseeable consequence

22

of the scheme are a sufficient basis for imposing tort liability ... according to the law on civil conspiracy." *Id*. 487.

*Halberstam* explained that the boyfriend "was trying to further the conspiracy by escaping after an attempted burglary, and he killed [the victim] in his attempt to do so. The use of violence to escape apprehension was certainly not outside the scope of a conspiracy to obtain stolen goods through regular nighttime forays and then to dispose of them." 705 F.2d at 487; *Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 76 (2d Cir. 2023) (noting Congress recognized *Halberstam* as "a leading case" on civil "conspiracy liability."). So too here, the KCDA's trial and post-conviction concealment of what they did to DeJesus "was certainly not outside the scope of a conspiracy to" coverup its own and Marriott's conduct.

Finally, Marriott alleges the FAC is deficient because it alleges activities that are "independent actions," not actions in furtherance of a conspiracy (renting two rooms with no food, television or phone access). Marriott Memo. p. 20. But that argument ignores Maddix is entitled to have all inferences drawn in his favor, and his allegations that Marriott mangers coordinated with the KCDA's Witness Relocation Unit, knew that the KCDA was unlawfully confining prisoners in their hotel rooms, covered up that illegal conduct in accordance with the KCDA's wishes, FAC ¶ 307, instructed hotel staff not to communicate with the prisoners so as to keep them isolated, ¶ 308, "failed to report the obvious unlawful confinement of witnesses despite the lack of any New York law" authorizing such confinements, ¶ 310, and "instructed employees to keep the practice confidential. ¶ 311. Drawing all reasonable inferences in Maddix's favor, these actions are indeed in furtherance of the conspiracy to unlawfully imprison DeJesus and coverup their own and other conspirators' conduct.

## POINT IV

### MARRIOTT ENGAGED IN STATE ACTION

Marriott argues it did not engage in state action because Maddix's civil conspiracy is conclusory. Marriott Memo. pp. 16-20. As demonstrated above, the FAC's conspiracy claim alleges and establishes Marriott acted under color of state law as required by § 1983. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) (private party who conspired with a judge acted under color of state law); *Young v. Suffolk County*, 705 F.Supp.2d 183, 195–96 (E.D.N.Y. 2010) (Brodie, J.) (civil conspiracy sufficient).

## POINT V

### MADDIX ADEQUATELY PLEADS VIOLATIONS OF HIS CONSTITUTIONAL RIGHTS

As discussed above, Maddix's FAC pleads plausible denials of a right to fair trial claims based on the suppression of *Brady/Giglio* material, *see* pp. 3-4, *supra*, FAC ¶¶ 118-127, and due process rights based on Defendant's violation of Maddix's ongoing right to disclosure of *Brady*/*Giglio* material suppressed at his trial, and to petition the court. pp. 4-5, *supra*; FAC ¶¶ 139-148. *Steidl v. Fermon*, 494 F.3d 623, 630 (7th Cir. 2007); *Patterson v. Burge*, 328 F. Supp.2d 878, 899-901 (N.D. Ill. 2004) (same).

## POINT VI

### MARRIOTT INTERNATIONAL, INC.'S GROUP PLEADING ARGUMENT IS MERITLESS

Marriott International, Inc. argues it is entitled to dismissal because the FAC's reference to it collectively with Marriott Hotel Services, Inc., is an improper group pleading "bereft of allegations related to Marriott International." Marriott Memo. pp. 24-25. But an improper group-pleading fails to give each defendant fair notice of the claims against it." *Wright v. Orleans Cty.*, 2015 WL 5316410 at *13 (W.D.N.Y. Sept. 10, 2015), report and recommendation adopted, 2015

24

WL 13660397 (W.D.N.Y. Oct. 27, 2015). Here, both Marriott International and Marriott Hotel Services were involved in identical conduct, and obviously each defendant is on notice of its conduct. *See* Marriott's Memo. at p. 5 (referencing the "FAC's Causes of Action Against the Marriott Defendants"). Thus, Maddix's FAC, even if "sub-optimal, [is sufficient to] apprise each [defendant] of the nature of their participation in the alleged" wrongful conduct. *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F.Supp.3d 401, 425 (S.D.N.Y. 2014) (Karas, J.).

## CONCLUSION

Maddix, having navigated the hurdles applicable in this § 1983 action, is entitled to his day in court. The City's motion to dismiss should be denied in its entirety.

