UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WILLIE MADDIX,

           Plaintiff,

    v.

THE CITY OF NEW YORK *et al.*,

           Defendants.

**MEMORANDUM & ORDER**
25-CV-1909 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Willie Maddix brings this action against Defendants City of New York (the "City"), Marriott Hotel Services, Inc., and Marriott International, Inc. (collectively, the "Marriott Defendants").  Plaintiff alleges several constitutional violations under 42 U.S.C. § 1983 and one related state law claim, asserting that Defendants violated his rights under the United States Constitution and New York Constitution by failing to disclose *Brady* material during Plaintiff's state trial in 1994, and covering up those same alleged violations in the years since.  ECF No. 5.[1]

Currently before the Court are two motions to dismiss:  the City's motion, ECF Nos. 28, 30 (City's Motion to Dismiss and Memorandum) and the Marriott Defendants' motion, ECF Nos. 31, 32 (Marriott Defendants' Motion to Dismiss and Memorandum).  Defendants bring their motions pursuant to Rule 12(b)(6).

For the reasons that follow, Defendants' motions are GRANTED.

---

[1]    Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations.  The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

**BACKGROUND**[2]

### I.        Relevant Facts

In August 1994, Plaintiff was convicted after a jury trial of criminal possession of a weapon in the second degree in connection with a shooting that resulted in the death of Jose Felix and an injury to Larry Butcher.  *See* ECF No. 5 ¶¶ 20, 78–79.  Two witnesses implicated Plaintiff in the shooting:  Larry Butcher, one of the shooting victims, and Felix DeJesus, an eyewitness.  *See id.* ¶ 70.

Plaintiff alleges that, on July 30, 1994, the court issued a material witness warrant for DeJesus's arrest and that the assistant district attorney prosecuting his case, Kyle Reeves ("ADA Reeves"), "illegally" and "secretly imprisoned [DeJesus] against his will in a Brooklyn hotel room . . . to coerce his trial testimony."  ECF No. 5 ¶¶ 3, 51–52, 61.  Plaintiff further alleges that ADA Reeves "conveyed to DeJesus, in sum and substance, that if DeJesus testified in accordance with Reeves's case narrative, DeJesus would be released from custody" and that "DeJesus's release from custody was thus dependent on his cooperation against Maddix."  *Id.* ¶¶ 59–60.  Plaintiff claims that "Reeves's coercion of DeJesus's trial testimony was *Brady/Giglio* material Reeves was obligated to disclose to Maddix and his attorney."  *Id.* ¶ 62.

At trial, DeJesus "testif[ied] against" Plaintiff.  ECF No. 5 ¶ 3.  Blutcher also testified against Plaintiff.  *Id.* ¶ 70.  Ultimately, the jury found Plaintiff guilty.  *Id.* ¶ 78.

Plaintiff was released from custody on August 29, 2012.  *Id.* ¶ 100.  More than 12 years after he was released, on December 18, 2024, Plaintiff first discovered the alleged *Brady/Giglio*

---

[2]        The Court "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts."  *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).

material, and the Kings County District Attorney's Office's ("KCDA") alleged subsequent suppression of that material, through a public records request made by a third party.  ECF No. 5 ¶ 103.

## II.    Procedural History

In the years following Plaintiff's trial and conviction, his conviction has not been reversed or otherwise invalidated.  Plaintiff commenced this action on April 8, 2025, by filing a complaint against the City, Marriott Defendants, and ADA Reeves.[3]  *See* ECF No. 1.  About two weeks later, Plaintiff amended his complaint.  *See* ECF No. 5 (Amended Complaint).