Dated: October 1, 2025
New York, New York

Andrew M. Stengel
The Law Firm of Andrew M. Stengel, P.C.
11 Broadway Suite 715
New York, New York 10004
Tel: 212-634-9222
Fax: 212-634-9223
Email: andrew@stengellaw.com

Case 1:25-cv-01909-HG    Document 35    Filed 10/01/25    Page 34 of 36 PageID #: 975

# EXHIBIT A



| HOTEL | CUSTODY# | IND# | BUREAU | DATE IN | DATE OUT |
|---|---|---|---|---|---|
| American | 1120 | 14750/90 | TUMELTY BLUE HALE | 12/1/92 | 2/9/93 |
| Pan American | 1121 | 15556-91 | Trial Cadre Hom. | 12/28/92 | 1-16-9 |
| Pan American | 1122 | 69317 | Complaint Rm Shenitz | 12/30/92 | 2-23-9 |
| Clinton Plaza | 1123 | 16258/91 | Red | 1/4/93 | 1/6/93 |
| Travel Lodge Rm236 | 1124 | 420/92 | MALLEY 1108 Green Zone | 1/8/93 | 3/18/9 |
| Pan American | 1125 | 11644/92 | Adler Gray ORANGE | 1/4/93 | 7-23-9 |
| La Guardia Marriott | 1126 | 6326/92 | ADA Bruen | 1/18/93 | 1/20/93 |
| Pan American | 1127 | 18/93 | Gray | 1/20/93 | 7/23/9 |
| Skyline | 1128 | 1681/92 | Cadre | 1/21/93 | 1/26/93 |
| LaGuardia Marriott | 1129 | 1545/92 | | | 1/25/93 |
| Pan American | 1130 | Token | | | |
| Pan American | 1131 | | | | |
| Pan American | 1132 | 9367-91 | BIALO-PADIN GRAY | 1/31/93 | 2/4/93 |
| Pan American | 1133 | 15666/91 | SHAW IRWIN | 2/2/93 | 2/16/93 |
| Pan American | 1134 | 5288/91 | DKB Emanuel | 2/2/93 | 2/4/93 |
| | 1135 | 11061/91 | ORANGE Racin | 2/3/93 | 2/5/93 |
| Radisson Empire Alexandria Marriott | 1136 | VOID | TRIAL CADRE PLAZNCK RED | 2/7/93 | |
| Skyline | 1137 | 567/93 | ADA GRAY | 2/6/93 | 5/3/9 |
| Pan American | 1138 | 9367/91 | BIALO-PADIN GREEN | 2/7/93 | 2/16/93 |
| La Guardia Marriott PC | 1139 | 7312/92 | TAISNER RED | 2/11/93 | 2-17-9 |
| Adria | 1140 | 9347/91 | BIALO-PADIN GREEN | 2/6/93 | 2/18/9 |
| LaGuardia Marriott | 1141 | 14314/91 | BLUE LUZA | 2/16/93 | 3/18/9 |
| Adria Rm201 | 1142 | 15666/91 | IRWIN GRAY ORANGE | 2/16/93 | 3/ |
| Park Ave 2pc | 1143 | 9802/92 | KERN GREEN | 2/16/93 | |
| LaGuardia Marriott | 1144 | 7812/92 | O'MALLEY | 2/18/93 | |
| Travelodge | 1145 | 9384/89 | MAJOR NARC KORHAN | 2/18/93 | 2/ |
| Holiday Inn Crown Plaza | 1146 | 1366/92 | ORANGE Furland | 2/20/93 | 2-24-9 |
| Travelodge VOID | | | VOID | Dated 2/93 | |
| Holiday Inn Crown Plaza | 1148 | 5849/92 | T.Javid | 2/24/93 | 2-25-9 |
| " | 1149 | 1550/91 | ORANGE CURE | 3/1/93 | 3-9-9 |
| | 1150 | 14294/92 | ORANGE | 2/24/93 | 3-4-9 |
| PAN AMERICAN | 1151 | 2328/92 | BLUE WEINMAN | 3/4/93 | 10/29/9 |
| CROWN PLAZA | 1152 | 2579/88 | BEAME GRAY | 3/9/93 | 3/9/9 |
| HOLIDAY INN CROWN PLAZA | 1153 | 908/92 | FARRELL TRIAL CADRE | 3/9/93 | 3/10/9 |
| Pat Rivers | 1154 | 1994/92 | Ferrell Cady | 3/6/93 | 4/ |
| HOLIDAY INN CROWN PLAZA | 1155 | 13306/91 | SHAZARI | 3/11/93 | |
| | 1156 | | Cadre | | |
| ADRIA Rm 401 | 1158 | 9794/92 | GRAY Diamond SUNA | 3/18/93 | |