The Amended Complaint asserts seven causes of action.  Plaintiff asserts three causes of action against both the City and Marriott Defendants:  a denial of a fair trial claim (Claim I); a substantive due process claim (Claim III); and a conspiracy claim, alleging Defendants conspired to violate Plaintiff's constitutional rights (Claim VII).  As to the City alone, Plaintiff asserts two municipal liability (*Monell*) claims (Claim IV and Claim V).  Finally, Plaintiff brings two further claims against the Marriott Defendants:  a *Monell* claim (Claim VI) and a New York State constitutional due process claim (Claim VIII).  *See generally id.*

On June 27, 2025, the Marriott Defendants filed a pre-motion letter in anticipation of their motion to dismiss the Amended Complaint.  *See* ECF No. 24.  The Court then ordered Plaintiff to "address whether he believes the amended complaint can be further amended to address the issues" raised in the Marriott Defendants' letter.  June 30, 2025, Text Order.  After the City filed a similar pre-motion letter on July 14, 2025, *see* ECF No. 25, the Court again

---

[3]    Plaintiff initially sued ADA Reeves, *see* ECF No. 1, but Plaintiff "agree[d] to voluntarily discontinue [Claim II] (First Amendment Right of Access) and to dismiss Defendant [] Reeves" and to assert claims against only the City and Marriott Defendants, *see* ECF Nos. 21, 23.

ordered Plaintiff to "address whether Plaintiff believes the complaint can be amended to address the issues raised in" the City's letter, July 16, 2025, Text Order.

In response to those Orders, Plaintiff informed the Court that "the allegations in the [Amended Complaint] are sufficient to establish [the Defendants'] liability." ECF No. 26 at 5 n.3. On July 24, 2025, the Court acknowledged that "Plaintiff's response to Defendants' letters states that Plaintiff does not intend to further amend the complaint." July 24, 2025, Text Order. Less than a week later, Plaintiff confirmed that "he does not intend to amend the complaint." ECF No. 27 at 1.

On September 2, 2025, Defendants filed their respective motions to dismiss pursuant to Rule 12(b)(6). *See* ECF Nos. 28, 30–32. Plaintiff filed oppositions to each motion on October 1, 2025, *see* ECF Nos. 34 (Opposition to City); 35 (Opposition to Marriott Defendants), and Defendants filed their respective replies on October 14, 2025, *see* ECF No. 36 (City's Reply), and October 15, 2025, *see* ECF No. 37 (Marriott Defendants' Reply).

## LEGAL STANDARD

Defendants move to dismiss Plaintiff's Amended Complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under this Rule, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is plausibly alleged 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matzell v. Annuci*, 64 F.4th 425, 433 (2d Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In making this assessment, the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from

4

those allegations in the light most favorable to plaintiff, and construe the complaint liberally."
*Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007).  The Court must, however, disregard any
"conclusory allegations, such as formulaic recitals of the elements of a cause of action."  *Iqbal*,
556 U.S. at 678.  A pleading that only "tenders naked assertions devoid of further factual
enhancement" will not suffice.  *Id.*

## DISCUSSION

The Court begins by addressing two preliminary hurdles that Plaintiff must overcome
with respect to his claims.  The parties spend considerable time in their submissions arguing,
first, why the bar set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), and second, whether the
statute of limitations should, or should not, apply to Plaintiff's claims.  *See, e.g.,* ECF No. 30 at
12–19; ECF No. 32 at 14–21; ECF No. 34 at 18–28.  The Court discusses the applicability of the
*Heck* bar and the statute of limitations before turning to Defendants' arguments concerning the
substance of Plaintiff's claims.

### I.        Preliminary Hurdles

#### A.        The Heck Bar

Under *Heck*, if a plaintiff "seeks damages in a § 1983 suit" and a judgment in his favor
"would necessarily imply the invalidity of his conviction or sentence . . . the complaint must be
dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been
invalidated."  512 U.S. at 487.  Whether *Heck* applies to circumstances like those seen here—
where a non-custodial plaintiff brings a § 1983 case that necessarily challenges the validity of his
conviction but has not taken steps to attack the conviction's validity through collateral attack—is
an open question in this Circuit.  *Compare, e.g., Chapman v. Fais*, 540 F. Supp. 3d 304, 307–08
(E.D.N.Y. 2021) (finding suit *Heck* barred where plaintiff "deliberate[ly]" chose to file § 1983

5

action "over the established procedures to obtain a formal vacatur of a conviction") *with, e.g., John v. Lewis*, No. 15-cv-5346, 2017 WL 1208428, at \*7 (E.D.N.Y. Mar. 31, 2017) ("It is Second Circuit law that a plaintiff not in State custody, who thus does not have a *habeas corpus* remedy available, may bring a § 1983 action, even if a successful claim would 'necessarily imply the invalidity of his conviction.'") (quoting *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999)).

The Court does not endeavor to answer that open question here.  Instead, it is persuaded by Judge Calabresi's concurrence in *Teichmann v. New York* which states that "many cases . . . can be disposed of based on well-settled principles" and "it is generally desirable . . . to decide them on [] non Heck grounds."  769 F.3d 821, 829 (2d Cir. 2014) (Calabresi, J., concurring). Accordingly, the Court declines the parties' invitation to "try to read the . . . tea leaves," *Packer ex rel. 1-800-Flowers.com, Inc. v. Raging Cap. Mgmt., LLC*, 105 F.4th 46, 54 (2d Cir. 2024), and foregoes addressing *Heck* questions in favor of "well-settled principles," *Teichman*, 769 F.3d at 829.[4]

### B.    The Statute of Limitations

"The statute of limitations for [§] 1983 claims brought in a federal court in New York is three years from the date the underlying constitutional violation occurred." *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 463 (E.D.N.Y. 2018).  However, for "[§] 1983 damages claims

---

[4]    The Court has neither the occasion nor need to address the parties' arguments regarding equitable estoppel or the *Rooker-Feldman* doctrine because it concludes that Plaintiff fails to state a claim for which relief can be granted.  *See infra* Part II.A.

The Court also acknowledges Plaintiff's and the City's letters concerning the Supreme Court's recent decision in *Oliver v. City of Brandon*, 607 U.S. ___ (2026), issued on March 20, 2026, *see* ECF Nos. 38, 39.  However, *Oliver* has no bearing on the case before the Court, as *Oliver* concerns the applicability of the *Heck* bar to prospective relief and does not involve a collateral attack on the petitioner's conviction.  The Court further acknowledges Plaintiff's and the City's letters concerning the Supreme Court's recent denial of *certiorari* in *Wilson v. Midland County*, No. 24-672, 2026 WL 858442 (Mar. 30, 2026), *see* ECF Nos. 40, 41, but declines to address them for the reasons set forth in this section.

based on unconstitutional convictions or sentences," claims "'do[] not accrue until the conviction or sentence . . . has been invalidated.'" *Id.* (quoting *Heck*, 512 U.S. at 490). With respect to exceptions to *Heck*, the statute of limitations accrues when "habeas [relief] is no longer available, despite due diligence." *Id.* at 464. Here, Plaintiff's conviction has neither been reversed nor invalidated, and while his claims are based on an alleged constitutional violation, *see generally*, ECF No. 5, there is no constitutional violation in fact. Moreover, habeas relief is no longer available because he was released from prison in August 2012. *Id.* ¶ 100; *Huang v. Johnson*, 251 F.3d 65, 75 (2d Cir. 2001); *accord Smith v. Duquesnay*, No. 07-cv-2795, 2012 WL 1116450, at *1 n.1 (E.D.N.Y. Mar. 30, 2012) (acknowledging that the Second Circuit has "specifically noted that no habeas remedy lies for an individual that has been released from custody"). Thus, Plaintiff's claims have either not accrued or have expired, at the very latest, on August 29, 2015. *See* ECF No. 30 at 16; *Opperisano*, 286 F. Supp. 3d at 463.

Defendants each argue that Plaintiff's claims are time-barred. *See* ECF No. 30 at 16–19; ECF No. 32 at 16–21. Plaintiff counters that the statute of limitation should be tolled, asserting that the diligence-discovery rule or equitable estoppel apply. *See* ECF No. 34 at 13, 28; ECF No. 35 at 17–22. At the motion to dismiss stage, a "dismissal is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999). Here, the Parties' arguments on tolling, the diligence-discovery rule, and equitable estoppel raise a question of whether the Amended Complaint is time-barred on its face. However, the Court need not resolve those issues at this juncture because, as set forth below, Plaintiff has not plausibly alleged a constitutional injury sufficient to state a claim under § 1983. *See infra* Part II.A; *see also Venticinque v. Brown*, No. 09-cv-2861, 2010 WL 3824122, at *1–3 (E.D.N.Y. Sept. 23, 2010) (addressing the merits of plaintiff's § 1983 claim despite the fact that

7

it was likely time-barred because "[e]ven if the court ignored the statute of limitations, the action still fails to state a claim for which relief can be granted").

## II.    Plaintiff's Substantive § 1983 Claims

Preliminary hurdles aside, Plaintiff's claims under § 1983 and related state law are predicated on an alleged *Brady* violation prior to Plaintiff's 1994 trial and the alleged subsequent coverup.  To maintain a claim under § 1983:  "(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

### A.    *Plaintiff Fails to Plausibly Allege Constitutional Injury*

#### i.    Defendants did not Violate *Brady*

Plaintiff's *Brady*-related claims are premised on his assertion that the KCDA's failure to disclose DeJesus's hotel stay amounts to a violation of the prosecutor's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).  However, as further explained below, Plaintiff's claims fail because the relevant conduct did not violate *Brady* and, therefore, did not deprive Plaintiff of "rights, privileges, or immunities secured by the Constitution." *Pitchell*, 13 F.3d at 547.  In any event, Plaintiff's claims fail against the Marriott Defendants because they were not "acting under color of state law." *Id.*

At bottom, Plaintiff has failed to allege any conduct that deprived him of his constitutional rights.  Although Plaintiff contends that Defendants did not disclose that DeJesus stayed at a Marriott hotel for nearly three days prior to testifying at Plaintiff's trial, ECF No. 5 ¶¶ 3, 51–52, 61–80, his argument hinges on the notion that, by securing DeJesus's attendance at trial through a material witness warrant and detaining him at the hotel until he testified, ADA

8

Reeves coerced DeJesus's testimony. That, in Plaintiff's view, constitutes a *Brady* violation. The Court disagrees.

For Plaintiff to prevail on such a claim, he would need to allege in non-conclusory fashion that Defendants fabricated DeJesus's testimony, which he fails to do; coercion, standing alone, is insufficient absent resulting fabrication. *See Galloway v. County of Nassau*, 141 F.4th 417, 423–24 (2d Cir. 2025) (finding *Brady* violation where police officers coerced witness into signing false statement and withholding that fact from prosecutors, thereby withholding it from defendant); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (finding when "police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial"); *see also Thomas v. Mason*, No. 17-cv-626, 2023 WL 2709730, at *7 (N.D.N.Y. Mar. 30, 2023) ("There is clearly a difference between coercing [a witness] to testify and fabricating witness testimony."). Here, even when reading the Amended Complaint in the light most favorable to Plaintiff, the Court finds no indicia of fabrication in the allegations, only "the coercion leading to DeJesus's trial testimony." ECF No. 5 ¶ 3; *see also id.* ¶¶ 62, 75, 87, 95, 106.

The *Brady* violation which Plaintiff alleges stems from ADA Reeves's holding DeJesus in a Marriott hotel for nearly three days leading up to Plaintiff's trial. *Id.* ¶¶ 52, 61. During this time, Plaintiff alleges that DeJesus remained in a hotel room that was "shackled," and where officers "controlled all entry and exit[]." *Id.* ¶¶ 55–56. DeJesus was given no telephone and permitted no visitors, except for ADA Reeves and select KCDA personnel. *See id.* ¶¶ 57–58.

Plaintiff alleges that DeJesus "refused to testify during [Maddix's] trial" and that ADA Reeves informed DeJesus that he "would be released if he testified." ECF No. 5 ¶ 3. This allegation, in Plaintiff's own words, concerns only coercion. *See id.* (alleging "the prosecutor

9

secretly imprisoned the witness against his will . . . to coerce his trial testimony"). Thus, even when the Court reads the Amended Complaint in the light most favorable to Plaintiff, as the Court is required to do at this stage, *Roth*, 489 F.3d at 510, Plaintiff alleges facts sufficient to satisfy only one of the necessary elements to state a *Brady* claim. However, two elements—both coercion *and* fabrication—are necessary for Plaintiff's *Brady* claim to survive a motion to dismiss. *See Galloway*, 141 F.4th at 423–24; *Ricciuti*, 124 F.3d at 130; *Thomas*, 2023 WL 2709730, at *7.

Moreover, Plaintiff's allegation that ADA Reeves told DeJesus that he "would be released from custody," as long as he "testified in accordance with Reeves's case narrative,"[5] ECF No. 5 ¶ 59, reaches the same result. That is, even when read in Plaintiff's favor, Plaintiff alleges only coercion, not coercion *and* fabrication, as is required. *See Galloway*, 141 F.4th at 423–24; *Ricciuti*, 124 F.3d at 130; *Thomas*, 2023 WL 2709730, at *7. Nothing in the Amended Complaint supports even an inference that DeJesus did not testify truthfully or that ADA Reeves induced DeJesus to fabricate any portion of his testimony.[6] At most, therefore, the Amended Complaint asserts only that DeJesus's release from the hotel room was "dependent on his cooperation against Maddix," and the legal conclusion that "Reeves's coercion of DeJesus's trial testimony was *Brady/Giglio* material [that] Reeves was obligated to disclose to Maddix[.]" ECF

---

[5]    Notably, Plaintiff fails to allege that ADA Reeves's case narrative was false. *See generally* ECF No. 5. The only non-conclusory allegations relating to falsity concern ADA Reeves's "falsely portray[ing]" DeJesus's reasons for testifying. ECF No. 5 ¶¶ 5, 46, 72, 106.

[6]    Moreover, even after the City raised this argument in its Motion, ECF No. 30 at 22–25, Plaintiff still failed to address fabrication in his Opposition, *see generally* ECF No. 35. Accordingly, Plaintiff abandons any argument as to fabrication. *See Charlier v. 21 Astor Place Condo.*, No. 22-cv-05903, 2024 WL 4026253, at *8 (S.D.N.Y. Sept. 3, 2024) (deeming claims abandoned where plaintiff did not raise any contrary arguments in opposition to a motion to dismiss).

No. 5 ¶¶ 60, 62. Stated otherwise, even if the Court squints to read as much as possible from Plaintiff's allegations, it is unable to find any allegation that DeJesus's testimony was fabricated.

In short, because Plaintiff does not complain of conduct that has "deprived [him] of rights, privileges, or immunities secured by the Constitution or laws of the United States," *see Pitchell*, 13 F.3d at 547, his *Brady*-related claims must be dismissed with prejudice.[7]

ii.    Plaintiff's Non-*Monell* Claims Against the City Fail Because they are Premised on a Theory of *Respondeat Superior*

"An individual plaintiff may sue a municipality directly under § 1983 only for constitutional deprivations inflicted pursuant to a governmental custom or policy. . . . A municipality may not be held liable under § 1983 for the actions of its employees under a theory of *respondeat superior*." *Flores v. City of Mount Vernon*, 41 F. Supp. 2d 439, 446 (S.D.N.Y. 1999). Here, Plaintiff's allegations concerning a conspiracy that denied him of the right to a fair trial and substantive due process are premised entirely on the conduct of ADA Reeves. *See* ECF No. 5 ¶¶ 118–27, 139–48, 317–25. And without alleging that any such conduct was undertaken pursuant to an official policy, custom, or practice, as required under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), the claims are necessarily brought under a theory of *respondeat superior*. Accordingly, even if Plaintiff were to establish an underlying constitutional violation, the claims against the City are barred as an impermissible attempt to

---

[7] While the Court acknowledges Plaintiff's conspiracy claim (Claim VII), it need not address it here as it is implausible based on the absence of constitutional harm. *See Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009) ("Because . . . the underlying [§] 1983 cause[] of action can[not] be established, the claim for conspiracy also fails.") (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)).

11

impose *respondeat superior* liability under § 1983.  The Court therefore dismisses Claims I, III, and VII against the City.[8]

### B.    The Marriott Defendants are not State Actors

"Constitutional torts are only actionable against state actors or private parties acting 'under the color of' state law." *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014) (quoting *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002)).  This rule is unwaivable and is known as the "state action requirement." *Astacio v. City of New York*, 698 F. Supp. 3d 530, 535 (E.D.N.Y. 2023), *aff'd*, No. 23-7598, 2025 WL 80069 (2d Cir. Jan 13, 2025).  A private party's actions are deemed state action only:

> (1) when the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); [or] (3) when the entity has been delegated a public function by the state ("the public function test").

*Barrows v. Becerra*, 24 F.4th 116, 135 (2d Cir. 2022).  Taking each circumstance in turn, the Court concludes that Plaintiff fails to plausibly allege the Marriott Defendants are state actors.

First, Plaintiff fails to plead sufficiently that the "compulsion test" is satisfied.  The Amended Complaint is silent as to whether the Marriott Defendants were compelled to rent rooms to the KCDA. *See generally*, ECF No. 5 ¶¶ 296–316.  Marriott Defendants raise in their

---

[8]    Moreover, even if Claims I, III, and VII were not premised on a theory of *respondeat superior*, they still would fail because they are predicated on the conduct of ADA Reeves, which is entitled to absolute immunity. *See Hill v. City of New York*, 45 F.3d 653, 660–62 (2d Cir. 1995) ("State prosecutors are entitled to absolute immunity for that conduct intimately associated with the judicial phase of the criminal process," including *Brady* violations.); *Solely v. Cnty. of Nassau*, No. 18-cv-377, 2022 WL 2954055, at 7 (E.D.N.Y. July 26, 2022) ("A conspiracy claim also falls within the ambit of absolute prosecutorial immunity.") (citing *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)); *McDonough v. Smith*, no. 15-cv-1505, 2022 WL 3279348, at *19 (N.D.N.Y. Aug. 11, 2022) ("The 'coercion of witnesses' is a prosecutorial activity for which absolute immunity applies.") (citing *Taylor v. Kavanaugh*, 640 F.2d 450, 452 (2d Cir. 1981)).

Motion—and Plaintiff does not contest—that the Amended Complaint contains no allegations that the Marriott Defendants were compelled to rent rooms to the KCDA. *See* ECF No. 32 at 22–23.[9]  Without allegations of compulsion, the Amended Complaint suggests only arms-length commercial negotiations between the Defendants.  Such garden-variety contractual arrangements do not create state action.  *See Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 492 (2d Cir. 2009).  Thus, Plaintiff fails to satisfy the compulsion test.  *See Becerra*, 24 F.4th at 135.

Plaintiff next argues that the actions of the Marriott Defendants satisfy the "joint action test" through their alleged conspiracy with the KCDA because they "jointly engaged with the Kings County District Attorney" in their conduct.  *See* ECF No. 5 ¶ 314.  "To state a claim against a private entity on a [§] 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Ciambriello*, 292 F.3d at 324 (2d Cir. 2002) (quoting *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)).  Specifically, a plaintiff must plausibly allege:  "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Id.* at 324–25 (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  Such a complaint must allege "particular acts or facts" rather than mere conclusory allegations.  *Brewster v. Nassau Cnty.*, 349 F. Supp. 2d 540, 547 (E.D.N.Y. 2004).  And such facts must detail the "joint, coordinated behavior" between the Marriott Defendants and the City evidencing they "shared a common unlawful goal" to "deprive" Plaintiff of his constitutional rights.  *See Defeo v. Leibstein*, No. 16-cv-5150, 2018 WL 5777023, at *4 (E.D.N.Y. Nov. 1, 2018).

---

[9]     Because Plaintiff fails to contest this point in his Opposition, he has abandoned any argument that this prong is satisfied.  *See Charlier*, 2024 WL 4026253, at *8.

Plaintiff provides no "particular acts or facts" to support his argument, let alone any showing that Defendants "shared a common unlawful goal" to "deprive" Plaintiff of his rights. Instead, Plaintiff's conspiracy theory rests on speculative and conclusory allegations that the City and Marriott Defendants "explicitly and/or corruptly agreed to commit with each other, and/or other unarmed conspirators, the wrongs" and to "cover-up each other's misconduct." ECF No. 5 ¶ 318. Plaintiff has shown no agreement, tacit or otherwise, between Defendants which shows an intention to act in concert to inflict an unconstitutional injury upon Plaintiff. *See Cambriello*, 292 F.3d at 324–25. The most Plaintiff alleges is that "joint action" can be found by the mere fact that the Marriott Defendants implemented the same "custody number organizing system" as the KCDA (*i.e.*, tracking room reservations using the same number the KCDA used to identify individuals in custody), followed KCDA's instructions as to the rooms and to the services that should be provided to witnesses, and provided "government rates." ECF No. 5 ¶¶ 301–09, 313–14. But none of these purported allegations give any plausible indication of a conspiracy between the parties. Put simply, the Marriott Defendants offered standard hotel services to the City.[10]

Lastly, the Marriott Defendants' conduct does not satisfy the "public function test" because the act of renting of hotel rooms is private conduct innate to operation of a hotel, regardless of the renter's intent. *See Lurch v. City of New York*, No. 19-cv-11253, 2021 WL 1226927, at *3 (S.D.N.Y. Mar. 31, 2021). In *Lurch*, the court held a hotel was not a state actor because "decisions made in the day-to-day administration of a [hotel] are [not] the kind of decisions traditionally and exclusively made by the sovereign for and on behalf of the public."

---

[10] The Court need not, and does not, address Plaintiff's aiding and abetting liability argument given "§ 1983 does not support aiding and abetting liability." *See Woods v. Chadwick*, No. 21-cv-0662, 2021 WL 12318012, at *3 n.4 (N.D.N.Y. July 19, 2021).

*Id.* Here, the circumstances presented are the same. Marriott Defendants are alleged to have rented two rooms to the KCDA and provided other services commensurate with operating a hotel. *See* ECF No. 5 ¶ 57. Consequently, the alleged conduct of the Marriott Defendants does not satisfy the public function test. *See Becerra*, 24 F.4th at 135.

In light of the foregoing, Plaintiff fails to plausibly allege that the Marriott Defendants are state actors. Accordingly, the Court hereby dismisses Counts I, III, and VII against the Marriott Defendants with prejudice.

### III.    Plaintiff's *Monell* Claims Fail

Plaintiff brings *Monell* claims against both the City and the Marriott Defendants. To state a *Monell* claim, a plaintiff must prove the following elements: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). Plaintiff fails to meet this standard.

Defendants tackle the second factor of the *Roe* test similarly, arguing that because there has been no deprivation of a constitutional right, Plaintiff fails to state a cognizable claim. *See* ECF No. 30 at 20; ECF No. 32 at 28. The Court agrees and the law is clear: "[i]t is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation." *Mastromonaco v. Cnty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019). Moreover, "[*Monell*] is an extension of liability, not an independent cause of action, and therefore requires an underlying constitutional violation. . . . '[Without an] underlying constitutional violation, [a court's] decision not to address the municipal defendants' liability under *Monell* [is] entirely correct.'" *Soto v. City of New York*, 132 F. Supp. 3d 424, 459 (E.D.N.Y. 2015) (quoting *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)).

15

Plaintiff fails to address this factor, but the Court has already found he fails to allege a constitutional violation.  *See supra* Part II.A.  Because Plaintiff has not alleged an underlying constitutional violation, he therefore fails to plausibly state a cognizable *Monell* claim.  *See Soto*, 132 F. Supp. 3d at 459; *Mastromonaco*, 779 F. App'x at 51.[11]

## IV.    State Constitutional Due Process Claim

Plaintiff's final claim alleges that the Marriott Defendants violated his rights under the Due Process and Equal Protection provisions of the New York Constitution.  ECF No. 5 ¶¶ 326–329.  Plaintiff does not allege a separate theory of subject matter jurisdiction for this claim.  Instead, he invokes the Court's supplemental jurisdiction.  *See id.* ¶ 327 (noting this claim is brought "by virtue of [Marriott Defendants'] acts and omissions detailed above").

Although district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), such jurisdiction is discretionary, *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).  And a district court "may decline to exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  District courts may exercise their discretion in deciding whether to exercise supplemental jurisdiction over state law claims when all federal claims were dismissed at the pleading stage.  *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006); *see also Cangemi v. United States*, 13 F.4th 115, 133–34 (2d Cir. 2021).

---

[11]    Even if Plaintiff were to plausibly allege a constitutional violation, which he has not, his *Monell* claim (Claim VI) against the Marriott Defendants would still fail, as they are not state actors and, therefore, do not meet the requirement of taking action "under color of law."  *See Roe*, 542 F.3d at 36.

Here, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Since this case has progressed only to the motion to dismiss stage without the parties conducting any discovery, applying the normal presumption against supplemental jurisdiction is appropriate. *See Onibokun v. Chandler*, 749 F. App'x 65, 67 (2d Cir. 2019) ("find[ing] no abuse of discretion" in declining supplemental jurisdiction at motion to dismiss stage).

## LEAVE TO AMEND

Plaintiff does not seek leave to amend, and, in fact, has repeatedly declined his opportunities for further amendment. *See* ECF No. 26 at 5 n.3; ECF No. 27 at 1. Accordingly, the Court dismisses Plaintiff's claims with prejudice. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request [to amend] that was not made.").

Even if Plaintiff had sought leave to amend the Amended Complaint, the Court would not grant it because it would be futile. *See Jones-Bey v. Stanislov*, No. 23-cv-5599, 2024 WL 3520636, at *6 (S.D.N.Y. July 23, 2024) ("Because Plaintiff fails to allege a constitutional violation and provides no basis to conclude that any amendment could remedy [his] pleadings . . . granting Plaintiff leave to amend would be futile."). Without a viable *Brady* violation, any amendment of Plaintiff's claims would also be futile. Moreover, Plaintiff "ha[s] had multiple opportunities to allege sufficient specific facts to render his claims plausible," including in his original complaint, the Amended Complaint, and after being twice notified by the Court of the complaint's deficiencies. *See Williams v. Calderoni*, No. 11-cv-3020, 2012 WL 691832, at *8 (S.D.N.Y. 2012). Therefore, "leave to amend would be futile because [P]laintiff ha[s] already had two bites at the apple and they have proven fruitless." *Harris v. Westchester Cnty. Med. Ctr.*, No. 08-cv-1128, 2011 WL 2637429, at *4 (S.D.N.Y. July 6, 2011).

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Defendants' motions, ECF Nos. 28 and 31, and DISMISSES Plaintiff's Amended Complaint in its entirety pursuant to Rule 12(b)(6). The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
April 8, 2026

18